UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------------------X

BEVERLY ALKOW; E.A.; MITCHELL ALKOW;                       :
NADIA ALKOW; S.A.;                                         :        CIVIL ACTION #
RALPH ALBERGO;                                             :        07-CV-2285 (GBD)
ANA AFANE, JORGE AFANE;                                    :        (conformed copy)
JAN ARANOFF;                                               :
CHARLES BERG; JASON BERG;                                  :
LINDSAY BERG.; RUTH BERG;                                  :
MAURICE BERNSTEIN;                                         :
JEFFREY BOENIG; WILLIAM BOENIG;                            :
KIRSTEN BYRNES;                                            :
ELAINE BOGAL-CALIX;                                        :
ELAINE CALIX FOR LUIS CALIX;                               :
ELAINE CALIX ITF J.S.C.; ELAINE CALIX ITF B.H.C.;          :
ELAINE CALIX ITF REBECCA J. CALIX.;                        :
JODY CHIMBEL;                                              :
FRANK CIOLLI;                                              :
HOWARD COHEN; JENNIFER COHEN;                              :
JARED COHEN; MARLENE COHEN;                                :
ROBERTA COREN; DENNIS COREN;                               :
RICHARD COYLE;                                             :
ERIC DANETZ;                                               :
CHRISTOPHER DRAEGER;                                       :
DR. BONNIE FLASTER; ELAINE FLASTER;                        :
FRED FINKELSTEIN;                                          :
JACLYN GAON; STEPHEN GAON;                                 :
LORA GULOYAN;                                              :
FRAN HIRSHMAN; KENNETH HIRSHMAN;                           :
JESSICA KEPFORD;  LYNN KEPFORD;                            :
JEFFREY KHALAF;                                            :
STUART M. KREINER;                                         :
HERB KUTZEN; MELANIE KUTZEN;                               :
BERNICE LOCKER; IRVING LOCKER;                             :
KEVIN MAHONEY;                                             :
NEZAR MEJALLI ;                                            :
DANIEL MARSH;                                              :
BRYAN MCKATTEN;                                            :
MEDORO MONTEMARANO;                                        :
MARITZA MONTEMARANO;                                       :        COMPLAINT
CHRISTINA PASHAYAN; L.P.; MARIA PASHAYAN;                  :        WITH DEMAND
MELISSA PASHAYAN; RICHARD  PASHAYAN;                       :        FOR JURY TRIAL
ALAN PUTTERMAN;                                            :
ALAN ROSEN; PAULA ROSEN;                                   :
PETER ROSSI;                                               :
HERBERT ROTHBERG;                                          :
JERRY ROTHCHILD:                                           :
FLORENCE SCHULMAN;                                         :
RONALD SELLING;                                            :

--------------------
*Alkow   et al v. Pearlman et al – New York Federal Complaint March 2007 – Page 1*

ADEEN SCHWARTZ;  IAN SCHWARTZ; J.C.S.;          :
GLENN STERN;                                    :
JONATHAN TANNENHAUSER;                          :
MAE TANNENHAUSER;                               :
MARK TANNENHAUSER;                              :
MICHAEL TANNENHAUSER;                           :
MILO THALROSE;                                  :
BENJAMIN WINIKOFF; CAMI WINIKOFF;               :
JEAN WINIKOFF,                                  :
BETSY WRIGHT; GREGORY WRIGHT;                   :
NANCY YACOVONE;                                 :
                           Individual Plaintiffs  :
                                                :
NORTH SHORE PLUMBING SUPPLY;                    :
NORTH SHORE PLUMBING SUPPLY PROFIT SHARING;     :
NORTH SHORE PLUMBING SUPPLY PENSION TRUST;      :
RIVERVALE CHIROPRACTIC CENTER PENSION ACCT;     :
RIVERVALE CHIROPRACTIC/DR. CHARLES BERG;        :
JONATHAN TANNENHAUSER IRA;                      :
MARK TANNENHAUSER IRA;                          :
MICHAEL TANNENHAUSER  IRA;                      :
THE TIMEPIECE COLLECTION LTD.;                  :
                           Corporate Plaintiffs;  :
    -----------------                            :
JAMES LOWY ESQ.; JAMES LOWY ESQ. PA;           :
INTERNATIONAL LAW GROUP LLC;                    :
             (Plaintiffs in Counts XXII & XXIII only) ,  :
                                                :
                           PLAINTIFFS,          :
                                                :
       -    Vs -                                :
                                                :
LOUIS J. PEARLMAN;                              :
ROBERT FISCHETTI;                               :
MICHAEL CRUDELE;                                :
KRISTIN FINGER;                                 :
SALMA BACCHUS;                                  :
THEODORE WÜLLENKEMPER;                          :
GREGORY McDONALD;                              :
MARK TOLNER;                                    :
RICHARD CARL JANS;                              :
RECA RENE CHAMBERLAIN;                          :
ANDREAS POHL;                                   ;
And                                             :
CHARLES J. CRIST;                               :
BILL McCOLLUM;                                  :
GERARD McHALE;                                  :
                           Individual Defendants;  :
    ----------------                            :

--------------------
*Alkow   et al v. Pearlman et al – New York Federal Complaint March 2007 – Page 2*

BILL McCOLLUM;                                                    :
DON SAXON;                                                        :
DANIELLE BROOKS;                                                  :
GERARD McHALE;                                                    :
                    Individual Defendants for Equitable Relief;   :
   --------------                                                 :
                                                                 :
TRANS CONTINENTAL AIRLINES EMPLOYEE                               :
        INVESTMENT SAVINGS ACCOUNT                                :
        & STOCK PROGRAMS;                                         :
                                  Enterprise Defendant;           :
   ----------------                                               :
TRANS CONTINENTAL AIRLINES, INC.;                                 :
TRANS CONTINENTAL AIRLINES TRAVEL                                 :
        SERVICES, INC.;                                           :
TRANS CONTINENTAL ENTERPRISES, LLC;                               :
TRANS CONTINENTAL ENTERTAINMENT INC.;                             :
LOUIS J. PEARLMAN ENTERPRISES, INC.;                              :
TRANS CONTINENTAL RECORDS, INC.;                                  :
TC LEASING, LLC;                                                  :
TRANS CONTINENTAL TALENT, INC.;                                   :
FASHION ROCK, LLC;                                                :
TALENT ROCK, LLC;                                                 :
TRANS CONTINENTAL TRAVEL SERVICE, INC.;                           :
F.F. STATION, LLC ;                                               :
TRANS COUNTRY MUSIC GROUP, INC.;                                  :
TRANS CONTINENTAL STUDIOS, INC.;                                  :
TRANS CONTINENTAL AVIATION, INC.;                                 :
AEGIS CONSULTING, INC.;                                           :
GERMAN INVEST-UND FINANZBERATUNG GmbH;                            :
TRANS CONTINENTAL GmbH;                                           :
AIRSHIP INTERNATIONAL LTD.;                                       :
                                  Corporate Defendants;           :
   -------------------------                                      :
TRIPLE-M RECORDS GmbH;                                            :
A&R RECORDS INC.;                                                 :
                            Corporate Defendants for              :
                                  Equitable Relief                :
   ------------------                                             :
FISERV CORPORATION individually and as successor                  :
        to RETIREMENTACCOUNTS INC.;                               :
BANK OF AMERICA;                                                  :
FIFTH THIRD BANK;                                                 :
WACHOVIA BANK;                                                    :
SUN TRUST CO.;                                                    :
J.P. MORGAN / CHASE BANK;                                         :
CITIBANK;                                                         :
                                  Corporate Defendants            :
                                  Trustees / Agents;              :
   ----------------                                               :

--------------------
*Alkow   et al v. Pearlman et al – New York Federal Complaint March 2007 – Page 3*

TATONKA CAPITAL CORPORATION;                              :
FIRST NATIONAL CITY BANK;                                 :
INTEGRA BANK;                                             :
AMERICAN BANK OF ST. PAUL;                                :
FIRST NATIONAL BANK and                                  :
       TRUST CO. of WILLISTON;                            :
                   Corporate Defendants   :
                   Trustees / Agents;     :
  ------------------                                    :
DUN & BRADSTREET CO.;                                     :
                   Corporate Defendant;   :
  ------------------                                    :
JOHN DOES # 1 – 10;                                       :
     (the names being fictitious and used solely for      :
     identification purposes, the actual names            :
     will be disclosed in future discovery);              :
JOHN DOE COMPANIES # 1 – 10;                              :
     (the names being fictitious and used solely for      :
     identification purposes,  actual names               :
     will be disclosed in future discovery);              :
                 *"John Doe"* Defendants;  :
  ----------------                                      :
STATE OF FLORIDA;                                         :
              Sovereign Entity Defendant;   :
  ----------------                                      :
STATE OF FLORIDA;                                         :
OFFICE OF FINANCIAL REGULATION; and                      :
OFFICE OF THE ATTORNEY GENERAL                           :
            Sovereign Entity Defendants   :
            For Equitable Relief;         :
                            :
                 DEFENDANTS.           :
--------------------------------------------------------------------------X

## **INTRODUCTION**

     Plaintiffs are persons from the New York, New Jersey, Connecticut, Michigan,

Georgia, Arizona, Illinois, Idaho and Washington State whose monies were deposited in,

with or entrusted to "Employee Investment Savings Accounts" ("EISAs") or other

securities including but not limited to stock, certificates of deposit or other monies

deposited with, held by or entrusted to the various entities affiliated with Defendants

Pearlman and his companies.

Plaintiffs were all victims of an ongoing enterprise, scheme, conspiracy, pattern of fraud, violation of New York, Florida, US and International laws, through which hundreds of millions of dollars were sent from New York, New Jersey, Connecticut, Michigan, Georgia, Arizona, Illinois, Idaho and Washington State and elsewhere into Defendant Banks in New York and Florida – monies that later disappeared into Europe, the Caribbean and elsewhere, as a direct and proximate result of Defendants' unlawful conduct, negligence, breach of fiduciary duties or malfeasance.

In addition to being victims of the original enterprise and scheme through which millions were stolen and/or misappropriated from Plaintiffs, Plaintiffs have suffered additional damages for which equitable relief is sought against officials of Defendant State of Florida, including the Governor of Florida and persons in the Office of the Governor, the Attorney General of Florida and Persons in Office of the Attorney General, Commissioner of the Office of Financial Regulation and persons/investigators in the Office of Financial Regulation, and others acting on their behalf.

Plaintiffs'' request for equitable relief as against officials of Defendant State of Florida, is based upon evidence that suggests these Defendants engaged in an ongoing pattern and/or scheme that occurred sometime from 2005 to the present, after the Plaintiffs' monies were misappropriated and/or stolen, the purpose of which acts were to conceal evidence or the discovery of evidence related to officials of Defendant State of Florida, who allegedly were involved with, among other things (i) malfeasance, (ii) inappropriate, unethical or illegal *ultra vires* acts, (iii) obstruction of justice, (iv) interference and/or attempts to interfere with Plaintiffs'' due process rights, (v) unlawful receipt of monies that were actually or constructively misappropriated or stolen, (vi)

publication of libelous, slanderous and/or defamatory statements, (vii) interference in

Plaintiffs' business, and (viii) interference and/or attempts to interfere with and/or

manipulate official investigations.

As and for their complaint, Plaintiffs, upon information and belief, allege as

follows:

## COMPLAINT

## JURISDICTION

1) The Court has original jurisdiction over Plaintiffs'' claims pursuant to 18 USC §
   1964, the Racketeer Influenced and Corrupt Organizations Act (RICO).

2) The Court has original jurisdiction over Plaintiffs'' claims pursuant to 18 USC § 1954
   – Violation of Handling of Employee Savings Accounts.

3) The Court has original jurisdiction over Plaintiffs'' claims pursuant to 18 USC § 1341
   – Mail Fraud as it applies to the causes of action plead herein.

4) The Court has original jurisdiction over Plaintiffs'' claims pursuant to 18 USC § 1343
   – Wire Fraud as it applies to the causes of action plead herein.

5) The Court has original jurisdiction over Plaintiffs'' claims pursuant to 18 USC § 1030
   – Computer Fraud Act as it applies to the causes of action plead herein.

6) The Court has original jurisdiction over Plaintiffs'' claims which challenge the
   constitutionality of certain provisions of Florida Statute Section 768.28.

7) The Court has ancillary and/or supplemental jurisdiction of all Plaintiffs'' state law
   claims pursuant to 28 USC § 1367.

8) The Court has original jurisdiction over these claims subject to the Securities Acts of 1933, §§ 5 and 12, and the Securities Act of 1934, § 10, and Securities and Exchange Commission Rule 10(b)5.

9) Each of the claims of the named Plaintiffs exceeds the statutory limit of this Court, exclusive of attorneys' fees, costs and interest.

10) Alternatively, the Court has jurisdiction under 28 USC § 1332 through diversity jurisdiction.

## VENUE

11) Venue is proper in this Court because one or more of the Plaintiffs live in this judicial district, some Defendants lived and/or operated in this district, and/or the Defendants' unlawful acts occurred within this judicial district.

## PARTIES

12) Plaintiffs are individuals and corporations and partnerships residing in this judicial district, and in other districts in the State of New York, New Jersey, Connecticut, Michigan, Georgia, Arizona, Illinois, Idaho and Washington State.

13) Each Plaintiffs was defrauded into (i) entrusting, transferring or depositing monies into one or more Trans Continental Employee Investment Savings Accounts (EISA) (See Exhibit Binder) and/or Retirement Accounts and/or the Trans Continental Stock Program (See Exhibit Binder), (ii) purchasing securities and/or certificates of deposit monies or (iii) opening one or more savings accounts.

14) Plaintiffs fall into three distinct groups.  Plaintiffs Group 1 are/were EISA depositors.  Plaintiffs Group 2 are/were persons who "purchased" stock in one of the Pearlman

Companies.  Plaintiffs Group 3 are/were EISA depositors who also had Individual

Retirement Accounts (IRAs).

15) The majority of the Defendants fall into six distinct categories.  Defendant Group 1

consists of individuals who were the officers, directors, managers and/or agents of

Louis J. Pearlman's companies who were directly involved with the enterprise and

scheme to defraud Plaintiffs.  Defendant Group 2 consists of the Defendant Pearlman

Companies and The Fraudulent Enterprise as that term is defined below.   Defendant

Group 3 includes individuals and public officials of the State of Florida, including

former Attorney General and now Governor Charles J. Crist.  Defendant Group 4

include banks and/or trust companies Bank of America, Wachovia, Fifth Third Bank,

Fiserv (successor to Retirement Accounts Inc.), Sun Trust Bank, Citibank and Chase

which were responsible for Plaintiffs' monies.  Defendant Group 5 include banks

and/or companies including Tatonka, National City Bank, Integra Bank, St Paul and

Williston which received and/or benefited from fraudulent conveyances to hinder,

delay or prejudice plaintiffs claims to their monies. Defendant Group 5 include the

individuals and/or entities such as Bill Defendant McCollum, Don Saxon, Office of

Financial Regulation, Danielle Brooks (investigator with Defendant OFR) and Gerard

McHale Esq. (agent for Defendant OFR and State of Florida) against which Plaintiffs

seek equitable relief.

## **Defendant Pearlman Companies**

16) Defendant Trans Continental Airlines, Inc. ("Trans Con Airlines") is a Florida

corporation with its principal place of business in Orlando, Florida.  Defendant Trans

Con Airlines maintained (i) the Trans Continental Employee Investment Savings Account (Trans Con EISA or EISA) scheme and (ii) the Trans Continental Airlines Travel Services, Inc. stock scheme (Trans Con Stock).

17) Defendant Trans Continental Airlines Travel Services, Inc. ("Trans Con Airlines Travel") is a Florida company with its principal place of business in Orlando, Florida.

18) Defendant Trans Continental Enterprises, LLC ("Trans Con Enterprises") is a Florida limited liability company with its principal place of business in Orlando, Florida.

19) Defendant Louis J. Pearlman Enterprises, Inc. ("Pearlman Enterprises") is a Florida corporation with its principal place of business in Orlando, Florida.

20) Defendant Trans Continental Records, Inc. ("Trans Con Records") is a Florida corporation with its principal place of business in Orlando, Florida.

21) Defendant TC Leasing, LLC ("TC Leasing") is a Florida limited liability company with its principal place of business in Orlando, Florida.

22) Defendant Trans Continental Talent, Inc. ("Trans Con Talent") is a Florida corporation with its principal place of business in Orlando, Florida.

23) Defendant Fashion Rock, LLC ("Fashion Rock") is a Florida limited liability company with its principal place of business in Orlando, Florida.

24) Defendant Talent Rock, LLC ("Fashion Rock") is a Florida limited liability company with its principal place of business in Orlando, Florida.

25) Defendant Trans Continental Travel Service, Inc. ("Trans Con Travel") is a "void" Delaware corporation with its principal place of business in Orlando, Florida.

26) Defendant F.F. Station, LLC ("F.F. Station") is a Florida limited liability company with its principal place of business in Orlando, Florida.

27) Defendant Trans Country Music Group, Inc. ("Trans Country Music") is a Florida corporation with its principal place of business in Orlando, Florida.

28) Defendant Trans Continental Studios, Inc. ("Trans Con Studios") is a Florida corporation with its principal place of business in Orlando, Florida.

29) Defendant Trans Continental Aviation, Inc. ("Trans Con Aviation") is a Florida corporation with its principal place of business in Orlando, Florida.

30) Defendant Aegis Consulting, Inc. ("Aegis Consulting") is a Florida corporation with its principal place of business in Valrico, Florida.

31) Defendant Airship International Ltd. ("Airship") is a New York corporation with its principal place of business in New York and Florida.

32) Defendant German Invest-und Finanzberatung GmbH ("Eurosavings") is a German company with places of business in Germany and Florida.

33) Defendant Triple-M Records GmbH ("Triple M") is a German company with places of business in Germany and Florida.

34) Defendant A & R Records Inc ("A&R") is a US company with places of business in California and New York.

**Defendant Pearlman**

35) Defendant Louis J. Pearlman ("Pearlman") is a Florida resident who conducted business in and from the State of Florida.  Defendant Pearlman is/was the organizer and principal actor involved with or responsible for (i) the enterprise and scheme to defraud Plaintiffs and in the violation of applicable laws and regulations related to the EISA, stock and other securities which Plaintiffs were induced to deposit or purchase,

--------------------

(ii) the improper and potentially illegal activity involving Defendants Crist and Defendant McCollum, Defendant OFR and Florida and (iii) the misappropriation of hundreds of millions of dollars from Plaintiffs.

36) Defendant Pearlman is/was (i) President and Registered Agent of Defendants Trans Con Airlines, Trans Con Records, and Trans Con Aviation; (ii) Managing Member or Manager and Registered Agent for Defendants TC Leasing, Fashion Rock, and F.F. Station; (iii) Director and Registered Agent of Defendants Pearlman Enterprises and Trans Con Studios; (iv) Chairman and Director for Trans Con Talent and (v) co-owner of or has an interest in Defendants Trans Continental GmbH, Eurosavings GmbH and Defendant Triple-M GmbH.

37) Defendant Pearlman receives revenue, royalties and/or other monies or benefits from Defendants A & R and Triple M.

38) Defendant Pearlman owns, controls and/or directs the operations of Defendants Trans Con Airlines, Trans Con Records, TC Leasing, Fashion Rock, Talent Rock, F.F. Station, Pearlman Enterprises, Trans Con Studios, Trans Con Talent, Trans Country Music, Aegis Consulting, Trans Con Airlines Travel, Trans Con Travel and Eurosavings (hereinafter collectively referred to as "Defendant Pearlman Companies").

39) Defendant Pearlman Companies are all alter – egos of one another and (i) have similar if not identical directors and officers, (ii) use the same employees, (iii) use the same offices, (iv) use the same bank accounts, (v) use the same telephone lines, (vi) the day to day management is controlled by the same people, (vii) are directed, owned, managed, controlled and/or connected to Defendant Pearlman and (viii) do

not otherwise observe proper corporate formalities.  See Exhibit 2, Receiver's Letter
Report dated February, 2007.   In addition and insofar as they were alter egos of one
another, as it relates to The Fraudulent Enterprise and the other actions which form
the basis for this complaint, Defendant Pearlman Companies failed to maintain
separate records and accounts, shifted money from one account to another
indiscriminately and used their names and assets interchangeably.

### Defendant Fischetti, Crudele, Finger, Bacchus, Wuellenkemper, McDonald, Tolner, Jans, Chamberlain & Pohl

40) Defendant Robert Fischetti ("Fischetti") is a Florida resident who lives who lives in
or near Orlando, Florida  and conducted business in and from the State of Florida.
Defendant Fischetti is/was an officer, director and/or agent of one or more of
Defendant Pearlman Companies.  Defendant Fischetti is/was a director, officer,
employee and/or agent of Defendant Pearlman involved with (i) the enterprise and
scheme to defraud Plaintiffs and in the violation of applicable laws and regulations
related to the EISA, stock and other securities which Plaintiffs were induced to
deposit or purchase, and (ii) the misappropriation of hundreds of millions of dollars
from Plaintiffs.

41) Defendant Michael Crudele ("Crudele") is a Florida resident who lives in or near
Valrico, Florida and who conducted business in and from the State of Florida.
Defendant Crudele is/was an officer, director and/or agent of one or more of
Defendant Pearlman Companies.  Defendant Crudele is/was a director, officer,
employee and/or agent of Defendant Pearlman involved with (i) the enterprise and
scheme to defraud Plaintiffs and in the violation of applicable laws and regulations

related to the EISA, stock and other securities which Plaintiffs were induced to
deposit or purchase, and (ii) the misappropriation of hundreds of millions of dollars
from Plaintiffs.

42) Defendant Kristin Finger ("Finger") is a Florida resident who lives in or near
Orlando, Florida and who conducted business in and from the State of Florida.
Defendant Finger was an officer, employee of one or more of Defendant Pearlman
Companies.  Defendant Finger was responsible for the depositor and/or investor
databases. Defendant Finger was directly involved with (i) the enterprise and scheme
to defraud Plaintiffs and in the violation of applicable laws and regulations related to
the EISA, stock and other securities which Plaintiffs were induced to deposit or
purchase, and (ii) the misappropriation of hundreds of millions of dollars from
Plaintiffs.

43) Defendant Salma Bacchus ("Bacchus") is a Florida resident who lives in or near
Orlando, Florida and who conducted business in and from the State of Florida.
Defendant Bacchus was an officer, employee of one or more of Defendant Pearlman
Companies.  Defendant Bacchus was the controller of Defendant Pearlman
Companies and was responsible for tracking of monies, transferring of monies and
payments from Defendant Pearlman Companies.  Defendant Bacchus was responsible
for the transfer of depositor and/or investor monies to all persons, entities and
businesses in the US and overseas. Defendant Bacchus was directly involved with (i)
the enterprise and scheme to defraud Plaintiffs and in the violation of applicable laws
and regulations related to the EISA, stock and other securities which Plaintiffs were

induced to deposit or purchase, and (ii) the misappropriation of hundreds of millions

of dollars from Plaintiffs.

44) Defendant Theodore Wüllenkemper ("Wüllenkemper ") maintains a place of

business, properties and assets in the State of Florida and conducts business in Florida

and New York.  Defendant Wüllenkemper  is a co-owner of Defendant Pearlman

Companies and other businesses with Defendant Pearlman.  Defendant

Wüllenkemper was directly involved with (i) the enterprise and scheme to defraud

Plaintiffs and in the violation of applicable laws and regulations related to the EISA,

stock and other securities which Plaintiffs were induced to deposit or purchase, and

(ii) the misappropriation of hundreds of millions of dollars from Plaintiffs. Defendant

Wüllenkemper also helped Defendant Pearlman in the establishment of German entity

Defendant Eurosavings GmbH into which millions of dollars misappropriated from

Plaintiffs was sent.

45) Defendant Andreas Pohl ("Pohl") maintains a place of business in Berlin, Germany

and conducts business in this judicial district.  Defendant Pohl is a co-owner of

Defendant Triple-M with Defendant Pearlman.

46) Defendant Gregory McDonald ("McDonald") is a Florida resident who lives in or

near Orlando, Florida and was a Vice-President of many Defendant Pearlman

Companies, was a partner and co-owner of many Defendant Pearlman Companies and

was actively involved in and benefited from The Fraudulent Enterprise as defined

herein.

47) Defendant Mark Tolner ("Tolner") is a Florida resident who lives in or near Orlando,

Florida and was president of Defendant Fashion Rock and Transcontinental Talent

and was actively involved with other of Defendant Pearlman Companies and was actively involved in and benefited from The Fraudulent Enterprise as defined herein.

48) Defendant Richard Carl Jans ("Jans") is a Florida resident who lives in or near Orlando, Florida and was involved with Defendant Pearlman Companies and was actively involved in and benefited from The Fraudulent Enterprise as defined herein.

49) Defendant Reca Rene Chamberlain ("Chamberlain") is a Florida resident who lives in or near Orlando, Florida, and was the in-house counsel to Defendant Pearlman, Defendant Pearlman Companies and involved in and benefited from The Fraudulent Enterprise as defined herein.

### Defendant Crist

50) Defendant Charles J. Crist ("Crist or Charlie Crist") is the Governor of Florida, former Attorney General of Florida and former Member of the Financial Services Commission[1] who resides in Tallahassee, Florida.   The evidence from (i) independent and credible reporters, authors and investigators, (ii) witnesses with knowledge of The Fraudulent Enterprise, and (iii) statements by Court Appointed Officials in Florida involved with Defendant Pearlman and Defendant Pearlman

---

[1] The Financial Services Commission is a part of the Executive Branch of the Florida Government and was established by F.S. § 20.121.   The Financial Services Commission is the Supervisory and/or Governing Body responsible for The Office of Financial Regulation.   The powers, structure, authority, budget and virtually all other aspects of the Financial Services Commissions and its commissioners over and related to the Office of Financial Regulations is set forth in F.S. § 20.121. (3) a.   At all times, relevant hereto, Defendant Crist was one of four Commissioners on the Financial Services Commission along with former Governor Jeb Bush, former Chief Financial Officer Tom Gallagher and former Commissioner of Agriculture Charles Bronson.   At all times the Commissioner of the Office of Financial Regulation was Don Saxon.   Because of his position as the Chief Legal Officer of the State of Florida and Commissioner of the Office of Financial Regulation, Defendant Crist was in a position of authority regarding the day to day affairs of the Office of Financial Regulation and as such was also in a unique position to make known his positions and/or recommendations about investigations being considered and/or in process by the Office of Financial Regulation, including the investigations into Defendant Pearlman and Defendant Pearlman Companies.

--------------------

Companies, Defendant Crist appears to be a person who benefited from the below described fraud and enterprise and by, among other things, (i) engaging in questionable, improper and/or potentially unethical *ultra vires* acts while an official of the State of Florida; (ii) failing to take the necessary steps as required by his job as Attorney General; (iii) delaying or interfering with the investigations against Defendant Pearlman and Defendant Pearlman Companies; (iv) conspiring to delay or interfere with the investigations against Pearlman; (v) violating the applicable laws and regulations governing his position as an attorney, including failing to follow the conflict-of-interest guidelines set forth by the Florida Bar and the ABA Code of Ethics; (vi) violating the oath of office as Attorney General; (vii) engaging in negligent and potentially improper acts such as using his official position and influence which helped and/or allowed Defendant Pearlman and Defendant Pearlman Companies to continue the scheme to defraud and unlawful enterprise which he knew, had reason to know or should have known and/or could have discovered through the exercise of reasonable diligence was defrauding Plaintiffs and others out of hundreds of millions of dollars; (viii) attempting to conceal, mislead the public and/or otherwise cover up connections between Defendant Pearlman, Defendant Pearlman Companies and potentially improper contributions and/or other benefits during the campaign for Governor by making potentially untruthful, misleading and negligent statements about campaign contributions, fundraising activities, use of private plane(s) and other benefits received, directly or indirectly from Defendant Pearlman and/or the Defendant Pearlman Companies; (ix) breaching fiduciary duties; (x) benefitting from and/or receiving potentially misappropriated funds; (xi) failing to

take necessary and appropriate action through investigations or acting upon available information so as to prevent the misappropriation of hundreds of millions of dollars; (xii) violating the public trust and official duties and (xiii) other wrongful activities.

### Defendant McCollum

51) Defendant Bill McCollum ("Defendant McCollum") is the Attorney General of Florida, Defendant  McCollum was a member of the House of Representatives from Florida where he served as Vice Chairman of the House Banking Committee, was on the Judiciary Committee and was Chairman of the Subcommittee on Crime.  Prior to his election as Florida Attorney General in November 2006, Defendant McCollum was a partner with the Baker & Hostetler LLP.  During the campaign, Defendant McCollum appears to be a person who benefited from the below described fraud and enterprise and by, among other things, (i) engaging in questionable, improper and/or potentially unethical conduct as a candidate for public office; (ii) failing to take necessary steps as required by his job as Attorney General; (iii) violating the applicable laws and regulations governing his position as an attorney (iv) failing to follow the conflict-of-interest guidelines set forth by the Florida Bar, and the ABA Code of Ethics (v) attempting to conceal, mislead the public and/or otherwise cover up connections between Defendant Pearlman, Defendant Pearlman Companies and potentially improper contributions and/or other benefits during the campaign for Governor by making potentially untruthful, misleading and negligent statements about campaign contributions, fundraising activities and other benefits received, directly or indirectly from Defendant Pearlman and/or the Defendant Pearlman Companies; (iv) benefitting from and/or receiving potentially misappropriated funds;

(v) engaging in improper, unethical and possibly illegal *ultra vires* acts in violation of his duties as a public official and representative of the people of the State of Florida; (vi) failing to take necessary and appropriate action through investigations or acting upon available information so as to prevent the misappropriation of hundreds of millions of dollars; (vii) violating the public trust and official duties and (viii) other wrongful activities.

### Defendant Banks

52) Defendant Bank of America ("Bank of America") is a public company operating as a bank in the State of New York and in this judicial district.  Defendant Bank of America is a Trust Company / bank, which was to maintain and safeguard Plaintiffs' EISA monies, Individual Retirement Accounts, stocks or other commercial paper.

53) Defendant Fifth Third Bank ("5/3 Bank") is a public company operating as a bank in the State of New York and in this judicial district.  Defendant 5/3 Bank is a Trust Company and/or bank, which was to maintain and/or safeguard some of Plaintiffs EISA monies, Individual Retirement Accounts, stocks or other commercial paper.

54) Defendant Wachovia Bank is a public company operating as a bank within the State of New York and in this judicial district.  Defendant Wachovia is a Trust Company and/or bank, which was to maintain and/or safeguard some of Plaintiffs EISA monies, Individual Retirement Accounts, stocks or other commercial paper.

55) Defendant J. P. Morgan Chase ("Chase") is a public company operating as a bank within the State of New York and in this judicial district.  Defendant Chase is a Trust Company and/or bank, which was to maintain and/or safeguard some of Plaintiffs EISA monies, Individual Retirement Accounts, stocks or other commercial paper.

--------------------

56) Defendant Citibank, Chase N.A. ("Citibank, Chase") is a public company operating as a bank within the State of New York and in this judicial district.  Defendant Citibank, Chase is a Trust Company and/or bank, which was to maintain and/or safeguard some of Plaintiffs EISA monies, Individual Retirement Accounts, stocks or other commercial paper.

57) Defendant Sun Trust Co.  ("Sun") is a public company operating as a bank with its principal headquarters in  the State of Georgia and doing business in the State of New York and in this judicial district.  Defendant Sun  was a Trust Company and/or bank, which was to maintain and/or safeguard some of Plaintiffs EISA monies, Individual Retirement Accounts, stocks or other commercial paper.

58) Defendants Bank of America, 5/3 Bank,  Wachovia, Citibank, Chase and Sun are hereinafter referred to as Defendant Banks.

### Defendant Tatonka, National City Bank, Integra, St. Paul & Williston

59) Defendant Tatonka Capital Corporation ("Tatonka") is a company engaged in interstate commerce and which does business in the State of New York, and within this judicial district as well as in the State of Florida.  Defendant Tatonka was involved to the extent that carelessly, recklessly, negligently and/or improperly engaged in business with Defendant Pearlman and Defendant Pearlman Companies and received he benefit of fraudulent conveyances including but not limited to Plaintiffs monies or monies which originated with Plaintiffs, as well as other securities purchased with Plaintiffs monies, and at a time which if it conducted proper investigations would have known that such transactions through which Defendant Tatonka received benefits or extended loans were not permitted.

60) Defendant First National City Bank ("National City Bank") is a banking corporation engaged in interstate commerce and which does or affects business in the State of New York, and within this judicial district as well as in the State of Florida. Defendant National City Bank was involved to the extent that carelessly, recklessly, negligently and/or improperly engaged in business with Defendant Pearlman and Defendant Pearlman Companies and received the benefit of fraudulent conveyances including but not limited to Plaintiffs monies or monies which originated with Plaintiffs, as well as other securities purchased with Plaintiffs monies, and at a time which if it conducted proper investigations would have known that such transactions through which Defendant National City Bank received benefits or extended loans were not permitted.

61) Defendant Integra Bank ("Integra") is a banking corporation engaged in interstate commerce and which does or affects business in the State of New York, and within this judicial district as well as in the State of Florida.  Defendant Integra was involved to the extent that carelessly, recklessly, negligently and/or improperly engaged in business with Defendant Pearlman and Defendant Pearlman Companies and received the benefit of fraudulent conveyances including but not limited to Plaintiffs monies or monies which originated with Plaintiffs, as well as other securities purchased with Plaintiffs monies, and at a time which if it conducted proper investigations would have known that such transactions through which Defendant Integra received benefits or extended loans were not permitted.

62) Defendant American Bank of St. Paul ("St. Paul") is a banking corporation engaged in interstate commerce and which does or affects business in the State of New York,

--------------------

and within this judicial district as well as in the State of Florida.  Defendant St. Paul was involved to the extent that carelessly, recklessly, negligently and/or improperly engaged in business with Defendant Pearlman and Defendant Pearlman Companies and received the benefit of fraudulent conveyances including but not limited to Plaintiffs monies or monies which originated with Plaintiffs, as well as other securities purchased with Plaintiffs monies, and at a time which if it conducted proper investigations would have known that such transactions through which Defendant St. Paul received benefits or extended loans were not permitted.

63) Defendant Integra Bank ("Integra") is a banking corporation engaged in interstate commerce and which does or affects business in the State of New York, and within this judicial district as well as in the State of Florida.  Defendant Integra was involved to the extent that carelessly, recklessly, negligently and/or improperly engaged in business with Defendant Pearlman and Defendant Pearlman Companies and received the benefit of fraudulent conveyances including but not limited to Plaintiffs monies or monies which originated with Plaintiffs, as well as other securities purchased with Plaintiffs monies, and at a time which if it conducted proper investigations would have known that such transactions through which Defendant Integra received benefits or extended loans were not permitted.

64) Defendant First National Bank and Trust Co. of Williston ("Williston") is a banking corporation engaged in interstate commerce and which does or affects business in the State of New York, and within this judicial district as well as in the State of Florida. Defendant Williston was involved to the extent that carelessly, recklessly, negligently and/or improperly engaged in business with Defendant Pearlman and Defendant

--------------------

Pearlman Companies and received the benefit of fraudulent conveyances including but not limited to Plaintiffs monies or monies which originated with Plaintiffs, as well as other securities purchased with Plaintiffs monies, and at a time which if it conducted proper investigations would have known that such transactions through which Defendant Integra received benefits or extended loans were not permitted.

## Defendant D & B and FISERVE

65) Defendant Dun and Bradstreet ("D&B") is a US company and credit rating agency, doing business in the State of Florida and within this judicial district.  Defendant D&B provides credit and business condition reports on public and private companies, including the Defendant Pearlman Companies.

66) Defendant Fiserv ("FISERV") is a US company doing business in the State of Florida and within this judicial district.  Defendant FISERV is a Trust Company and/or bank, which was to maintain and/or safeguard some of Plaintiffs EISA monies, Individual Retirement Accounts, stocks or other commercial paper.  Defendant FISERV is the successor in interest to Retirement Accounts Inc.  See Exhibit Binder.

## Defendant Florida, OFR, Saxon, Brooks & McHale

67) Defendant State of Florida is a US state with its seat of government located in Tallahassee, Florida.

68) Defendant Office of Financial Regulation ("Defendant OFR") is an agency of Defendant State of Florida with its offices in Tallahassee, Florida.

69) Defendant Don Saxon ("Saxon") is a resident of the State of Florida and has been the Commissioner of Defendant Florida's Defendant OFR since January 2003. Defendant Saxon is responsible for the 2003 to 2007 investigations into The Fraudulent Scheme.  Defendant Saxon is also responsible for the malfeasance and/or *ultra vires* acts of persons within Defendant OFR and under his supervision who were involved with the 2003 – 2006 investigations as well as the wrongful acts since late 2006 by persons including but not limited to Defendants Danielle Brooks and Gerard McHale Esq..

70) Defendant Danielle Brooks ("Brooks") is a resident of the State of Florida, an employee of Defendant State of Florida, working for and/or under the authority of Defendants OFR and Saxon, and who participated in efforts to interfere with Plaintiffs due process rights through public statements and publications of false, misleading and.or other materials since November 2006.

71) Defendant Gerard McHale Esq ("McHale") is a resident of the State of Florida and since January 2007 has acted as an agent for Defendants State of Florida and Defendant OFR and who published libelous, defamatory and/or slanderous statements since January 2007 which were intended to cause damage to Plaintiffs, their property and their businesses.

## GENERAL FACTUAL ALLEGATIONS

### Mid 1980s – 1990s

72) Defendant Pearlman started his business in the State of New York.  His office was

located at 500 Fifth Avenue, New York, NY.

73)  From that office, Defendant Pearlman started his businesses that eventually lead to

all the businesses which are named as Defendants herein.

### Mid 1990s - 2003

74) In or about the mid 1990s, Defendant Pearlman determined to organize a scheme to

defraud persons such as Plaintiffs.

75) The scheme involved the use of employee savings and/or company stock which

would be "sold to" or in which certain persons could "participate".

76) The part of the scheme that involved "employee savings plans" was the Trans Con

"EISA".

77) The part of the scheme that involved "securities and/or stocks" was known as The

Trans Con Stock Program and Certificates of Deposit.

78) The combination of the "EISA" and the Trans Con Stock Program was known as the

Transcontinental Airline Employee Investment Savings Account and Stock Programs.

79)  Hereinafter the scheme will be called "The Fraudulent Enterprise".

80) Monies for The Fraudulent Enterprise originally came from employee and

shareholder monies and at least for the period from as far back as1983 to 2002

appeared to be sufficient for Defendant Pearlman Companies and its purposes.

81) As part of The Fraudulent Enterprise, Defendant Pearlman used false credit reporting

statements from Defendant D&B, used mislabeled accounts at Defendants Bank of

America, 5/3 Bank, Wachovia and Citibank, Chase and Sun and used mislabeled accounts at Defendant Retirement Accounts.com and FISERV.

82) From the 1980s to 2002, The Fraudulent Enterprise involved primarily employee and shareholder monies, however agents of The Fraudulent Enterprise did sell to other persons and/or entities that were not employees or shareholders during this period. For more than a decade, The Fraudulent Enterprise and the securities, investments and/or accounts were marketed, sold, offered to persons who had no real connection or were unrelated parties to Defendant Pearlman Companies.

83) Later as Defendant Pearlman sought to expand his businesses and companies, he needed more capital and decided to expand The Fraudulent Enterprise to include more and more persons regardless of whether or not they had any connections to the Defendant Pearlman Companies and specifically to non-employees.

84) From 2002 to 2003, Defendant Pearlman Companies came to be under investigation by former Attorney General Bob Butterworth, Defendant Crist and other officials in the State of Florida for the EISA and Trans Con Stock Program and for the Wilhelmina Modeling Investigation that included over 2,000 consumer complaints.

85) Defendant Pearlman Companies and even the Defendant Pearlman himself were under active investigation by the Florida Defendant OFR, which is under the authority of the Florida Attorney General and Defendant Crist.

86) Public officials in Florida, including Defendant Crist and others in Defendant OFR had actual or constructive knowledge that persons in Florida had accused Defendant Pearlman and Defendant Pearlman Companies of being engaged in fraudulent

marketing schemes, consumer fraud and other illegal activities in or being run out of Defendant Pearlman Companies in the State of Florida.

87) As early as 2002, 2003 and 2004, officials in Florida, including Defendant Crist and others in Defendant  OFR had actual or constructive knowledge about accusations related to Defendant Pearlman's modeling promotion companies and improprieties related directly to Defendant Pearlman and Defendant Pearlman Companies' financial transactions and the Fraudulent Enterprise.

88) Officials in Florida, including Defendant Crist and others in Defendant  OFR had actual or constructive knowledge that complaints, dating back to 1995, had been made against Defendant Pearlman and Defendant Pearlman Companies by the FDIC, consumers, the State of Texas Securities Board and Lloyd's of London related to financial improprieties, fraud, misrepresentations and the unlawful sale of CDs and securities.

89) In 2001, Officials in Florida, including Defendant Crist and others in Defendant  OFR had received complaints and had information that Defendant Pearlman and Defendant Pearlman Companies were violating in Florida law with The EISA Accounts.  In response to these complaints, Defendant Pearlman wrote a letter in which he said:

> Our company is Trans Continental Airlines Inc.  We do not offer to anyone other than employees or our private shareholders our Employee Investment Savings Account plan.
>
> Our employees have their own individual accounts set up with approved banking institutions.  Our matching plan is based on years of service.  We have not solicited anyone nor have (we) accepted anyone to this plan that does not qualify and certainly not to the general public.

90) Based on that letter, the investigation was stopped.

91) In 2003, Officials in Florida, including Defendant Crist and others in Defendant OFR had actual knowledge that Defendant Pearlman and Defendant Pearlman Companies were engaged in violation of securities laws in Florida, through The Fraudulent Enterprise. *See Exhibit 1* .

92) In response to these new complaints, in mid-January 2004 Peter Antonacci Esq[2] made phone calls to persons unknown and on January 30, 2004 Mr. Antonacci wrote the Defendant OFR identifying himself as "Counsel for Trans Continental Companies" and stating:

> *This is a follow up to our conversation this past week with respect to my client the Trans Continental Companies, specifically with regard to the Trans Continental Airlines Employee Investment Savings Account (TCA EISA) and the Trans Confidential Records, Inc. Confidential Private Placement Memorandum . . .*
>
> *Neither of these products has been offered for sale to the public by the company since at least 2002. Accordingly, the company has not authorized any broker to offer for sale either of these products to the public since then. If your office receives any information to the contrary, please contact me so that the immediate action can be taken by the company.*

93) This letter was certified as being true and accurate by Defendant Pearlman and the statements by Defendant Pearlman were false, untrue and sent so that The Fraudulent Enterprise could be continued.

94) Again the Defendant OFR halted all investigations into The Fraudulent Enterprise, the EISA accounts and The Trans Con Stock program accounts, and the activities of Defendant Pearlman and Defendant Pearlman Companies.

---

[2] Peter Antonacci was a former Statewide Prosecutor and close professional acquaintance of Defendant Crist. Mr. Antonacci and his firm have extra-ordinary access to persons in position of power at the highest levels of Florida Government and all of the branches thereof, including former Governor Jeb Bush and Defendant Crist.

95) During the period from 2003 – 2005, it was a matter of public record and it was the specific job of The Defendant OFR to aggressively pursue Racketeering and Securities Fraud[3].   In fact, The Fraudulent Enterprise, Fraudulent Enterprise, the EISA accounts and The Trans Con Stock program accounts and the activities of Defendant Pearlman and Defendant Pearlman Companies comprised the Top 6 Threats to Florida Investors, as they were identified by The Defendant OFR itself.

96) From 2001 to 2006, as a result of its investigations, The Defendant OFR had or should have had actual and/or constructive knowledge, based upon complaints made against Defendant Pearlman and Defendant Pearlman Companies, that The Fraudulent Enterprise, The EISA Accounts and The Trans Con Stock Program Accounts, and the activities of Defendant Pearlman and Defendant Pearlman Companies were suspect so as to aggressively pursue them.

97) During periods relevant to underlying facts of this complaint, The Defendant OFR had a very close professional relationship with Defendant Crist.  In fact, The Defendant OFR worked closely with The Attorney General and Defendant Crist himself in a similar prosecution related to banking fraud[4].

---

[3] Periodically from 2003 forward, The Office of Financial Regulation issued Press Releases about their alleged efforts to reduce securities fraud, racketeering, schemes to defraud investors and banking fraud. These and other Press Releases are posted and can be found on the Office of Financial Regulation Website at www.flDefendant OFR.com/PressReleases.  They include a January 6, 2003 Release about "Seven Suspects Arrested for Racketeering and Securities Fraud Charges",  May 23, 2003 Release "Man Arrested for Sale of Unregistered Securities",  and April 6, 2005 Release of "Top Ten Threats to Florida's Investors" which notably ranked them as follows # 1 – Ponzi Schemes, # 2 Unlicensed Individuals Selling Securities, # 3 Unregistered Investment products, # 4 – Promissory Notes, # 5 –Senior Investment Fraud and # 6 – High Yield Investment Schemes.

[4] In January 2006, The Office of Financial Regulation and Defendant Crist proudly announced their close cooperation in the investigation, prosecution and settlement of a $325 million predatory lending scheme. Involving banks, loan documents,

-------------------

98) In fact, according to F.S. § 20.121 (3) (a) 2, *"if the Office (of Financial Regulation) has reason to believe that any criminal law of this states has or may have been violated, the office shall refer any records tending to show such violation to state or federal law enforcement or prosecutorial agencies and shall provide investigative assistance to those agencies as required".*

99) During the period from 2001 to 2006, it was the Florida law that the "*records tending to show (the) violation"* related to Defendant Pearlman, Defendant Pearlman Companies, The Fraudulent Enterprise, The EISA Accounts and The Trans Con Stock Program Accounts, had to be sent to Defendant Crist's offices.

100)    Despite this knowledge and the information that had to have been provided by The Defendant OFR, and for reasons which border on potential criminally negligent or willful breach of duties or other unlawful activities, the Office of the Attorney General, as then headed by Defendant Crist (also Commissioner of the Defendant OFR) determined or recommended that investigation into Defendant Pearlman and Defendant Pearlman Companies be halted and no action be taken.

101)    From 2001 to 2006, The Defendant OFR had actual and/or constructive knowledge and with the knowledge that the complaints against Defendant Pearlman and Defendant Pearlman Companies related to The Fraudulent Enterprise, the EISA accounts and The Trans Con Stock program accounts, and the activities of Defendant Pearlman and Defendant Pearlman Companies – for reasons which border on the criminal negligence and willful breach of duties or other unlawful activities – Defendant Crist in his official capacity as Attorney General directed that that

investigation into Defendant Pearlman and Defendant Pearlman Companies be halted and no action be taken.

102)    Once Defendant Florida's investigations into Defendant Pearlman and Defendant Pearlman Companies were ended in 2003, The Fraudulent Enterprise then kicked into a new phase.

103)    Starting in about 2003, The Fraudulent Enterprise started to accept more monies from persons other than employees or shareholders of Defendant Pearlman Companies.

104)    From 2003 forward, Defendant Pearlman directed Defendants Crudele and Fischetti to market more aggressively and to use a larger network of brokers and third parties.

105)    Defendants Crudele and Fischetti started to direct the aggressive marketing of the EISA program and The Fraudulent Enterprise.

106)    As part of The Fraudulent Enterprise, Defendants Pearlman, Crudele and Fischetti sought to solicit brokers to assist them in convincing persons to deposit and/or entrust monies to The Fraudulent Enterprise.

107)    The Fraudulent Enterprise enticed many people throughout Florida and elsewhere around the United States and overseas to deposit and/or entrust their monies to Defendant Pearlman and Defendant Pearlman Companies.

## Representations to Depositors and Investors

108)    Plaintiffs – like many other innocent persons – were told that if they entrusted and/or deposited their monies to/with The EISA and Trans Con Stock Plan, they

would be guaranteed a return higher than they could realize at or through any other secured instrument, investment or account.

109)    Plaintiffs were told that this high yield was possible because of Defendant Pearlman's connections and Defendant Pearlman Companies increased bargaining power or superior financial condition.

110)    Plaintiffs were told that their money was deposited in FDIC insured accounts, that the accounts were protected by additional insurance through Lloyd's of London or AIG and that separate proper "trust" or "beneficiary" accounts would be established for them.

111)    Plaintiffs were provided with copies of Dun & Bradstreet reports and statements from accountants.  *See Exhibit #9* .

112)    Plaintiffs were provided with Account Opening Forms, Detailed Instructions About Mailing or Wiring Monies, Deposit Slips, Withdrawal Slips and Monthly Statements.  *See Exhibit Binder.*

113)    These were sent to Plaintiffs by mail or fax.

114)    On the surface, The Fraudulent Enterprise looked like it was legitimate.

115)    Plaintiffs had no way of knowing that in fact their monies were not being placed into the proper, secure trust accounts, that their monies were not insured, that there were no accountants, there was not insurance and the monies were not going to be safe.

## **The Fraudulent Enterprise Documents from 1995 - 2002**

116)    Samples of the documents used by Defendant Pearlman for The Fraudulent Enterprise were:

--------------------
*Alkow  et al v. Pearlman et al – New York Federal Complaint March 2007 – Page 31*

a) Documents issued on Defendant Pearlman Companies letterheads in which The Fraudulent Enterprise was promoted with Lloyds of London insurance and FDIC insurance - *See Exhibit Binder* ;

b) Copies of Dun & Bradstreet Reports provided by Defendant Pearlman Companies to induce Plaintiffs to give monies over to The Fraudulent Enterprise - *See Exhibit Binder* ;  and

c) Copies of the EISA Marketing Materials package – *See Exhibit Binder*.

117)   In addition to the financial irregularities and violations of 18 USC § 1962, The Fraudulent Enterprise also involved the sales of stock to unaccredited investors, under false pretenses, and without an appropriate prospectus containing warnings, disclaimers and "blue sky" notifications, and limiting sales to individuals of a certain minimum net worth, all of which were in violation of the US Securities Acts of 1933 and 1934.

118)   The benefits that flowed to Defendants from their involvement with The Fraudulent Enterprise varied.  For example,

a) Defendants Pearlman, Fischetti, Crudele, Finger, Bacchus, Wüllenkemper, McDonald, Tolner, Jans, Chamberlain, and Pohl and the Defendant Pearlman Companies directly benefited from the monies they received, stole and/or misappropriated from Plaintiffs,

b) Defendant Banks and FISERV benefited from the monies which they were able to deposit and/or the hundreds of millions of dollars in commercial transactions in which they engaged and from which they earned fees as a direct and/or indirect

result of their involvement, receipt and transfer of monies that came from The Fraudulent Enterprise;

c) Defendant Crist received and/or benefited from among other things:

i) campaign contributions that should never have been accepted from Defendant Pearlman and Defendant Pearlman Companies at a time when Crist's offices, or Offices under his direction and control, were investigating Defendant Pearlman and Defendant Pearlman Companies and which monies are/were almost certainly originated from the monies that were entrusted to Defendant Pearlman and Defendant Pearlman Companies through The Fraudulent Enterprise;

ii) unpaid or underpaid use of a private jet belonging to Defendant Pearlman and Defendant Pearlman Companies at the time when Defendant Crist's offices or Offices under his direction and control were investigating Defendant Pearlman and Defendant Pearlman Companies;

iii) acceptance of unpaid-for use of private skyboxes, tickets and/or other similar sports and entertainment facilities gratuities when Defendant Crist's offices or Offices under his direction and control were investigating Defendant Pearlman and Defendant Pearlman Companies;

iv) acceptance of unpaid-for fundraisers when Defendant Crist's offices or Offices under his direction and control were investigating Defendant Pearlman and Defendant Pearlman Companies; and

v) other unpaid benefits at a time when Defendant Crist's offices or Offices under his direction and control were investigating Defendant Pearlman and Defendant Pearlman Companies.

d) Defendant McCollum is now unfortunately the second consecutive Florida Attorney General in a *continuum* of Attorneys General of the State of Florida who has have been placed in a position of conflict of interest by Pearlman's new-found "generosity" towards his candidacy for public office (for Pearlman and his companies never gave money in these amounts previously). Defendant McCollum was and is still in a position to provide improper support and/or assistance to Defendant Pearlman, his companies and others involved in the Fraudulent Enterprise by failing to prosecute said Fraudulent Enterprise, and/or by not, other than by his campaign finance reporting requirements, publicly disclosing his conflict of interest with Pearlman and the Fraudulent Enterprise. Defendant McCollum's position is compromised because "(d)*espite ample evidence of the commission of massive crimes and the urgent nature of the situation, bilked investors and other citizens and interested persons of New York, Florida and 39 states foreign countries still await indictments from Florida Attorney General, more than five weeks after a receiver took control of the Pearlman Companies and the remains of the Fraudulent Enterprise"* (See Exhibit Binder).

e) Defendant McCollum received and/or benefited from among other things:

i) campaign contributions that should never have been accepted from Defendant Pearlman and Defendant Pearlman Companies at the time he knew and/or

should have known that there were investigations into Defendant Pearlman and Defendant Pearlman Companies and which monies are/were almost certainly originated from the monies that were entrusted to Defendant Pearlman and Defendant Pearlman Companies through The Fraudulent Enterprise; and

ii) acceptance of unpaid-for fundraisers when Defendant Crist's offices or offices under his direction and control were investigating Defendant Pearlman and Defendant Pearlman Companies; and

iii) other unpaid benefits at a time when Defendant Crist's offices or offices under his direction and control were investigating Defendant Pearlman and Defendant Pearlman Companies.

119)   The Fraudulent Enterprise was a scheme and artifice to defraud Plaintiffs.

120)   The Defendant Banks were under a duty to privately ensure that Plaintiffs' monies which were being entrusted to them, were sent to a proper trust account, with proper insurance and to confirm that it got to the intended location and was secure.

121)   Defendant FISERV and its predecessor Defendant Retirement Accounts Inc. were under a duty to ensure that the monies were safeguarded from the moment in time that they were transferred, wired or mailed to Defendant FISERV for deposit into the individual Plaintiffs' accounts.

122)   Defendant FISERV and its predecessor Defendant Retirement Accounts Inc. were also under a duty to ensure that the monies could not be withdrawn from the accounts into which they were deposited without the express prior written consent or direction of the individual Plaintiffs.

123)  The Defendant Banks and FISERV were under a duty to ensure that Defendant
Pearlman and Defendant Pearlman Companies did not transfer monies from the EISA
and Trans Con Stock accounts in the State of Florida to the Defendant Eurosavings in
Germany or other offshore accounts.

124)  Defendant Crist and State of Florida had a duty to investigate and take the
necessary and prudent steps to ensure that while they continued to investigate and/or
based on the complaints and/or reports they received from persons claiming to be
unable to get their money out of EISA or Trans Con Stock accounts, that Defendant
Pearlman and Defendant Pearlman Companies could not remove the monies from the
jurisdiction.

125)  As a direct result of The Fraudulent Enterprise, Plaintiffs and others, including
New York, New Jersey, Connecticut, Michigan, Georgia, Arizona, Illinois, Idaho and
Washington State, and others from around the United States and internationally lost at
least three-hundred-seventeen-million dollars ($317,000,000).  *See Exhibit Binder*.

126)  Many Plaintiffs were financially ruined.  Some lost their entire life savings, others
lost retirement accounts, and others lost their children's college funds.

127)  All of Plaintiffs were victimized through Defendant Pearlman and Defendant
Pearlman Companies and The Fraudulent Enterprise.

128)  The Defendant Banks, Defendant FISERV, Defendants Crist and Saxon,
Defendant Florida and others had actual and/or constructive knowledge that The
Fraudulent Enterprise was underway.  Each of these Defendants had a duty to conduct
reasonable investigations and take reasonable actions to halt the transfer of monies
from the EISA and Trans Con Stock accounts.

129)    If Defendant FISERV had adhered to the customary and accepted standard of care, Plaintiffs' monies would have only been sent to accounts from which they could not have been withdrawn them without Plaintiffs express written consent.

130)    If Defendants Bank of America, 5/3 Bank, Citibank, Chase, Sun and Wachovia had adhered to the customary and accepted standard of care, they would have checked incoming deposits, wires and monies and ensured that the monies entrusted to them were properly handled or they would have made the necessary inquiries into the EISA Accounts and/or they would have demanded the appropriate corporate resolutions, insurance certificates, underlying contracts and other documents.  And, as a result, the Plaintiffs' monies would either never have been accepted for deposit or the monies would have been deposited into proper individualized trust or fiduciary accounts with Plaintiffs' names and other identification and as a result, monies could not have been withdrawn without Plaintiffs' consent.

131)    If Officials of the State of Florida, including, persons within the Florida Defendant OFR and the Attorney General's Office, had taken ordinary care in the performance of their jobs dating back to the 1990s, or if they had even conducted a modest investigation or followed through with what is required, ordinary and customary due diligence, they would have discovered the underlying scheme and could have taken action to protect Plaintiffs and the other depositors.

132)    In violation of his duties and professional responsibilities, Defendant Crist accepted at least $11,000 and other benefits from Defendant Pearlman and Defendant Pearlman Companies at the time when Defendant Crist's offices or Offices under his

direction and control were investigating Defendant Pearlman and Defendant

Pearlman Companies.

133)    In violation of his duties and professional responsibilities, Defendant Crist

accepted monies from Defendant Pearlman and Defendant Pearlman Companies at

the time when Defendant Crist's offices were investigating Defendant Pearlman and

Defendant Pearlman Companies and which monies he knew, should have known or

could have determined to be the equivalent of monies stolen and/or misappropriated

from Plaintiffs through The Fraudulent Enterprise.

134)    Defendant Pearlman convinced the other Defendants to go along with him and as

a result Defendants FISERV, Bank of America, 5/3 Bank, Sun, Citibank, Chase and

Wachovia (i) did not report the problems they learned of because of their relationship

with and the profits they earned from their business with Defendant Pearlman and

Defendant Pearlman Companies, (ii) did not perform their fiduciary duties, and

allowed monies to be transferred to wrong or improper or unauthorized accounts; (iii)

did not utilize ordinary care, did not adhere to banking reporting laws such as the US

Bank Secrecy Act, which requires reporting suspicious activity; and allowed monies

to be deposited into improper, unintended and/or non-trust or non-fiduciary accounts

from which they were withdrawn and misappropriated, and also allowed money

(approximately $78 million or more) to be transferred out of Defendant Pearlman

Company EISA accounts and/or overseas.

135)    Defendant Crist – as a licensed attorney, the Attorney General of Florida and a

Public Official of the State of Florida - had a duty to avoid the appearance of

impropriety especially in relation to Defendant Pearlman and Defendant Pearlman

--------------------
*Alkow  et al v. Pearlman et al – New York Federal Complaint March 2007 – Page 38*

Companies who/which were under investigation by him, Defendant Florida and Defendant OFR.

136)    Defendant McCollum – as a licensed attorney a candidate for the office of the Attorney General of Florida and a Public Official of the State of Florida - had a duty to avoid the appearance of impropriety especially in relation to Defendant Pearlman and Defendant Pearlman Companies who/which is or was under investigation by the Florida Attorney General's Office, Defendant Florida and Defendant OFR.

137)    The timing and manner of the political contributions from Defendant Pearlman and Defendant Pearlman Companies to Defendant Crist and the time when he was responsible for, overseeing and/or had knowledge of investigations into Defendant Pearlman and Defendant Pearlman Companies would or should have put a person in Defendant Crist's position on notice of the potential for the appearance of impropriety for him to accept the thousands of dollars of campaign contributions, use of private jets, sky boxes, hosting of fundraisers and other benefits from a person/entity under investigation.

138)    Defendant Crist violated his professional duty to avoid the appearance of impropriety and may have also allegedly knowingly or negligently accepted monies which were stolen and/or misappropriated from Plaintiffs and others through The Fraudulent Enterprise.

139)    In or about the beginning of 2006, as the existence of The Fraudulent Enterprise started to become public, Defendant Crist, other officials from Defendant OFR and other officials in the State of Florida started to engage in and/or direct a pattern of activity that was intended to interfere with Plaintiffs ability to secure the return of

their monies, advance the investigations into persons involved and/or was otherwise intended to interfere with Plaintiffs' due process rights.

140)    Specifically and as recently as 2007 in response to an editorial in local Florida newspapers that urged persons to contact their local law enforcement authorities to report if and how they were victimized - an agent for Defendant  OFR, Defendants Florida, Defendant Crist and Defendant  McCollum – caused a letter to be sent and published in which victims were urged not to contact their local law enforcement agencies and allow the Defendants agencies to finish their investigations without the involvement of other agencies.  Defendant Florida and Crist – through this agent – sought to prevent persons from exercising their rights and from taking steps to protect their property.  See Exhibit 6.

141)    During the period from late 2006 to the present, Defendants Brooks and McHale have engaged in multiple acts designed to interfere with and/or disparage efforts by Plaintiffs to secure evidence, documents and information related to:

a)  Who was responsible for and/or involved in The Fraudulent Enterprise;

b)  Why no actions were taken by Defendants OFR and Crist during the period from 2003 through 2006;

c)  How much money was in the accounts of Defendant Pearlman and Defendant Pearlman Companies as of January 2003 when Defendant OFR had actual knowledge of The Fraudulent Enterprise and The EISA Scam;

d)  What records existed between 2003 – 2006 of the investigation by Defendant OFR and referral to Defendant Crist's offices related to the Fraudulent Enterprise and The EISA Scam;

See Exhibits 6, 7 and Exhibit Binder.

e)  How much money was in the accounts of Defendant Pearlman and Defendant

Pearlman Companies as of January / February 2004 after Defendant OFR

received the letter from Peter Antonacci had actual knowledge of The Fraudulent

Enterprise and The EISA Scam;

f)  How much money was in the accounts of Defendant Pearlman and Defendant

Pearlman Companies as of January 2004, 2005 and 2006 after Defendant OFR

had actual knowledge of The Fraudulent Enterprise and The EISA Scam;

g)  How much money was in the accounts of Defendant Pearlman and Defendant

Pearlman Companies at the Defendant Banks when they were lending him monies

and which upon reasonable diligence they should or should have known was

money that belonged to Plaintiffs or others and others who were victimized by

The Fraudulent Enterprise and whose monies and/or assets could not and should

not be used as collateral for loans which were being improperly extended to

Defendant Pearlman and Defendant Pearlman Companies;

h)  How much money was in the accounts of Defendant Pearlman and Defendant

Pearlman Companies in 2006 after Defendant OFR  had actual knowledge of The

Fraudulent Enterprise and The EISA Scam and before monies were transferred

out of Florida; and

i)  Why Defendants Florida and/or OFR failed to provide sufficient funding for their

agent McHale who was supposedly empowered to investigate, find, seize and/or

marshal the assets of Defendant Pearlman and Defendant Pearlman Companies.

See Exhibit Binder.

142)    As a direct and proximate result of Defendants individual and/or collective

negligence and/or wrongful acts, (i) hundreds of millions of dollars have been stolen;

(ii) Defendant Pearlman has fled and is hiding in a foreign country at an undisclosed

location; (iii) Defendants Fischetti, Crudele and Finger and others have refused to

provide information related to The Fraudulent Enterprise necessary to help Plaintiffs

recover their monies; (iv) Defendant Florida has failed to issue any indictments; (v)

Defendant Florida has failed to provide the Receiver with the necessary funds with

which to conduct his investigation and track down assets and witnesses and (vi)

Defendant Florida and its agents continue to interfere with Plaintiffs' due process

rights.

## COUNT I – RICO 18 USC § 1962

143)    Plaintiffs repeated and reallege the allegations as set forth in paragraphs 12 to 142

inclusive as if the same were set forth fully and at length herein.

144)    Plaintiffs are all victims of The Fraudulent Enterprise, as Plaintiffs' monies were

deposited, entrusted and/or invested in the EISA accounts or The Trans Con Stock

Program or both.

145)    Defendant Pearlman, Defendant Pearlman Companies, Defendants Pearlman,

Fischetti, Crudele, Finger, Bacchus, Wüllenkemper, McDonald, Tolner, Jans,

Chamberlain, and Pohl promoted The Fraudulent Enterprise to Plaintiffs through a series

of misrepresentations that Plaintiffs' monies would be placed in high-yield, insured

savings accounts at banks which were FDIC insured and which accounts also had AIG or

Lloyd's of London insurance. *See Exhibit Binder.*

--------------------

146)    The primary actors in The Fraudulent Enterprise were Defendant Pearlman,

Defendant Pearlman Companies, Defendants Fischetti, Crudele, Finger, Bacchus,

Wuellenkemper, McDonald, Tolner, Jans, Chamberlain, and Pohl and other Defendants.

147)    The secondary actor in The Fraudulent Enterprise was Defendant FISERV and its

predecessor Retirement Accounts Inc.

148)    The other negligent participants in The Fraudulent Enterprise were the directors,

officers, agents and representatives of Defendant Pearlman and his companies, as well as

the directors, officers, agents and representatives of Defendant Banks which allowed

Plaintiffs money to be deposited into unauthorized, improper and unsecure accounts from

which it was later stolen.

149)    The Plaintiffs, along with their counterparts in a related action filed in the United

States District Court for the Middle District of Florida, Clements v. Pearlman, 07-cv-

000399, represent the single largest majority of persons from the New York area, Florida,

and around the United States and overseas who were the victims of The Fraudulent

Enterprise.

150)    As part of The Fraudulent Enterprise, Plaintiffs were offered and/or sold unregistered

securities – in the form of the EISA accounts - in violation of Florida and US law.

151)    As part of The Fraudulent Enterprise, Plaintiffs were offered and/or sold unregistered

securities – in the form of the Trans Con Stocks - in violation of Florida and US law.

152)    As part of The Fraudulent Enterprise, Defendants were received and/or were

entrusted with EISA "deposits" in excess of $204 million, exclusive of interest. *See*

*Exhibit Binder* .

153)   As part of The Fraudulent Enterprise, Defendants were received and/or were

entrusted with Trans Con Stock Program "monies" in excess of $100 million, exclusive

of interest.  *See Exhibit Binder* .

154)   The Fraudulent Enterprise involved the providing of writings, correspondence,

mailings, faxes, promotional materials and other documents, all of which were intended

to and did induce Plaintiffs to entrust their monies to The Fraudulent Enterprise which

violated 18 USC § 1953 wire and mail fraud.

155)   As part of The Fraudulent Enterprise, Defendants Pearlman, Fischetti, Crudele,

Finger, Bacchus, Wuellenkemper, McDonald, Tolner, Jans, Chamberlain, and Pohl, Pohl,

other Defendants, Defendant Pearlman Companies, Defendant FISERV and Defendant

Banks provided or caused to be provided to Plaintiffs traditional banking documents such

as Opening Account Forms, Signature Cards, Social Security and Tax ID Disclosure

Forms, Wire Instructions, Mailing Instructions, Contact Information Forms, Deposit

Slips, Withdrawal Slips, Account Statements and other documents.  *See Exhibit Binder* .

156)   As part of The Fraudulent Enterprise, the Plaintiffs were specifically directed in

writing, conveyed by mail and fax, and by telephonic instructions, where their monies

were to be deposited, sent and/or transferred.   *See Exhibit Binder* .

157)   As part of The Fraudulent Enterprise, it was agreed and/or understood by and

between Defendant Pearlman, Defendant Pearlman Companies, Defendant FISERV and

Defendant Banks, that upon receipt and/or notification that Plaintiffs' monies were

deposited and/or received by Defendant FISERV and/or Defendant Banks, the monies

were not to be deposited into the intended accounts but instead would be deposited into

accounts from which they could later be transferred or drawn upon by Defendant

Pearlman and/or Defendant Pearlman Companies, or others acting on his or their behalf, and without Plaintiffs' prior written consent.

158)   As and for their part of The Fraudulent Enterprise, this agreement, understanding or practice that Defendant FISERV and Defendant Banks failed to deposit or insure the deposit of Plaintiffs' Monies into the intended accounts was intentional, improper, careless, reckless and/or negligent and was in violation of their duties to Plaintiffs.

159)   As and for their part of The Fraudulent Enterprise, this agreement, understanding or practice that Defendant FISERV and Defendant Banks allowed Defendant Pearlman, Defendant Pearlman Companies and/or persons acting on his or their behalf to monies to deposit Plaintiffs' Monies into accounts from which they could later be transferred or drawn upon by Defendant Pearlman and/or Defendant Pearlman Companies, or others acting on his or their behalf, and without Plaintiffs' prior written consent, was intentional, improper, careless, reckless and/or negligent and was in violation of their duties to Plaintiffs.

160)   As and for their part of The Fraudulent Enterprise, it was the agreement, understanding and/or practice that Defendant FISERV and Defendant Banks would periodically change the names on the accounts, or the description of the monies deposited in the accounts or the monies entrusted to them.   This scheme was accomplished via changes to (i) the monthly statements and/or (ii) the forms which were used to open the EISA accounts or credit the "acquisition" of Trans Con Stock.

161)   During the period of 2002 – 2006, monies from The Fraudulent Enterprise, including Plaintiffs' Monies, were disbursed as follows,  approximately $118 million of monies from Plaintiffs and others was withdrawn improperly and without Plaintiffs' permission

to pay offer earlier "depositors" whose monies were stolen or misappropriated by Defendant Pearlman, Defendant Pearlman Companies and/or others acting on his or their behalf.  Disbursement were made as follows:

a)  approximately $34 million went to Defendant Pearlman's closely held corporation Defendant Pearlman Enterprises;

b)  $ 4.2 million went to Defendant Pearlman;

c)  $2.5 million went to Defendant Aegis Consulting;

d)  $2 million went to Defendant Trans Con Records;

e)  $950,000 went to Defendant TC Leasing;

f)  $1.7 million went to Defendant Trans Con Talent;

g)  $710,000 went to Defendant Fashion Rock;

h)  $732,000 went to Defendant Crudele;

i)  $ 700,000 went to Defendant Trans Con Travel;

j)  $350,000 went to Defendant F.F. Station;

k)  $228,000 went to Defendant Trans Country Music;

l)  $218,000 went to Defendant Trans Con Studios;

m)  $135,000 went to Defendant Trans Con Aviation;

n)  $5,000 went to Kristin Finger;

o)  Millions more in Trans Con Stock and EISA monies were pledged as collateral to Defendant Banks[5], for Defendant Pearlman's ongoing businesses and properties, including  Church Street Station in Orlando;

---

[5] Some the Defendant Banks named in this action who benefitted from, were involved in and/or were negligent in relation to The Fraudulent Enterprise were among those who received monies that can be directly related back to The EISA Accounts and/or Trans Con Stock program.  These are the same banks

p)  Tens of thousands went to pay fees to Defendants FISERV and Defendant Banks;

q)  At least $11,000 went to Defendant Crist's 2006 Gubernatorial Campaign (See Exhibit 4);

r)  Tens of thousands more went to pay for benefits given or made available to Defendant Crist's Gubernatorial Campaign for his use of a private jet (Exhibit 4), fundraisers (Exhibit 8), and sports luxury boxes to Crist and Kottcamp (See also Exhibit Binder for additional information. Plaintiffs also have received information from a reliable source regarding Crist's use of Pearlman's skybox in order to entertain guests at Raymond James Stadium during the Tampa Bay Buccaneers football team's 2006 season;

s)  $4,500 went from Pearlman and his companies to Bill Defendant McCollum for his Attorney General Campaign (See Exhibit 5).

162)  As part of The Fraudulent Enterprise, Defendant Pearlman, Defendant Pearlman Companies and others, misrepresentations also included the fabrication of the existence of professionals, such as accountants, lawyers and auditors, who allegedly were supporting the credibility of the EISA and Trans Con Stock Program Accounts.  *See Exhibit Binder.*

---

which Plaintiffs have learned have commenced actions against Defendant Pearlman and/or Defendant Pearlman Companies in various courts seeking to recover real estate and/or other assets based on certain loan transactions which Defendant Banks know, should have known and/or could have discovered through the exercise of reasonable diligence were collateralized with Plaintiffs' Monies.  These Defendant Banks appear to be attempting to improperly gain a priority position ahead of Plaintiffs.  Plaintiffs will be taking the necessary actions to alert the Courts of Defendant Banks wrongful acts and the need to protect the Plaintiffs from being further victimized by Banks involved directly or indirectly in and/or which benefited from The Fraudulent Enterprise and which should forfeit their loans and pay damages to Plaintiffs, instead of trying to gain an unfair position in the litigation to recover monies and damages for persons/entities who/which were truly victimized by The Fraudulent Enterprise.

-------------------

163)    In furtherance of The Fraudulent Enterprise, and unbeknownst to Plaintiffs, several

entities were created in Germany to which Plaintiffs' Monies from the EISA and Trans

Con Stock Program Accounts were to be sent.  *See Exhibit Binder.*

164)    In 2006, millions of dollars started to be sent from the accounts that were supposed to

be maintained at Defendant FISERV and Defendant Banks to the German entities.

165)    These German entities were intended to be the "offshore type" of vehicles or entities

to which the stolen and/or misappropriated monies were to be sent to companies that

Defendant Pearlman and Mullenkamper created such as Defendant Eurosavings and

Triple M, out of the reach of Florida and US authorities.

166)    In 2006, several transfers and/or disbursements in the hundreds of thousands and

millions of dollars from the EISA accounts were improperly transferred to accounts at

Defendant Banks for unintended purposes, including payment of monthly loans.

167)    In 2006, millions of dollars of Trans Con Stock (from the Trans Con Stock Program)

was improperly transferred or pledged to accounts at Defendant Banks as collateral for

loans.

168)    As late as December 2006, a single wire transfer of $ 1 million was solicited and

improperly and/or wrongfully accepted and transferred to accounts by Defendant Bank of

America and into accounts from which it knew that Defendant Pearlman was going to

and could steal or misappropriate the monies.   See Exhibit Binder.  As with other EISA

and Trans Con Stock Program accounts, the necessary, proper and required

documentation related to even this December 2006 deposit, withdrawal and transfer, was

not secured by Defendant Bank.

169)    As part of The Fraudulent Enterprise, Defendants Pearlman and/or Fischetti were the
        improperly designated and allowed – by Defendant FISERV and Defendant Banks - to be
        signatories on the EISA and Trans Con Stock Program accounts.

170)    As part of The Fraudulent Enterprise and to continue the fraud on Plaintiffs, quarterly
        statements were created and mailed to Plaintiffs EISA depositors, which statements
        improperly reflected or characterized deposits, interest earned and account balances, as
        Plaintiffs' Monies were not in the proper, required, insured and protected accounts.  *See
        Exhibit Binder.*

171)    As part of The Fraudulent Enterprise and to continue the fraud on Plaintiffs, the
        quarterly account statements were created and mailed to Plaintiffs EISA depositors that
        reflected either "Insured Amount" or "Insured Account Balance," when in fact no
        insurance existed.  *See Exhibit Binder.*

172)    As part of The Fraudulent Enterprise, Defendant FISERV and/or Defendant Banks
        issued or caused to be issued and mailed to Plaintiffs EISA depositors Federal Tax
        Forms, such as 1099s.  *See Exhibit Binder* .

173)    However, at the time the Federal Tax Forms were issued, Defendant FISERV and
        Defendant Banks knew, should have known and/or could have discovered through the
        exercise of reasonable diligence that the 1099 Federal Tax Forms they were issuing were
        from the wrong companies, or the wrong accounts and/or otherwise did not accurately
        reflect where and with whom Plaintiffs' Monies were supposed to be deposited.

174)    As part of The Fraudulent Scheme, Defendant Pearlman, Defendant Pearlman
        Companies, Defendant FISERV and Defendant Banks failed to demand the necessary,
        appropriate, customary and required forms when opening and operating bank accounts

and when receiving and sending wire transfers of the frequency and amount involved with The Fraudulent Enterprise.

175)     As part of The Fraudulent Enterprise and to continue the fraud on Plaintiffs, quarterly account statements were issued for Plaintiffs who had Trans Con Stock Program accounts.  These quarterly account statements, purported to reflect number of shares owned, interest earned, and in some cases, assurances that the shares were insured or guaranteed.  *See Exhibit Binder.*

176)     As part of The Fraudulent Enterprise, Plaintiffs involved with the Trans Con Stock program received these account statements instead of receiving stock certificates and were told that the shares were *"on file"* or had been deposited at or with Defendant Pearlman Companies, or Defendant FISERV and/or Defendant Banks.  *See Stock Account Statements in Exhibit Binder*

177)     Defendants Pearlman, Fischetti, Crudele, Finger, Bacchus, Wuellenkemper, McDonald, Tolner, Jans, Chamberlain, Pohl other Defendants, Defendant Pearlman Companies, Defendant FISERV and Defendant Banks, as well as their officers, agents, employees and/or other persons acting on their behalf, at their direction or with their knowledge, associated themselves with The Fraudulent Enterprise, as that is defined herein, and conducted and participated in the affairs of The Fraudulent Enterprise through a pattern of racketeering activity in violation of 18 USC § 1962 ( c).

178)     Specifically, Defendants Pearlman, Fischetti, Crudele, Finger, Bacchus, Wuellenkemper, McDonald, Tolner, Jans, Chamberlain, Pohl, other Defendants,, Defendant Pearlman Companies, as well as its/their officers, agents, employees and/or other persons acting on their behalf, at their direction or with their knowledge, separately

and together knowingly, willfully and unlawfully devised and executed a scheme to

defraud Plaintiffs through Defendants' use of the enterprise in order to obtain monies

from Plaintiffs based upon representations and promises of interest to be earned and

guaranteed, opinion letters from purportedly credible and reputable accountants and

lawyers, insurance of principal, deposits into fiduciary and individualized accounts  at

accredited, reputable and federally insured banks such as Defendants Bank of America,

5/3 Bank and Wachovia, use of reliable and insured transfer agents such as Defendant

FISERV, references from ratings agencies such as Defendant D & B and by other

promises and representations which were fraudulent, and/or part of the criminal and/or

illegal enterprise and/or acts.

179)   In furtherance of The Fraudulent Enterprise and scheme to defraud Plaintiffs, certain

of the false and fraudulent statements made knowingly by certain Defendants, with the

approval, acquiescence and for the benefit of the other Defendants were transmitted

through the means of the US mails, in direct violation of 18 USC § 1341.  The mailings

made to advance the scheme to defraud Plaintiffs and each of which constitutes a distinct

and separate offense in violation of 18 USC § 1341, include but are not limited to the

following:

a)   During the period from 1995 to 2006, in furtherance of The Fraudulent Enterprise,

Defendants Pearlman, Fischetti, Crudele, Finger, Bacchus, Wuellenkemper,

McDonald, Tolner, Jans, Chamberlain, and Pohl other Defendants, Defendant

Pearlman Companies, as well as its/their officers, agents, employees and/or other

persons acting on their behalf, at their direction or with their knowledge, created,

mailed, faxed and/or otherwise provided Plaintiffs with opinion letters from

purportedly credible and reputable accountants and lawyers when in fact no such

accountants or lawyers existed and no such opinions letters were issued.  *See Exhibit*

*Binder.*

b)  During the period from 1995 to 2006, in furtherance of The Fraudulent Enterprise,

Defendants Pearlman, Fischetti, Crudele, Finger, Bacchus, Wuellenkemper,

McDonald, Tolner, Jans, Chamberlain, Pohl, other Defendants, Defendant Pearlman

Companies, as well as its/their officers, agents, employees and/or other persons acting

on their behalf, at their direction or with their knowledge, created, mailed, faxed

and/or otherwise provided Plaintiffs with copies of insurance certificates or binders

when in fact no such insurance certificates or binders existed.  *See Exhibit Binder* .

c)  During the period from 1995 to 2006, in furtherance of The Fraudulent Enterprise,

Defendants Pearlman, Fischetti, Crudele, Finger, Bacchus, Wuellenkemper,

McDonald, Tolner, Jans, Chamberlain, Pohl, other Defendants, Defendant Pearlman

Companies, as well as its/their officers, agents, employees and/or other persons acting

on their behalf, at their direction or with their knowledge, and Defendant FISERV

and Defendant Banks, created, mailed, faxed and/or otherwise provided or caused to

be provided to Plaintiffs proofs of deposits into fiduciary and individualized accounts

at their accredited, reputable and federally insured banks, when in fact no such

deposits were made or existed.  *See Exhibit Binder.*

d)  During the period from 1995 to 2006, in furtherance of The Fraudulent Enterprise,

Defendants Pearlman, Fischetti, Crudele, Finger, Bacchus, Wuellenkemper,

McDonald, Tolner, Jans, Chamberlain, Pohl, other Defendants, Defendant Pearlman

Companies, as well as its/their officers, agents, employees and/or other persons acting

on their behalf, at their direction or with their knowledge, created, mailed, faxed and/or otherwise provided or caused to be provided to Plaintiffs, proofs of interests statements when in fact no such interest payments were made or existed.  *See Exhibit Binder* .

e) During the period from 1995 to 2006, in furtherance of The Fraudulent Enterprise, Defendants Pearlman, Fischetti, Crudele, McDonald, Tolner, Jans, Chamberlain, Pohl, other Defendants, Defendant Pearlman Companies, as well as its/their officers, agents, employees and/or other persons acting on their behalf, at their direction or with their knowledge, and Defendant FISERV and Defendant Banks, created, mailed, faxed and/or otherwise provided or caused to be provided to Plaintiffs copies of proofs that the transfers, deposits, wires and accounts were being handled, administered and/or overseen by insured transfer agents such as Defendant FISERV and Defendant Banks, when in fact no such handling, administration and/or oversight existed.  *See Exhibit Binder.*

f) During the period from 1995 to 2006, in furtherance of The Fraudulent Enterprise, Defendants Pearlman, Fischetti, Crudele, Finger, Bacchus, Wuellenkemper, McDonald, Tolner, Jans, Chamberlain, Pohl, other Defendants, Defendant Pearlman Companies, as well as its/their officers, agents, employees and/or other persons acting on their behalf, at their direction or with their knowledge, created, mailed, faxed and/or otherwise provided or caused to be provided to Plaintiffs references from ratings agencies such as Defendant D & B when in fact no such references existed or were obtained through fraud and misrepresentations to or by D & B. *See Exhibit Binder* .

g) During the period from 1995 to 2006, in furtherance of The Fraudulent Enterprise, Defendants Pearlman, Fischetti, Crudele, Finger, Bacchus, Wuellenkemper, McDonald, Tolner, Jans, Chamberlain, Pohl, other Defendants, Defendant Pearlman Companies, as well as its/their officers, agents, employees and/or other persons acting on their behalf, at their direction or with their knowledge, created, mailed, faxed and/or otherwise provided or caused to be provided to Plaintiffs regular monthly account statements indicating that their monies continued to be deposited into Defendant banks, continued to earn the promised interest, was performing exactly as promised and would be available for Plaintiffs if, as and when they wished or needed to withdraw same, when in fact no such statements existed and the money was being systematically siphoned off. *See Exhibit Binder* .

h) During the period from 1995 to 2006, in furtherance of The Fraudulent Enterprise, Defendants Pearlman, Fischetti, Crudele, Finger, Bacchus, Wuellenkemper, McDonald, Tolner, Jans, Chamberlain, Pohl, other Defendants, Defendant Pearlman Companies, as well as its/their officers, agents, employees and/or other persons acting on their behalf, at their direction or with their knowledge, created, mailed, faxed and/or otherwise provided or caused to be provided to Plaintiffs letters related to their accounts when in fact the accounts or monies were gone or never even existed and their monies were siphoned off. *See Exhibit Binder* .

180) Additionally, in furtherance of the above described scheme to defraud Plaintiffs, false and fraudulent statements were knowingly made by Defendants Pearlman, Fischetti, Crudele, Finger, Bacchus, Wuellenkemper, McDonald, Tolner, Jans, Chamberlain, Pohl, other Defendants, Defendant Pearlman Companies, as well as its/their officers, agents,

employees and/or other persons acting on their behalf, at their direction or with their knowledge, and with the approval, acquiescence and for the benefit of others Defendants, which statements were transmitted by use of the interstate wires, in direct violation of 18 USC § 1343.  The false and fraudulent wire transmissions were made to advance the scheme to defraud Plaintiffs, each of which constituted a distinct and separate offense in violation of 18 USC § 1343, including but are not limited to the following:

a) Telephone calls made periodically to Plaintiffs from 1991 to 2006, wherein the false and fraudulent statements were made to Plaintiffs about opinion letters from purportedly credible and reputable accountants and lawyers when in fact no such accountants or lawyers existed and no such opinions letters were issued;

b) Telephone calls made periodically to Plaintiffs from 1991 to 2006, wherein the false and fraudulent statements were made to Plaintiffs about insurance certificates or binders when in fact no such insurance certificates or binders existed;

c) Telephone calls made periodically to Plaintiffs from 1991 to 2006, wherein the false and fraudulent statements were made to Plaintiffs about confirmation and proofs of deposits into fiduciary and individualized accounts at accredited, reputable and federally insured banks such as Defendant Banks when in fact no such deposits were made or existed;

d) Telephone calls made periodically to Plaintiffs from 1991 to 2006, wherein the false and fraudulent statements were made to Plaintiffs about interests accrued when in fact no such interest payments were made or existed;

e) Telephone calls made periodically to Plaintiffs from 1991 to 2006, wherein the false and fraudulent statements were made to Plaintiffs about proofs that transfers,

deposits, wires and accounts were being handled, administered and/or overseen by insured transfer agents such as Defendant FISERV, when in fact no such handling, administration and/or oversight existed;

f) Telephone calls made periodically to Plaintiffs from 1991 to 2006, wherein the false and fraudulent statements were made to Plaintiffs about positive references from ratings agencies such as Defendant D & B when in fact no such references existed;

g) Telephone calls made periodically to Plaintiffs from 1991 to 2006, wherein the false and fraudulent statements were made to Plaintiffs about regular monthly statements that their monies continued to be deposited into Defendant banks, continued to earn the promised interest, was performing exactly as promised and would be available for Plaintiffs if, as and when they wished or needed to withdraw same, when in fact no such statements existed and the money was being systematically siphoned off;

h) Telephone calls made periodically to Plaintiffs from 1991 to 2006, wherein the false and fraudulent statements were made to Plaintiffs about Plaintiffs' Monies being safeguarded in the individualized accounts at Defendant FISERV and/or Defendant Banks, when in fact the accounts had no monies in them or never existed and their monies were siphoned off; and

181) Additionally, in furtherance of the above described scheme to defraud Plaintiffs, false and fraudulent statements were knowingly made by Defendants Pearlman, Fischetti, Crudele, Finger, Bacchus, Wuellenkemper, McDonald, Tolner, Jans, Chamberlain, Pohl, other Defendants, Defendant Pearlman Companies, as well as its/their officers, agents, employees and/or other persons acting on their behalf, at their direction or with their knowledge, and with the approval, acquiescence and for

the benefit of other Defendants, were transmitted by use of the interstate wires, in direct violation of 18 USC § 1343.  The false and fraudulent wire transmissions were made to advance the scheme to defraud Plaintiffs, each of which constitutes a distinct and separate offense in violation of 18 USC § 1343, including but are not limited to the following:

a) Facsimiles sent periodically from 1991 – 2006, wherein Defendants Pearlman, Fischetti, Crudele, Finger, Bacchus, Wuellenkemper, McDonald, Tolner, Jans, Chamberlain, Pohl, other Defendants, Defendant Pearlman Companies, as well as its/their officers, agents, employees and/or other persons acting on their behalf, at their direction or with their knowledge, as well as Defendant FISERV and/or Defendant Banks falsely and fraudulently directed Plaintiffs where to wire their monies and into which individualized accounts their monies were to be deposited at which Defendant banks;  *See Exhibit Binder;*

b) Facsimiles sent periodically from 1991 – 2006, in which Defendants Pearlman, Defendants Fischetti, Crudele, Finger, Bacchus, Wuellenkemper, McDonald, Tolner, Jans, Chamberlain, Pohl, other Defendants, and Defendant Pearlman Companies, as well as its/their officers, agents, employees and/or other persons acting on their behalf, at their direction or with their knowledge, gave false or fraudulent information confirming or allegedly confirming receipt of Plaintiffs' Monies which had been wired for deposit into individualized accounts at Defendant Banks;  *See Exhibit Binder* ;

c) Facsimiles sent periodically from 1991 – 2006 wherein Defendants Pearlman, Defendants Fischetti, Crudele, Finger, Bacchus, Wuellenkemper, McDonald,

Tolner, Jans, Chamberlain, Pohl, other Defendants, Defendant Pearlman Companies, as well as its/their officers, agents, employees and/or other persons acting on their behalf, at their direction or with their knowledge, made false and fraudulent representations to Plaintiffs that there were insurance certificates or binders when in fact no such insurance certificates or binders existed; *See Exhibit Binder*;

d)   Facsimiles sent periodically from 1991 – 2006 wherein Defendants Pearlman, Defendants Fischetti, Crudele, Finger, Bacchus, Wuellenkemper, McDonald, Tolner, Jans, Chamberlain, Pohl, other Defendants, and Defendant Pearlman Companies, as well as its/their officers, agents, employees and/or other persons acting on their behalf, at their direction or with their knowledge, made false and fraudulent statements to Plaintiffs that there were proofs of deposits into fiduciary and individualized accounts at accredited, reputable and federally insured banks such as Defendant FISERV and Defendant Banks when in fact no such deposits were made or existed; *See Exhibit Binder* ;

e)   Facsimiles sent periodically from 1991 - 2006 wherein Defendants Pearlman, Defendants Fischetti, Crudele, Finger, Bacchus, Wuellenkemper, McDonald, Tolner, Jans, Chamberlain, Pohl, other Defendants, and Defendant Pearlman Companies, as well as its/their officers, agents, employees and/or other persons acting on their behalf, at their direction or with their knowledge, made false and fraudulent statements to Plaintiffs that there was proof of interest statements when in fact no such interest payments were made or existed; *See Exhibit Binder* ;

f) Facsimiles sent periodically from 1991 – 2006 wherein Defendants Pearlman, Defendants Fischetti, Crudele, Finger, Bacchus, Wuellenkemper, McDonald, Tolner, Jans and Chamberlain, Pohl, other Defendants, Defendant Pearlman Companies, as well as its/their officers, agents, employees and/or other persons acting on their behalf, at their direction or with their knowledge, made false and fraudulent statements to Plaintiffs that there were copies of proofs that the transfers, deposits, wires and accounts were being handled, administered and/or overseen by insured transfer agents such as Defendant FISERV, when in fact no such handling, administration and/or oversight existed; *See Exhibit Binder* ;

g) Facsimiles sent periodically from 1991 – 2006 wherein Defendants Pearlman, Defendants Fischetti, Crudele, Finger, Bacchus, Wuellenkemper, McDonald, Tolner, Jans and Chamberlain, Pohl, other Defendants, Defendant Pearlman Companies, as well as its/their officers, agents, employees and/or other persons acting on their behalf, at their direction or with their knowledge, made false and fraudulent statements to Plaintiffs that there were positive references from ratings agencies such as Defendant D & B when in fact no such references existed; *See Exhibit Binder* ;

h) Facsimiles sent periodically from 1991 - 2006 wherein Defendants Pearlman, Defendants Fischetti, Crudele, Finger, Bacchus, Wuellenkemper, McDonald, Tolner, Jans and Chamberlain, Pohl, other Defendants, Defendant Pearlman Companies, as well as its/their officers, agents, employees and/or other persons acting on their behalf, at their direction or with their knowledge, made false and fraudulent statements to Plaintiffs that there were regular monthly statements that

their monies continued to be deposited into Defendant banks, continued to earn the promised interest, was performing exactly as promised and would be available for Plaintiffs if, as and when they wished or needed to withdraw same, when in fact no such statements existed and the money was being systematically siphoned off; *See Exhibit Binder*; and

i)   Facsimiles sent periodically from 1991 - 2006 wherein Defendants Pearlman, Defendants Fischetti, Crudele, Finger, Bacchus, Wuellenkemper, McDonald, Tolner, Jans and Chamberlain, Pohl, other Defendants, Defendant Pearlman Companies, as well as its/their officers, agents, employees and/or other persons acting on their behalf, at their direction or with their knowledge, made false and fraudulent statements to Plaintiffs that the monies were safeguarded in the individualized accounts at Defendant Bank, when in fact the accounts were gone and their monies were siphoned off.   *See Exhibit Binder* ;

182)   Additionally in furtherance of the above described scheme to defraud Plaintiffs, Defendants Pearlman, Defendants Fischetti, Crudele, Finger, Bacchus, Wuellenkemper, McDonald, Tolner, Jans and Chamberlain, Pohl, other Defendants, Defendant Pearlman Companies, as well as its/their officers, agents, employees and/or other persons acting on their behalf, at their direction or with their knowledge, committed numerous and direct violations of 18 USC § 1030 by using computers, emails and messaging to induce Plaintiffs to first wire, deposit and/or entrust their monies to the Defendants and later to keep the monies in place until it was secretly withdrawn, and ultimately, to deceive Plaintiffs from realizing the fraud until the monies had been removed from the jurisdiction.

183)    Additionally in furtherance of the above described scheme to defraud Plaintiffs, Defendants Pearlman, Defendants Fischetti, Crudele, Finger, Bacchus, Wuellenkemper, McDonald, Tolner, Jans and Chamberlain, Pohl, other Defendants, Defendant Pearlman Companies, as well as its/their officers, agents, employees and/or other persons acting on their behalf, at their direction or with their knowledge, have committed numerous and direct violations of 18 USC § 1952 by traveling in interstate and foreign commerce and using the facilities of interstate and foreign commerce, including the wires and mails, to distribute the proceeds of their unlawful activity and to promote, manage, establish, carry on and to facilitate the promotion, management, establishment and carrying on of their unlawful activities.

184)    Additionally in furtherance of the above described scheme, public officials, agents or representatives, including but not limited to Defendants Crist, others in Defendant OFR and other agents, officials and/or representatives of the State of Florida, involved with the process through which the investigation into The Fraudulent Enterprise, Defendant Pearlman and Defendant Pearlman Companies' fraudulent and unlawful scheme, received monies or other items of value, at a time when the investigations  were discontinued or delayed with the result that prosecutions were and have never been brought to date, and which acts are in violation of 18 USC § 1952 and 18 USC § 201.

185)    The above described enterprise and scheme to defraud and fraud was a "Hub & Spoke" conspiracy with Pearlman at the center of the conspiracy and enterprise and each of the Defendant individuals and/or businesses performing their acts in furtherance of the conspiracy.

186)   The above described enterprise and scheme to defraud and fraud required the active or passive involvement of Defendant FISERV, Defendant Banks which would cooperate with Defendants Pearlman, Defendants Fischetti, Crudele, Finger, Bacchus, Wuellenkemper, McDonald, Tolner, Jans and Chamberlain, Pohl, other Defendants, Defendant Pearlman Companies, as well as its/their officers, agents, employees and/or other persons acting on their behalf, at their direction or with their knowledge, to transfer the accounts and individuals in insurance and/or ratings agencies who would assist and/or facilitate the fraud being perpetrated against the Plaintiffs.

187)   The above described enterprise required the involvement of Defendant Crist who was in a position of authority in the State of Florida and who could provide assistance to Defendant Pearlman, Defendant Pearlman Companies and The Fraudulent Enterprise by simply failing to investigate and/or take action in response to the complaints that were being made and/or which came to the attention of the State of Florida most notably the discovery in 2003 that Defendant Pearlman and Defendant Pearlman Companies were violating Florida law through unlawful sale of securities related to the EISA accounts.  *See Exhibit 1* .

188)   Defendant Florida officials, including Defendant Crist and persons in Defendant OFR, were aware, should have known and/or could have through the exercise of reasonable due diligence could have discovered that the activities by Defendant Pearlman and Defendant Pearlman Companies were fraudulent, improper, illegal and/or in furtherance of The Fraudulent Enterprise, and should have taken action to stop it.

189)   All Defendants benefited from Defendants Pearlman, Defendant Pearlman Companies and the other principal actors such as The Fraudulent Enterprise and scheme to defraud.

190)   The illegal predicate acts of mailing, faxing and use of the telephones described in paragraphs 179 to 181 above constitute a pattern of racketeering activity as defined by 18 USC § 1962 et seq.

191)   By reason of the aforementioned racketeering enterprise activities, Defendants Pearlman, Defendants Fischetti, Crudele, Finger, Bacchus, Wuellenkemper, McDonald, Tolner, Jans and Chamberlain, Pohl, other Defendants, Defendant Pearlman Companies, as well as its/their officers, agents, employees and/or other persons acting on their behalf, at their direction or with their knowledge, ability to defraud Plaintiffs was immeasurably enhanced because the illegal operation of the enterprise facilitated the fraud and aided its concealment, thereby damaging Plaintiffs in their business and/or property.

192)   The EISA and Trans Con Stock Program Accounts constituted an enterprise operating in and affecting interstate and foreign commerce.

193)   Defendants Pearlman, Defendants Fischetti, Crudele, Finger, Bacchus, Wuellenkemper, McDonald, Tolner, Jans and Chamberlain, Pohl, other Defendants, Defendant Pearlman Companies, knowingly, willfully and unlawfully conspired, agreed and/or combined together with each other to associate with, conduct, participate in and further the affairs of the enterprise through the use of the US mails and wires.

194)   The aforedescribed acts as set forth in paragraphs 179 to 181, which it was

described the instances in which Defendants Pearlman, Defendants Fischetti, Crudele,

Finger, Bacchus, Wuellenkemper, McDonald, Tolner, Jans and Chamberlain, Pohl,

other Defendants, Defendant Pearlman Companies, knowingly, willfully and

unlawfully conspired, agreed and/or combined together with each other to use the US

mails and wires in furtherance of the affairs of the enterprise were unlawful, illegal

and in violation of 18 USC §§ 1341 and 1343.

195)   Each of the aforedescribed use of the US mails and wires in furtherance of the

affairs of the enterprise constituted a separate violation of 18 USC §§ 1341 and 1343.

196)   By reason of the aforementioned use of the US mails and wires in furtherance of

the affairs of the racketeering enterprise and in violation of 18 USC §§ 1341 and 1343

immeasurably enhanced Defendants ability to defraud Plaintiffs, facilitated the fraud

and aided its concealment, thereby damaging Plaintiffs in their business and/or

property.

197)   WHEREFORE, the Plaintiffs demand judgment against Defendants Pearlman,

Defendants Fischetti, Crudele, Finger, Bacchus, Wuellenkemper, McDonald, Tolner,

Jans and Chamberlain other Defendants who aided the Fraudulent Enterprise

internationally, and Defendant Pearlman Companies, as well as Defendants FISERV

and Defendant Banks, for an award of actual damages, punitive damages,

prejudgment interest, costs, attorney's fees, and such other relief as this Court deems

necessary and proper.

## COUNT II - VIOLATION OF THE SECURITIES
## ACTS OF 1933 & 1934 and SEC RULE 10 b (5)

198)   Plaintiffs repeat and reallege paragraphs 12 to 136 and 138 to 190 (from Count I)

inclusive as if the same were set forth fully and at length herein.

199)   Sections 5(a), 5(c) and 17(a) of the Securities Act of 1933 and Sections 10(b) and

15(a) of the Securities Exchange Act of 1934 and the Securities and Exchange

Commission Rule 10b-5 provide causes of action for the unlawful sale of unregistered

securities, the sale of securities by unlicensed persons and companies, and for

fraudulent inducement in the sale of securities.

200)   Defendants Pearlman, Defendants Fischetti, Crudele, Finger, Bacchus,

Wuellenkemper, McDonald, Tolner, Jans and Chamberlain, Pohl, other Defendants,

and Defendant Pearlman Companies are individuals and/or entities subject to the

Securities Acts of 1933 and 1934, as they were selling securities to Plaintiffs –

financial instruments with the expectation of a return on the investment, and the

various guarantees enumerated herein.

201)   Through The Fraudulent Enterprise, Defendants Pearlman, Defendants Fischetti,

Crudele, Finger, Bacchus, Wuellenkemper, McDonald, Tolner, Jans and

Chamberlain, Pohl, other Defendants, Defendant Pearlman Companies, as well as

its/their officers, agents, employees and/or other persons acting on their behalf, at

their direction or with their knowledge and made material, false, and fraudulent

misrepresentations to Plaintiffs regarding the EISA and Trans Con Stock Program

accounts.

202)   Defendants as well as its/their officers, agents, employees and/or other persons

acting on their behalf, at their direction or with their knowledge, sold unregistered

securities in violation of the Securities Acts of 1933 and 1934, and without complying

with the requirements under federal law for selling securities.

203)   Defendants as well as its/their officers, agents, employees and/or other persons

acting on their behalf, at their direction or with their knowledge also sold unregistered

securities without a license to sell _any_ securities whatsoever.

204)   As a result of Defendants' actions, Plaintiffs have lost the money they invested in

The EISA and Trans Con Stock Programs Accounts.

205)   WHEREFORE, Plaintiffs request the Court to enter a judgment in favor of

Plaintiffs and against the Defendants for an award of actual damages, prejudgment

interest, costs, attorneys' fees, and any other relief the Court deems just and proper

under the circumstances.

## <u>COUNT III - VIOLATION OF 14th AMENDMENT</u>

206)   Plaintiffs repeat and reallege paragraphs 12 to 136 and 138 to 190 (from Count I)

inclusive as if the same were set forth fully and at length herein.

207)   Florida Statute 768.28 states in pertinent part:

*768.28          Waiver of sovereign immunity in tort actions . . .*
*(1) In accordance with s. 13, Art. X of the State Constitution, the state, for itself and*
*for its agencies or subdivisions, hereby waives sovereign immunity for liability for*
*torts, but only to the extent specified in this act. Actions at law against the state or*
*any of its agencies or subdivisions to recover damages in tort for money damages*
*against the state or its agencies or subdivisions for injury or loss of property,*
*personal injury, or death caused by the negligent or wrongful act or omission of any*
*employee of the agency or subdivision while acting within the scope of the employee's*
*office or employment under circumstances in which the state or such agency or*
*subdivision, if a private person, would be liable to the claimant, in accordance with*
*the general laws of this state, may be prosecuted subject to the limitations specified in*
*this act.   .......*

*(5) The state and its agencies and subdivisions shall be liable for tort claims in the same manner and to the same extent as a private individual under like circumstances, but liability shall not include punitive damages or interest for the period before judgment. Neither the state nor its agencies or subdivisions shall be liable to pay a claim or a judgment by any one person which exceeds the sum of $100,000 or any claim or judgment, or portions thereof, which, when totaled with all other claims or judgments paid by the state or its agencies or subdivisions arising out of the same incident or occurrence, exceeds the sum of $200,000. However, a judgment or judgments may be claimed and rendered in excess of these amounts and may be settled and paid pursuant to this act up to $100,000 or $200,000, as the case may be; and that portion of the judgment that exceeds these amounts may be reported to the Legislature, but may be paid in part or in whole only by further act of the Legislature. Notwithstanding the limited waiver of sovereign immunity provided herein, the state or an agency or subdivision thereof may agree, within the limits of insurance coverage provided, to settle a claim made or a judgment rendered against it without further action by the Legislature, but the state or agency or subdivision thereof shall not be deemed to have waived any defense of sovereign immunity or to have increased the limits of its liability as a result of its obtaining insurance coverage for tortious acts in excess of the $100,000 or $200,000 waiver provided above. The limitations of liability set forth in this subsection shall apply to the state and its agencies and subdivisions whether or not the state or its agencies or subdivisions possessed sovereign immunity before July 1, 1974.*

*(6)(a) An action may not be instituted on a claim against the state or one of its agencies or subdivisions unless the claimant presents the claim in writing to the appropriate agency, and also, except as to any claim against a municipality or the Florida Space Authority, presents such claim in writing to the Department of Financial Services, within 3 years after such claim accrues and the Department of Financial Services or the appropriate agency denies the claim in writing; except that, if such claim is for contribution pursuant to s. 768.31, it must be so presented within 6 months after the judgment against the tortfeasor seeking contribution has become final by lapse of time for appeal or after appellate review or, if there is no such judgment, within 6 months after the tortfeasor seeking contribution has either discharged the common liability by payment or agreed, while the action is pending against her or him, to discharge the common liability.*

*(b) For purposes of this section, the requirements of notice to the agency and denial of the claim pursuant to paragraph (a) are conditions precedent to maintaining an action but shall not be deemed to be elements of the cause of action and shall not affect the date on which the cause of action accrues*

*(d) For purposes of this section, complete, accurate, and timely compliance with the requirements of paragraph (c) shall occur prior to settlement payment, close of discovery or commencement of trial, whichever is sooner;*

*The failure of the Department of Financial Services or the appropriate agency to make final disposition of a claim within 6 months after it is filed shall be deemed a final denial of the claim for purposes of this section. For purposes of this subsection, in medical malpractice actions, the failure of the Department of Financial Services or the appropriate agency to make final disposition of a claim within 90 days after it is filed shall be deemed a final denial of the claim. The provisions of this subsection do not apply to such claims as may be asserted by counterclaim pursuant to s. 768.14*

208)  42 U.S.C. § 1983 states, in pertinent part *"every person who, under color of any statute, ordinance, regulation, custom or usage, of any State or Territory, ... subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress."*

209)  As related to the facts of this case, among other things, F.S. 768.28:

   a)  Is vague with regard to the definitions and limitations for damages per person and imposes a $100,000 per person damages limitations when losses for many of the individual or corporate Plaintiffs are in the hundreds of thousands or millions of dollars and which limitations deprives Plaintiffs of due process and leaves them with no effective remedy for wrongful acts in a manner which is inconsistent with other Florida Statutes and policies of Florida enforcement agencies;

   b)  Imposes an unconstitutional statutory waiting period of 6 months before an action can be commenced which is unduly burdensome and prejudicial, the Statute fails to provide remedies for the type of wrongful conduct and ongoing damages suffered by Plaintiffs for which there is no redress;

   c)  Violates Plaintiffs' Due Process Rights to prevent ongoing wrongful conduct from which Plaintiffs will continue to suffer damages for which there is no redress;

d)  Fails to include a provision through which Plaintiffs who suffer ongoing damages for which there is no redress are able to take actions to hold Florida, its agencies and others responsible for the past and ongoing potential wrongful acts of their Chief Executive & Legal Officers, departments charged with protecting the public from wrongful acts and enterprises such as those complained of in this complaint; and

e)  Fails to provide adequate remedies for intentional acts and *ultra vires* acts of the states Chief Executive and Legal Officer, for which the Florida Legislature has enacted no remedy and for which it is anticipated that State of Florida will claim sovereign immunity.

210)  As set forth above, Defendant Florida, Defendant Crist and other officials, agents and/or representatives of Florida were negligent in the handling of the investigation and prosecution of Defendants Pearlman, Defendants Fischetti, Crudele, Finger, Bacchus, Wuellenkemper, McDonald, Tolner, Jans and Chamberlain, Pohl, other Defendants, Defendant Pearlman Companies, as well as its/their officers, agents, employees and/or other persons acting on their behalf, at their direction or with their knowledge, with regard to the numerous prior fraudulent schemes and unlawful sales of EISA "securities" which led to Floridians and others losing hundreds of millions of dollars.  This negligence creates liability as against Florida for victims of The Fraudulent Enterprise. In addition to negligence, the specific acts as alleged against Defendant Charlie Crist and Defendant McCollum constitute state actors' possible violations of federal and state law and violations of Florida Bar and American Bar Association (ABA) standards in the legal profession.  These acts and omissions also directly relate to negligence that has to be imputed to Defendant Florida, to malfeasance of the office of Attorney General, ***ultra***

*vires* acts by Defendant Crist while campaigning for Governor of Florida, and by Attorney General Defendant McCollum by failing to take steps to avoid a present conflict of interest and the appearance of impropriety in the current and ongoing criminal investigation of Pearlman, his associates, the Pearlman Companies, and the Fraudulent Enterprise.

211)   Further, the past and ongoing acts by Defendants Saxon Brooks, McHale, Defendant Florida and its agents in the Defendant OFR have caused further delays and interference with the impartial investigation into The Fraudulent Enterprise, Defendants Pearlman, Defendants Fischetti, Crudele, Finger, Bacchus, Wuellenkemper, McDonald, Tolner, Jans and Chamberlain, Pohl, other Defendants, and Defendant Pearlman Companies.  Further, their actions may violate federal statutes regarding bribery, obstruction of justice and receiving stolen property via mail, wire, and check in interstate commerce.

212)   Further the allegations and evidence as set forth herein in greater detail suggest that there may have been violations of Florida and US laws by officials of the State of Florida, including but not limited to violations of 18 USC § 201 and Florida Statute Section 102 related to the maximum election campaign contributions allowed per person or company, and/or other laws related to acceptance of monies by public officials from persons under investigation, all of which make the application of Florida Statute 768.28 unconstitutional in these circumstances.

213)   The 6 month waiting period in FS 768.28 is unconstitutional as applied to these Plaintiffs because it will allow Defendants to (i) further hide, conceal, transfer, dispose of assets and (ii) destroy evidence.

214)     The 6 month waiting period is also unconstitutional because certain Plaintiffs are

elderly, and without the ability to prosecute these claims, may have no prospect of being

able to sustain themselves financially.

215)     The definition and cap on damages is vague and purports to improperly limit

Plaintiffs' ability to recover the full amount of their losses which were caused or

contributed to by the wrongful, negligent or potentially improper and/or unlawful acts of

Defendants Crist and Defendant McCollum, the former Attorney General and now

Governor and current Attorney General.

**216)**     Wherefore, Plaintiffs prays that the Court declare FS 768.28 or portions therein as

unconstitutional as applied to these circumstances, and order appropriate relief for the

Plaintiffs in this cause**.**

## COUNT IV – CONSPIRACY

217)     Plaintiffs repeat and reallege paragraphs 12 to 142 and 144 to 196 (from Count I)

inclusive as if the same were set forth fully and at length herein.

218)     The EISA and Trans Con Stock Program Accounts constituted an enterprise operating

in and affecting interstate and foreign commerce.

219)     Defendants Pearlman, Defendants Fischetti, Crudele, Finger, Bacchus,

Wuellenkemper, McDonald, Tolner, Jans and Chamberlain, Pohl, other Defendants,

Defendant Pearlman Companies, as well as its/their officers, agents, employees and/or

other persons acting on their behalf, at their direction or with their knowledge knowingly,

willfully and unlawfully did conspire, agree and/or combine together with each other to

associate with, conduct, participate in and further the affairs of  the enterprise through a

pattern of racketeering activity in violation of 18 USC § 1962 ( c).  Such conspiracy in unlawful and violates 18 USC § 1962 (d).

220)    The object of the conspiracy was to associate with, participate in, and conduct the affairs of The Fraudulent Enterprise, in part, by inducing Plaintiffs to deposit, wire and/or entrust monies into accounts from which they could be removed.  to mail or wire funds to certain accounts from which they would later be withdrawn unlawfully, illegally and in violation of the promises to, agreements with and/or representations made to Plaintiffs.

221)    The overt acts committed or facilitated by Defendants Pearlman, Defendants Fischetti, Crudele, Finger, Bacchus, Wuellenkemper, McDonald, Tolner, Jans and Chamberlain, Pohl, other Defendants, Defendant Pearlman Companies, as well as its/their officers, agents, employees and/or other persons acting on their behalf, at their direction or with their knowledge to execute and accomplish the above described unlawful conspiracy include but are not limited to the illegal acts as set forth in paragraphs 144 to 196  (from Count I) above, and specifically the predicate acts as described in paragraphs 179 to 181 constitute a pattern of racketeering activity as defined in 18 USC § 1962 et seq.

222)    By reason of the aforementioned racketeering enterprise activities, Defendants Pearlman, Defendants Fischetti, Crudele, Finger, Bacchus, Wuellenkemper, McDonald, Tolner, Jans and Chamberlain, Pohl, other Defendants, Defendant Pearlman Companies, as well as its/their officers, agents, employees and/or other persons acting on their behalf, at their direction or with their knowledge ability to defraud Plaintiffs was immeasurably enhanced because the illegal operation of the enterprise facilitated the fraud and aided its concealment, thereby damaging Plaintiffs in their business and/or property.

223)     WHEREFORE, the Plaintiffs demand judgment against Defendants Pearlman,

Defendants Fischetti, Crudele, Finger, Bacchus, Wuellenkemper, McDonald, Tolner, Jans

and Chamberlain, Pohl, other named Defendants who assisted the Fraudulent Enterprise

internationally, and Defendant Pearlman Companies, as well as Defendants FISERV and

Defendant Banks, for an award of actual damages, punitive damages, prejudgment

interest, costs, attorney's fees, and such other relief as this Court deems necessary and

proper.

### COUNT V – AIDING & ABETTING

224)     Plaintiffs repeat and reallege paragraphs 12 to 142 and 144 to 196 (from Count I)

inclusive as if the same were set forth fully and at length herein.

225)     The EISA and Trans Con Stock Program Accounts constituted an enterprise operating

in and affecting interstate and foreign commerce.

226)     Defendants Pearlman, Defendants Fischetti, Crudele, Finger, Bacchus,

Wuellenkemper, McDonald, Tolner, Jans, Chamberlain and Pohl associated themselves

with the enterprise and conducted and participated in the affairs of the enterprises through

a pattern of racketeering activity in violation of 18 USC § 1962 ( c).

227)     Defendants Pearlman, Defendants Fischetti, Crudele, Finger, Bacchus,

Wuellenkemper, McDonald, Tolner, Jans, Chamberlain, and Pohl, separately and

together, knowingly, willfully and unlawfully devised and executed a scheme to defraud

Plaintiffs in order to induce Plaintiffs to deposit, wire and/or entrust monies into accounts

from which they could be removed, by means of false and fraudulent statements,

representations or promises or through the commission of numerous criminal acts.

228)   The illegal predicate acts as set forth in paragraphs 144 to 196 (from Count I) above, and specifically the predicate acts as described in paragraphs 179 to 181 constitute a pattern of racketeering activity as defined in 18 USC § 1962 et seq.

229)   Defendants Pearlman, Defendants Fischetti, Crudele, Finger, Bacchus, Wuellenkemper, McDonald, Tolner, Jans, Chamberlain, and Pohl each had knowledge of the illegal operation of the enterprises and lent substantial assistance to each other and to The Fraudulent Enterprise by associating themselves with the enterprises and conducting and participating in the affairs of the enterprise through a pattern of racketeering activity in violation of 18 USC § 1962 ( c).

230)   The acts by and through which Defendants Pearlman, Defendants Fischetti, Crudele, Finger, Bacchus, Wuellenkemper, McDonald, Tolner, Jans, Chamberlain and Pohl aided and abetted each other in the affairs of The Fraudulent Enterprise were illegal.

231)   The acts of Defendant Crist as former Attorney General who failed to prosecute Defendant Pearlman and/or Defendant Pearlman Companies and failed to take necessary action based upon the knowledge he and his offices had in 2003 about unlawful and illegal sales or marketing of the EISA accounts, also aided and abetted the affairs of The Fraudulent Enterprise and were improper, negligent, careless, reckless and/or illegal.

232)   The acts of Defendant FISERV and Defendant Banks in assisting Defendant Pearlman and/or Defendant Pearlman Companies with the transfer of monies and the failure to maintain the monies in safeguarded accounts also aided and abetted the affairs of The Fraudulent Enterprise and were improper, negligent, careless, reckless and/or illegal.

233)     By reason of the aforementioned aiding and abetting of the racketeering enterprise

activities, Defendant Pearlman, Defendants Fischetti, Crudele, Finger, Bacchus,

Wuellenkemper, McDonald, Tolner, Jans, Chamberlain, Pohl and Defendant Pearlman

Companies' ability to defraud Plaintiffs was immeasurably enhanced because the illegal

operation of the enterprise facilitated the fraud and aided its concealment, thereby

damaging Plaintiffs in their business and/or property.

**234)**     WHEREFORE, the Plaintiffs demand judgment against Defendants Pearlman,

Defendants Fischetti, Crudele, Finger, Bacchus, Wuellenkemper, McDonald, Tolner,

Jans, Chamberlain, Pohl, and Defendant Pearlman Companies, as well as Defendants

FISERV and Defendant Banks, for an award of actual damages, punitive damages,

prejudgment interest, costs, attorney's fees, and such other relief as this Court deems

necessary and proper.

## COUNT VI – COMMON LAW FRAUD

235)     Plaintiffs repeat and reallege paragraphs 12 to 142 and 144 to 196 (from Count I)

inclusive as if the same were set forth fully and at length herein.

236)     Defendants Defendant Pearlman, Defendants Fischetti, Crudele, Finger, Bacchus,

Wuellenkemper, McDonald, Tolner, Jans, Chamberlain, Pohl and Defendant Pearlman

Companies entered into a scheme whereby they agreed to defraud Plaintiffs in order to

induce Plaintiffs to deposit, wire and entrust monies to them.

237)     Pursuant to that scheme, Defendant Pearlman, Fischetti, Crudele, McDonald, Tolner,

Jans, Chamberlain, Pohl and Defendant Pearlman Companies knowingly and with

fraudulent intent, and with the knowledge, approval, assistance and acquiescence of the

other Defendants, made fraudulent misrepresentations to Plaintiffs regarding interest to

be earned and guaranteed, opinion letters from purportedly credible and reputable accountants and lawyers, insurance of principal, deposits into fiduciary and individualized accounts  at accredited, reputable and federally insured banks such as Defendant Banks, use of reliable and insured transfer agents such as Defendant FISERV, references from ratings agencies such as Defendant D & B and by other promises and representations which were fraudulent, and/or part of the criminal and/or illegal enterprise and/or acts. See Exhibit 9 and Exhibit Binder.

238)    In reliance upon the fraudulent misrepresentations, Plaintiffs deposited, wired and/or entrusted Defendant Pearlman, Defendant Pearlman Companies, Defendant FISERV and Defendant Banks, with hundreds of millions of dollars.

239)    As a direct result of The Fraudulent Enterprise and based on the fraudulent misrepresentations, after Plaintiffs' Monies were deposited, wired and/or entrusted to Defendant Pearlman, Defendant Pearlman Companies, Defendant FISERV and Defendant Banks, the monies were wrongfully misappropriated.

240)    By reason of the aforementioned fraudulent and/or misleading statements, Plaintiffs (i) sustained damages in their business and/or property, and (ii) suffered physical, emotional and other damages.

241)    WHEREFORE, the Plaintiffs demand judgment against Defendants Pearlman, Defendants Fischetti, Crudele, Finger, Bacchus, Wuellenkemper, McDonald, Tolner, Jans, Chamberlain, Pohl and Defendant Pearlman Companies, as well as Defendants FISERV and Defendant Banks, for an award of actual damages, punitive damages, prejudgment interest, costs, attorney's fees, and such other relief as this Court deems necessary and proper, including equitable relief.

## COUNT VII – MISREPRESENTATION

242)    Plaintiffs repeat and reallege paragraphs 12 to 142 and 144 to 196 (from Count I)

inclusive as if the same were set forth fully and at length herein.

243)    Defendants Pearlman, Defendants Fischetti, Crudele, Finger, Bacchus,

Wuellenkemper, McDonald, Tolner, Jans, Pohl, Chamberlain and Defendant

Pearlman Companies knowingly, willfully and unlawfully did conspire, agree and/or

combine together with each other to associate with, conduct, participate in and further

the affairs of The Fraudulent Enterprise through a pattern making knowingly false

and/or misleading statements which were designed to induce Plaintiffs to deposit,

wire and entrust monies to them.

244)    The aforesaid fraudulent and/or misleading statements included but were not

limited to representations and promises of interest to be earned and guaranteed,

opinion letters from purportedly credible and reputable accountants and lawyers,

insurance of principal, deposits into fiduciary and individualized accounts  at

accredited, reputable and federally insured banks such as Defendant Banks, use of

reliable and insured transfer agents such as Defendant FISERV, references from

ratings agencies such as Defendant D & B and by other promises and representations

which were fraudulent, and/or part of the criminal and/or illegal enterprise and/or

acts.

245)    At the time the aforesaid fraudulent and/or misleading statements were made,

Defendants knew them to be false and intended to cause Plaintiffs to rely upon them

to their detriment.

--------------------

246)    At the time the aforesaid fraudulent and/or misleading statements were made, Plaintiffs had no way of knowing or discovering that the statements were false or misleading.

247)    The purpose of the aforesaid fraudulent and/or misleading statements was to induce Plaintiffs to deposit, wire and/or entrust monies into accounts from which they could be removed.  to mail or wire funds to certain accounts from which they would later be withdrawn unlawfully, illegally and in violation of the promises to, agreements with and/or representations made to Plaintiffs.

248)    The Plaintiffs relied on the aforesaid fraudulent and/or misleading statements to their detriment.

249)    By reason of the aforementioned fraudulent and/or misleading statements, Plaintiffs (i) sustained damages in their business and/or property, and (ii) suffered physical, emotional and other damages.

250)    WHEREFORE, the Plaintiffs demand judgment against Defendants Pearlman, Defendants Fischetti, Crudele, Finger, Bacchus, Wuellenkemper, McDonald, Tolner, Jans, Chamberlain, and Pohl and Defendant Pearlman Companies, as well as Defendants FISERV and Defendant Banks, for an award of actual damages, punitive damages, prejudgment interest, costs, attorney's fees, and such other relief as this Court deems necessary and proper including equitably relief.

## COUNT VII – BREACH OF CONTRACT

251)    Plaintiffs repeat and reallege paragraphs 12 to 142 and 144 to 196 (from Count I) inclusive as if the same were set forth fully and at length herein.

252)    Defendant Pearlman, Defendant Pearlman Companies and The Fraudulent

Enterprise agreed and contracted to pay Plaintiffs interest at a fixed and guaranteed

rate, were to maintain insurance of Plaintiffs principal, were to deposit Plaintiffs'

Monies into fiduciary and individualized accounts  at accredited, reputable and

federally insured banks such as Defendant Banks, were to use reliable and insured

transfer agents such as Defendants FISERV, and were to safeguard and return

Plaintiffs' Monies, including principal and interest, when Plaintiffs requested its

return.

253)    Defendant Pearlman, Defendant Pearlman Companies and The Fraudulent

Enterprise breached the terms of the contract by failing to pay Plaintiffs interest at a

fixed and guaranteed rate, failing to maintain insurance of Plaintiffs principal, failing

to deposit Plaintiffs' Monies into fiduciary and individualized accounts  at accredited,

reputable and federally insured banks such as Defendant Bank, failing to use reliable

and insured transfer agents such as Defendant FISERV, and failing to safeguard and

return Plaintiffs' Monies, including principal and interest, when Plaintiffs requested

its return.

254)    By reason of the aforementioned breach of contract, Plaintiffs (i) sustained

damages in their business and/or property, and (ii) suffered physical, emotional and

other damages.

**255)**    WHEREFORE, the Plaintiffs demand judgment against Defendants Pearlman,

Defendants Fischetti, Crudele, Finger, Bacchus, Wuellenkemper, McDonald, Tolner,

Jans, Chamberlain, and Pohl and Defendant Pearlman Companies, as well as

Defendants FISERV and Defendant Banks, for an award of actual damages, punitive

damages, prejudgment interest, costs, attorney's fees, and such other relief as this
Court deems necessary and proper.

## <u>COUNT IX – FRAUDULENT INDUCEMENT</u>

256)    Plaintiffs repeat and reallege paragraphs 12 to 142 and 144 to 196 (from Count I)
inclusive as if the same were set forth fully and at length herein.

257)    Defendant Pearlman, Defendant Pearlman Companies and The Fraudulent
Enterprise entered into a scheme whereby they fraudulently Plaintiffs to entered into a
contract with them.

258)    Under the terms of the contra<u>ct</u>, Defendant Pearlman, Defendant Pearlman
Companies and The Fraudulent Enterprise were to pay Plaintiffs interest at a fixed
and guaranteed rate, were to maintain insurance of Plaintiffs principal, were to
deposit Plaintiffs' Monies into fiduciary and individualized accounts  at accredited,
reputable and federally insured banks such as Defendant Banks, were to use reliable
and insured transfer agents such as Defendant FISERV, and were to safeguard and
return Plaintiffs' Monies, including principal and interest, when Plaintiffs requested
its return.

259)    Defendant Pearlman, Defendant Pearlman Companies and The Fraudulent
Enterprise breached the terms of the contract by failing to pay Plaintiffs interest at a
fixed and guaranteed rate, failing to maintain insurance of Plaintiffs principal, failing
to deposit Plaintiffs' Monies into fiduciary and individualized accounts  at accredited,
reputable and federally insured banks such as Defendant Banks, failing to use reliable
and insured transfer agents such as Defendant FISERV, and failing to safeguard and

return Plaintiffs' Monies, including principal and interest, when Plaintiffs requested its return.

260)   By reason of the aforementioned fraudulent inducement and breach of contract, Plaintiffs (i) sustained damages in their business and/or property, and (ii) suffered physical, emotional and other damages.

261)   WHEREFORE, the vulnerable Plaintiffs demand judgment against Defendants Pearlman, Defendants Fischetti, Crudele, Finger, Bacchus, Wuellenkemper, McDonald, Tolner, Jans, Chamberlain, and Pohl and Defendant Pearlman Companies, as well as Defendants FISERV and Defendant Banks, for an award of actual damages, punitive damages, prejudgment interest, costs, attorney's fees, and such other relief as this Court deems necessary and proper, including equitable relief.

## COUNT X – BREACH OF FIDUCIARY DUTIES

262)   Plaintiffs repeat and reallege paragraphs 12 to 142 and 144 to 196 (from Count I) inclusive as if the same were set forth fully and at length herein.

263)   Defendants Pearlman, Defendants Fischetti, Crudele, Finger, Bacchus, Wuellenkemper, McDonald, Tolner, Jans, Chamberlain, and Pohl and Defendant Pearlman Companies entered into a scheme whereby they induced Plaintiffs to wire, transfer, deposit and/or entrust monies to them for their safekeeping.

264)   Defendants Pearlman, Defendants Fischetti, Crudele, Finger, Bacchus, Wuellenkemper, McDonald, Tolner, Jans, Chamberlain, and Pohl and Defendant Pearlman Companies held themselves out and represented to Plaintiffs that they were accepting the monies for safekeeping and to be returned to Plaintiffs at a later date

and according to the terms of the contracts entered into with and representations made to Plaintiffs.

265)   Under the terms of the contract, Defendants Pearlman, Defendants Fischetti, Crudele, Finger, Bacchus, Wuellenkemper, McDonald, Tolner, Jans, Chamberlain, and Pohl and Defendant Pearlman Companies became trustees and/or fiduciaries over the monies which were entrusted to them.

266)   As trustees and/or fiduciaries over the monies entrusted to them, Defendants had an enhanced level of duty and obligations to Plaintiffs, which required Defendants to taken additional and independent actions to insure that the terms of the contracts would be honored and Plaintiffs' monies would be safeguarded.

267)   These duties required Defendants as trustees and/or fiduciaries to independently insure that Plaintiffs were paid interest at a fixed and guaranteed rate, insurance was maintained to cover Plaintiffs principal, monies were deposit into fiduciary and individualized accounts at accredited, reputable and federally insured banks, reliable and insured transfer agents were used to process the transfer, deposits and entrustment of Plaintiffs' Monies, and Plaintiffs' Monies, including principal and interest, would be returned when Plaintiffs requested them.

268)   Defendants Pearlman, Defendants Fischetti, Crudele, Finger, Bacchus, Wuellenkemper, McDonald, Tolner, Jans, Chamberlain, and Pohl and Defendant Pearlman Companies breached these trust and/or fiduciary duties.

269)   Defendant FISERV and Defendant Banks were involved with the scheme whereby Plaintiffs were induced to wire, transfer, deposit and/or entrust monies to accounts at their institutions for safekeeping.

270)   Defendant FISERV and Defendant Banks held themselves out and represented to Plaintiffs that they were accepting the monies for safekeeping and to be returned to Plaintiffs at a later date and according to the terms of the contracts entered into with and representations made to Plaintiffs.

271)   Under the terms of the contract, Defendant FISERV and Defendant Banks became trustees and/or fiduciaries over the monies which were entrusted to them.

272)   As trustees and/or fiduciaries over the monies entrusted to them, Defendant FISERV and Defendant Banks had an enhanced level of duty and obligations to Plaintiffs, which required Defendants to taken additional and independent actions to insure that the terms of the contracts would be honored and Plaintiffs' Monies would be safeguarded.

273)   These duties required Defendant FISERV and Defendant Banks as trustees and/or fiduciaries to independently insure that Plaintiffs were paid interest at a fixed and guaranteed rate, insurance was maintained to cover Plaintiffs principal, monies were deposit into fiduciary and individualized accounts  at accredited, reputable and federally insured banks, reliable and insured transfer agents were used to process the transfer, deposits and entrustment of Plaintiffs' Monies, and Plaintiffs' Monies, including principal and interest, would be returned when Plaintiffs requested them.

274)   Defendant FISERV and Defendant Banks breached these trust and/or fiduciary duties.

275)   By reason of the aforementioned breach of fiduciary duties, Plaintiffs were (i) sustained damages in their business and/or property, and (ii) suffered physical, emotional and other damages.

276)    WHEREFORE, the Plaintiffs demand judgment against Defendants Pearlman,

Defendants Fischetti, Crudele, Finger, Bacchus, Wuellenkemper, McDonald, Tolner,

Jans, Chamberlain, and Pohl and Defendant Pearlman Companies, as well as

Defendants FISERV and Defendant Banks, for an award of actual damages, punitive

damages, prejudgment interest, costs, attorney's fees, and such other relief as this

Court deems necessary and proper, including equitable relief.

## COUNT XI – MISAPPROPRIATION

277)    Plaintiffs repeat and reallege paragraphs 12 to 142 and 144 to 196 (from Count I)

inclusive as if the same were set forth fully and at length herein.

278)    Defendant Pearlman, Defendants Fischetti, Crudele, Finger, Bacchus,

Wuellenkemper, McDonald, Tolner, Jans and Chamberlain, Pohl, Defendant

Pearlman Companies, Defendant FISERV and Defendant Banks were part of The

Fraudulent Enterprise through which Plaintiffs were induced to wire, transfer, deposit

and/or entrust monies to them for their safekeeping.

279)    Defendants Pearlman, Defendants Fischetti, Crudele, Finger, Bacchus,

Wuellenkemper, McDonald, Tolner, Jans, Chamberlain, Pohl, and , Defendant

Pearlman Companies, Defendant FISERV and Defendant Banks held themselves out

and represented to Plaintiffs that they were accepting the monies for safekeeping and

to be returned to Plaintiffs at a later date and according to the terms of the contracts

entered into with and representations made to Plaintiffs.

280)    In direct contravention to the representations, promises, guarantees, duties and/or

obligations to Plaintiffs, Defendant Pearlman, Defendants Fischetti, Crudele, Finger,

Bacchus, Wuellenkemper, McDonald, Tolner, Jans and Chamberlain, Pohl,

Defendant Pearlman Companies, Defendant FISERV and Defendant Banks

facilitated, allowed and/or failed to take the necessary and prudent steps to insure that

Plaintiffs' monies were safeguarded.

281)    In direct contravention to the representations, promises, guarantees, duties and/or

obligations to Plaintiffs, Defendant Pearlman, Defendants Fischetti, Crudele, Finger,

Bacchus, Wuellenkemper, McDonald, Tolner, Jans and Chamberlain, Pohl,

Defendant Pearlman Companies, Defendant FISERV and Defendant Banks

misappropriated and/or allowed the misappropriation of Plaintiffs' Monies and/or

allowed Plaintiffs' Monies to be used for purposes which were unintended, not agreed

to and/or were without Plaintiffs knowledge and/or permission.

282)    By reason of the aforementioned acts, Plaintiffs (i) sustained damages in their

business and/or property, and (ii) suffered physical, emotional and other damages.

283)    WHEREFORE, the Plaintiffs demand judgment against Defendants Pearlman,

Defendants Fischetti, Crudele, Finger, Bacchus, Wuellenkemper, McDonald, Tolner,

Jans, Chamberlain, and Pohl and Defendant Pearlman Companies, as well as

Defendants FISERV and Defendant Banks, for an award of actual damages, punitive

damages, prejudgment interest, costs, attorney's fees, and such other relief as this

Court deems necessary and proper, including equitable relief.

## COUNT XII – NEGLIGENCE

284)    Plaintiffs repeat and reallege paragraphs 12 to 142 and 144 to 196 (from Count I)

inclusive as if the same were set forth fully and at length herein.

285)   Defendant Pearlman, Defendants Fischetti, Crudele, Finger, Bacchus, Wuellenkemper, McDonald, Tolner, Jans, Chamberlain, and Pohl and Defendant Pearlman Companies were negligent in the manner they communicated with Plaintiffs, dealt with Plaintiffs' Monies and/or handled Plaintiffs' accounts.

286)   Defendant FISERV and Defendant Banks were negligent in the manner they allowed or caused Plaintiffs' Monies to be deposited into and transferred out of accounts.

287)   Defendant FISERV and Defendant Banks were negligent in the manner they allowed or caused account statements to be sent to Plaintiffs about the monies which were supposed to be deposited into accounts for their safekeeping.

288)   Defendant D & B was negligent in its investigation and reporting about the status and financial condition of Defendant Pearlman Companies.

289)   Defendant Florida was negligent in its handling of the investigation into and failure to prosecute Defendant Pearlman, Defendant Pearlman Companies and The Fraudulent Enterprise from 2003 to 2006, and in earlier years.

290)   Defendants Crist and Defendant McCollum were and/or are negligent in their failure to avoid the appearance of impropriety, their potential misuse of public office in acceptance of improper campaign donations, the failure to honor the duties and requirements of their offices or offices under their direction and control, in the handling of the investigation into and failure to prosecute Defendant Pearlman, Defendant Pearlman Companies and The Fraudulent Enterprise from 2003 to 2007, as well as their failure, particularly on the part of Crist, to disclose the true relationship he had with Defendant Pearlman and Defendant Pearlman Companies and the exact

characterization and reporting of the monies and other benefits he received from
Defendant Pearlman and Defendant Pearlman Companies during the 2005 and 2006
Gubernatorial Campaign.

291)    In direct contravention to the representations, promises, guarantees, duties and/or
obligations to Plaintiffs, each of the aforedescribed Defendants was negligent,
careless and/or reckless and failed to take the necessary and prudent steps to insure
that Plaintiffs' monies were safeguarded.

292)    As a direct and proximate result of Defendants negligence, Plaintiffs' Monies
were misappropriated, withdrawn and/or and used them for purposes which were
unintended, not agreed to and/or were without Plaintiffs knowledge and/or
permission.

293)    By reason of the aforementioned acts, Plaintiffs (i) sustained damages in their
business and/or property, and (ii) suffered physical, emotional and other damages.

294)    WHEREFORE, the Plaintiffs demand judgment against Defendants Pearlman,
Defendants Fischetti, Crudele, Finger, Bacchus, Wuellenkemper, McDonald, Tolner,
Jans, Chamberlain, and Pohl and Defendant Pearlman Companies, as well as
Defendants FISERV and Defendant Banks, for an award of actual damages, punitive
damages, prejudgment interest, costs, attorney's fees, and such other relief as this
Court deems necessary and proper.

## COUNT XII – NEGLIGENT SUPERVISION

295)    Plaintiffs repeat and reallege paragraphs 12 to 142 and 144 to 196 (from Count I)
inclusive as if the same were set forth fully and at length herein.

296)   Defendants had a duty to supervise each and every one of their employees, officers, representatives and/or agents to insure that the monies which were wired, transferred, deposited and/or entrusted to them for their safekeeping were safe and could not be removed or withdrawn without Plaintiffs express prior written permission.

297)   Defendants failed to supervise their employees, officers, representatives and/or agents involved with the monies which were wired, transferred, deposited and/or entrusted to them for their safekeeping by Plaintiffs.

298)   As a direct and proximate result of Defendants failed to properly supervise their employees, officers, representatives and/or agents involved with the monies which were wired, transferred, deposited and/or entrusted to them by Plaintiffs, the monies were in fact not safe, were removed and/or were withdrawn without Plaintiffs express prior written permission.

299)   By reason of the aforementioned acts, Plaintiffs were (i) sustained damages in their business and/or property, and (ii) suffered physical, emotional and other damages.

300)   WHEREFORE, the Plaintiffs demand judgment against Defendants Pearlman, Defendants Fischetti, Crudele, Finger, Bacchus, Wuellenkemper, McDonald, Tolner, Jans, Chamberlain, and Pohl and Defendant Pearlman Companies, as well as Defendants FISERV and Defendant Banks, for an award of actual damages, punitive damages, prejudgment interest, costs, attorney's fees, and such other relief as this Court deems necessary and proper.

## COUNT XIV – UNJUST ENRICHMENT

301)    Plaintiffs repeat and reallege paragraphs 12 to 142 and 144 to 196 (from Count I) inclusive as if the same were set forth fully and at length herein.

302)    As a direct result of Defendants scheme to defraud Plaintiffs, illegal enterprise, or other fraudulent, unlawful and/or negligent acts as described above, Defendants came into possession of hundreds of millions of dollars which were not theirs and which they accepted for safekeeping and which were to be returned to Plaintiffs at a later date and according to the terms of the contracts entered into with and representations made to Plaintiffs.

303)    By their acts, Defendant Pearlman, Defendants Fischetti, Crudele, Finger, Bacchus, Wuellenkemper, McDonald, Tolner, Jans, Chamberlain, and Pohl and Defendant Pearlman Companies became unlawfully enriched through the hundreds of millions of dollars that they misappropriated from Plaintiffs and which were used by Defendants for purposes which were unintended, not agreed to and/or were without Plaintiffs' knowledge and/or permission.

304)    By reason of the aforementioned acts, Plaintiffs (i) sustained damages in their business and/or property, and (ii) suffered physical, emotional and other damages.

305)    WHEREFORE, the Plaintiffs demand judgment against Defendants Pearlman, Defendants Fischetti, Crudele, Finger, Bacchus, Wuellenkemper, McDonald, Tolner, Jans, Chamberlain, Pohl and Defendant Pearlman Companies, as well as Defendants FISERV and Defendant Banks, for an award of actual damages, punitive damages, prejudgment interest, costs, attorney's fees, and such other relief as this Court deems necessary and proper, including equitable relief.

## COUNT XV – FRAUDULENT CONVEYANCE

306)   Plaintiffs repeat and reallege paragraphs 12 to 142 and 144 to 196 (from Count I) inclusive as if the same were set forth fully and at length herein.

307)   As part of the Defendants scheme to defraud Plaintiffs, Plaintiffs monies that had been entrusted to and/or deposited in or with Defendants Banks, were transferred to some of the European Defendants (such as Defendant Eurosavings and Triple M) and other third parties to hinder, delay or defraud the Plaintiffs ability to recover their monies.

308)   The transfers by Defendants to some of the European Defendants and other third parties was made with intent to hinder, delay, or defraud Plaintiffs in their efforts to recover their monies.

309)   As part of the Defendants scheme to defraud Plaintiffs, Plaintiffs monies that had been entrusted to and/or deposited in or with Defendants Banks, were transferred to some of the European Defendants (such as Defendant Eurosavings and Triple M) and other third parties to hinder, delay or defraud the Plaintiffs ability to recover their monies.

310)   As part of the Defendants scheme to defraud Plaintiffs, Plaintiffs monies and other assets belonging to Plaintiffs that had been entrusted to and/or deposited in or with Defendants Banks, were used by Defendant Pearlman and Defendant Pearlman Companies in his/their business with Defendants Tatonka, National City Bank, Integra Bank, St Paul and Williston.

311)   Defendants Tatonka, National City Bank, Integra Bank, St Paul and Williston knew, should have known and/or could have discovered through the exercise of due

--------------------

diligence that Defendant Pearlman and Defendant Pearlman Companies were improperly, illegally, negligently and/or without proper authorization using Plaintiffs monies and other assets belonging to Plaintiffs that had been entrusted to and/or deposited in or with Defendants Banks, as collateral for the business which Defendants Tatonka, National City Bank, Integra Bank, St Paul and Williston wanted to conduct with Defendant Pearlman and Defendant Pearlman Companies.

312)    Defendants Tatonka, National City Bank, Integra Bank, St Paul and Williston acceptance and use of Plaintiffs monies and other assets belonging to Plaintiffs that had been entrusted to and/or deposited in or with Defendants Banks, were used by Defendant Pearlman and Defendant Pearlman Companies to support his/their business with Defendants Tatonka, National City Bank, Integra Bank, St Paul and Williston was to done to hinder, delay or defraud Plaintiffs ability to recover their monies and designed to given Defendants Tatonka, National City Bank, Integra Bank, St Paul and Williston an improper and/or unlawful priority over Plaintiffs to Defendant Pearlman and Defendant Pearlman Companies assets, when in fact it was Plaintiffs monies all along.

313)    The transfers of Plaintiffs monies by Defendant Pearlman and Defendant Pearlman Companies to Defendant Banks and to Defendants Tatonka, National City Bank, Integra Bank, St Paul and Williston in exchange for or as collateral and/or additional security for loans he/they received were made for the purpose of hindering, delaying and/or defraud creditors – the Plaintiffs to whom Defendants knew the money belonged and was to be returned.

314)   The transfers by Defendants to the European Defendants and other third parties violated NY Debtor Creditor Law § 276 .

315)   The transfers by Defendants to the Defendant Banks violated NY Debtor Creditor Law § 276 .

316)   The transfers by Defendants to Defendants Tatonka, National City Bank, Integra Bank, St Paul and Williston violated NY Debtor Creditor Law § 276 .

317)   By reason of the aforementioned acts which violated NY Debtor Creditor Law § 276, Plaintiffs (i) sustained damages in their business and/or property, and (ii) suffered physical, emotional and other damages.

318)   WHEREFORE, the Plaintiffs demand judgment against Defendants Pearlman, Defendants Fischetti, Crudele, Finger, Bacchus, Wuellenkemper, McDonald, Tolner, Jans, Chamberlain, and Pohl and Defendant Pearlman Companies, as well as Defendants FISERV and Defendant Banks, Defendants Eurosavings and Triple M, Defendants Tatonka, National City Bank, Integra Bank, St Paul and Williston for an award of actual damages, punitive damages, prejudgment interest, costs, attorney's fees, and such other relief as this Court deems necessary and proper, including equitable relief.

## COUNT XVI – EQUITABLE DISGORGEMENT

319)   Plaintiffs repeat and reallege paragraphs 12 to 142 and 144 to 196 (from Count I) inclusive as if the same were set forth fully and at length herein.

320)   As a direct result of Defendants scheme to defraud Plaintiffs, illegal enterprise, or other fraudulent, unlawful and/or negligent acts as described above, Defendants

became unlawfully enriched through the hundreds of millions of dollars which came into their possession, which was not theirs and which they accepted for safekeeping and which were to be returned to Plaintiffs at a later date and according to the terms of the contracts entered into with and representations made to Plaintiffs.

321)    It is unlawful, illegal and inequitable for Defendants to be permitted to retain the monies that came into their possession, which was not theirs and which they accepted for safekeeping and which was to be returned to Plaintiffs at a later date and according to the terms of the contracts entered into with and representations made to Plaintiffs.

322)    By reason of the aforementioned acts, Defendants should be compelled to equitably disgorge the hundreds of millions of dollars which came into their possession, and/or all other property, assets and/or monies which were acquired through the use of Plaintiffs' monies or which are or may be other assets of Defendants.

323)    WHEREFORE, the Plaintiffs demand judgment against Defendants Pearlman, Defendants Fischetti, Crudele, Finger, Bacchus, Wuellenkemper, McDonald, Tolner, Jans, Chamberlain, and Pohl and Defendant Pearlman Companies, Defendant Crist, Defendant McCollum, as well as Defendants FISERV and Defendant Banks, Defendant Tatonka, National City Bank, Integra Bank, St Paul and Williston for an award of directing the disgorgement of all monies they received from The Fraudulent Enterprise, as well as attorney's fees, and such other relief as this Court deems necessary and proper.

**COUNT XVII - VIOLATION OF NEW YORK GENERAL BUSINESS LAW § 352-c**
**FRAUDULENT PRACTICES IN RESPECT TO**
**STOCKS, BONDS AND OTHER SECURITIES**

324)   Plaintiffs repeat and reallege paragraphs 12 to 142 and 144 to 196 (from Count I)

inclusive as if the same were set forth fully and at length herein.

325)   New York General Business Law § 352-c  provides in pertinent part that:

i)       . . .  *it shall be illegal and prohibited for any person, partnership,*

*corporation, company, trust or association, or any agent or employee thereof,*

*to use or employ any of the following acts or practices:*

*(a) Any fraud, deception, concealment, suppression, false pretense or*
*fictitious or pretended purchase or sale;*
*(b) Any promise or representation as to the future which is beyond reasonable*
*expectation or unwarranted by existing circumstances;*
*(c) Any representation or statement which is false, where the person who*
*made such representation or statement:*

*(i) knew the truth; or*
*(ii) with reasonable effort could have known the truth; or*
*(iii) made no reasonable effort to ascertain the truth; or*
*(iv) did not have knowledge concerning the representation or statement*
*made;*

*where engaged in to induce or promote the issuance, distribution,*
*exchange, sale, negotiation or purchase within or from this state of any*
*securities or commodities, as defined in section three hundred fifty-two of*
*this article, regardless of whether issuance, distribution, exchange, sale,*
*negotiation or purchase resulted.*

326)   The acts of the Defendants Pearlman, Defendants Fischetti, Crudele, Finger,

Bacchus, Wuellenkemper, McDonald, Tolner, Jans, Chamberlain, and Pohl and

Defendant Pearlman Companies included fraudulent statements, misrepresentations, false promises that were designed and/or intended to "*induce or promote the issuance, distribution, exchange, sale, negotiation or purchase within or from this state of any securities or commodities*",

327)   The acts of Defendants Pearlman, Defendants Fischetti, Crudele, Finger, Bacchus, Wuellenkemper, McDonald, Tolner, Jans, Chamberlain, and Pohl and Defendant Pearlman Companies constitute violations of New York General Business Law § 352-c

328)   As a direct and proximate result of Defendants Pearlman, Fischetti, Crudele, Finger, Bacchus, Wuellenkemper, McDonald, Tolner, Jans, Chamberlain, and Pohl and Defendant Pearlman Companies, as well as Defendants FISERV and Defendant Banks, conduct in violation of New York General Business Law § 352-c , Plaintiffs suffered damages, including but not limited to the loss of their entire "*investment*".

329)   New York General Business Law § 352-c provides certain statutory remedies and damages, including reimbursement of the actual losses, reasonable attorneys' fees and other damages.

330)   WHEREFORE, Plaintiffs demand judgment against Defendants Pearlman, Defendants Fischetti, Crudele, Finger, Bacchus, Wuellenkemper, McDonald, Tolner, Jans, Chamberlain, and Pohl and Defendant Pearlman Companies, as well as Defendants FISERV and Defendant Banks, for an award of actual damages, prejudgment interest, costs, attorney's fees, and such other relief as this Court deems necessary and proper.

## COUNT XVIII - VIOLATION OF NEW YORK SECURITIES REGULATIONS

331)   Plaintiffs repeat and reallege paragraphs 12 to 142 and 144 to 196 (from Count I) and 325 to 329 (from Count XVII) inclusive as if the same were set forth fully and at length herein.

*332)*   The New York Uniform Securities Act provides in pertinent part that

*It is unlawful for any person, in connection with the offer, sale or purchase of any security, directly or indirectly*

> *(1) to employ any device, scheme, or artifice to defraud,(2) to make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they are made, not misleading, or (3) to engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person*

*333)*   As part of The Fraudulent Enterprise, Defendants Pearlman, Defendants Fischetti, Crudele, Finger, Bacchus, Wuellenkemper, McDonald, Tolner, Jans, Chamberlain, and Pohl and Defendant Pearlman Companies and Defendant FISERV and Defendant Banks made *untrue statements of material fact and/or omitted to state a material facts in connection with the offer, sale or purchase of the EISA Accounts and Trans Con Stock Program.*

334)   The acts of Defendants Pearlman, Defendants Fischetti, Crudele, Finger, Bacchus, Wuellenkemper, McDonald, Tolner, Jans, Chamberlain, and Pohl and Defendant Pearlman Companies constitute a violation of New York's Uniform Securities Act.

335)   As a direct and proximate result of the conduct of Defendants Pearlman, Defendants Fischetti, Crudele, Finger, Bacchus, Wuellenkemper, McDonald, Tolner, Jans, Chamberlain, and Pohl and Defendant Pearlman Companies, as well as Defendants FISERV and Defendant Banks, in violation of the New York Uniform

Securities Act, , Plaintiffs suffered damages, including but not limited to the loss of their entire *"investment"*.

336)    The New York Uniform Securities Act provides certain statutory remedies and damages, including reimbursement of the actual losses, reasonable attorney's fee and other damages.

337)    WHEREFORE, Plaintiffs demand judgment against Defendants Pearlman, Defendants Fischetti, Crudele, Finger, Bacchus, Wuellenkemper, McDonald, Tolner, Jans, Chamberlain, and Pohl and Defendant Pearlman Companies, as well as Defendants FISERV and Defendant Banks, for an award of actual damages, prejudgment interest, costs, attorney's fees, and such other relief as this Court deems necessary and proper.

### COUNT XIX - VIOLATION OF NEW YORK
### GENERAL BUSINESS LAW 359–c  FRAUDULENT PRACTICES
### IN RESPECT TO SALES OF STOCKS, BONDS AND OTHER SECURITIES

338)    Plaintiffs repeat and reallege paragraphs 12 to 142 and 144 to 196 (from Count I) and 325 to 329 (from Count XVII) inclusive as if the same were set forth fully and at length herein.

339)    New York General Business Law § 359 – c provides in pertinent part:

> (a) A "dealer" shall mean and include any person, firm, association or corporation engaged in the business of buying and selling securities from or to the public within or from this state for his or its own account, through a broker or otherwise, except a bank unless such bank is considered a dealer under the federal securities exchange act of 1934, but does not include any person, firm, association or corporation in so far as he or it buys or sells securities for his or its bona fide investment account, either individually or in some fiduciary capacity. The term "dealer" shall,

--------------------

except as otherwise provided in this article, also include a person, firm, association or corporation selling or offering for sale from or to the public within or from this state securities issued by it. No person shall be deemed to be a "dealer", as defined in this subdivision, or a broker, as defined in subdivision (b) of this section, solely by reason of the fact that he is engaged in the business of (i) selling, offering for sale, purchasing or offering to purchase any security or securities to, from or through any bank, dealer or broker, or to or from any syndicate, corporation or group formed for the specific purpose of acquiring such securities for resale to the public directly or through other syndicates or groups, or (ii) any offer, sale or distribution by an issuer of stock dividends, nontransferable warrants or transferable warrants exercisable within ninety days of their issuance to existing stockholders, securities issued upon conversion of convertible securities and exercise of warrants and securities issued as part of a recapitalization or reclassification to existing stockholders of the same issuer, or (iii) selling, offering for sale, purchasing or offering to purchase any security or securities on the floor of any securities exchange registered as a national securities exchange under the securities exchange act of nineteen hundred thirty-four. No person, firm, association or corporation shall be deemed to be a "dealer", as defined in this subdivision, solely by reason of selling or offering for sale any security or securities to any bank, corporation, savings institution, trust company, insurance company, investment company, as defined in the federal investment company act of nineteen hundred forty, pension or profit-sharing trust, or other financial institution or institutional buyer, whether the purchaser is acting for himself or itself or in some fiduciary capacity, as part of a private placement of securities.

   (b) A "broker" shall mean and include any person, firm, association or corporation, other than a dealer, engaged in the business of effecting transactions in securities for the account of others within or from this state, but does not include a bank unless such bank is considered a

*broker under the federal securities exchange act of 1934.*

*(c) A "salesman" shall mean and include every person employed by a broker or dealer as said terms are defined in this section, for the purpose of representing such broker or dealer in the sale or purchase of securities to or from the public within or from this state.*

*(d) A "principal" shall mean and include every person or firm directly or indirectly controlling any broker or dealer.*

340)   Defendants Pearlman, Defendants Fischetti, Crudele, Finger, Bacchus, Wuellenkemper, McDonald, Tolner, Jans, Chamberlain, and Pohl and Defendant Pearlman Companies meet the definitions of brokers, dealers, salesman and/or principals pursuant to NY General Business Law § 359 c..

341)   General Business Law § 359 – c also provides:

*No dealer or broker shall sell or offer for sale to or purchase or offer to purchase from the public within or from this state, as principal, or broker, any securities issued or to be issued unless and until a notice, to be known as the "state notice," containing the name, business or post office address of such dealer or broker and if a corporation the state or country of incorporation thereof, and if a partnership the names of the partners, shall have been filed in the department of state.*

342)   Defendants Pearlman, Defendants Fischetti, Crudele, Finger, Bacchus, Wuellenkemper, McDonald, Tolner, Jans, Chamberlain, and Pohl and Defendant Pearlman Companies were not registered, licensed and/or authorized brokers, dealers, salesman and/or principals pursuant to NY General Business Law § 359 c..

343)   Defendant Pearlman Companies were not authorized to engage in the business they conducted through the offerings and/or sales, or the promotion, solicitation and/or marketing of The EISA and Trans Con Stock Program Accounts.

344)    The offering and sale of EISA and Tran Con Stock Program Accounts by

Defendants Pearlman, Defendants Fischetti, Crudele, Finger, Bacchus,

Wuellenkemper, McDonald, Tolner, Jans, Chamberlain, and Pohl and Defendant

Pearlman Companies were violations of NY General Business Law § 359-c

345)    As a direct and proximate result of Defendants Pearlman, Defendants Fischetti,

Crudele, Finger, Bacchus, Wuellenkemper, McDonald, Tolner, Jans, Chamberlain,

Pohl and Defendant Pearlman Companies, as well as Defendants FISERV and

Defendant Banks, conduct in violation of NY General Business Law § 359-c,

Plaintiffs suffered damages, including but not limited to the loss of their entire

*"investment"*.

346)    NY General Business Law § 359-c also provides certain statutory remedies and

damages, including reimbursement of the actual losses, reasonable attorney's fee and

other damages.

**347)**    WHEREFORE, Plaintiffs demand judgment against Defendants Pearlman,

Defendants Fischetti, Crudele, Finger, Bacchus, Wuellenkemper, McDonald, Tolner,

Jans, Chamberlain, and Pohl and Defendant Pearlman Companies, as well as

Defendants FISERV and Defendant Banks, for an award of actual damages,

prejudgment interest, costs, attorney's fees, and such other relief as this Court deems

necessary and proper.

## COUNT XX - EXPLOITATION OF THE ELDERLY

348)    Plaintiffs repeat and reallege paragraphs 12 to 142 and 144 to 196 (from Count I)

and 325 to 329 (from Count XVII) inclusive as if the same were set forth fully and at

length herein.

--------------------

349)   At the time of the investment, certain Plaintiffs were over 65 years of age.

350)   These Plaintiffs, by virtue of their age as set forth herein above, were elderly and vulnerable adults.

351)   Defendants Pearlman, Defendants Fischetti, Crudele, Finger, Bacchus, Wuellenkemper, McDonald, Tolner, Jans, Chamberlain, and Pohl and Defendant Pearlman Companies, as well as Defendants FISERV and Defendant Banks, stood in a position of trust and confidence with a vulnerable adult as that term is defined under New York law..

352)   New York Social Services Law 473.6 provides in pertinent part that *"the improper use of an adult's funds, property or resources by another individual including, but not limited to, fraud, false pretenses, embezzlement, conspiracy, forgery, falsifying records, coerced property transfers or denial of access to assets shall be unlawful.*

353)   As explained above, The Fraudulent Enterprise involved a commitment of money that was induced principally by the written and oral representations of Defendants Pearlman, Defendants Fischetti, Crudele, Finger, Bacchus, Wuellenkemper, McDonald, Tolner, Jans, Chamberlain, and Pohl and Defendant Pearlman Companies that an economic benefit would be derived from such commitment and by the written representations and documents submitted to Plaintiffs by Defendant FISERV and Defendant Banks that the "investment" would be handled according to the conditions of the contract as described above, would be safeguarded and would be deposited into proper accounts where the investment was insured and from which the investment could not be misappropriated, all of which were made to Plaintiffs to whom

--------------------

Defendants Pearlman, Defendants Fischetti, Crudele, Finger, Bacchus, Wuellenkemper, McDonald, Tolner, Jans, Chamberlain, and Pohl and Defendant Pearlman Companies, as well as Defendants FISERV and Defendant Banks, stood in a position of trust and confidence in relation to the elderly Plaintiffs who are to be protected by New York Social Services Law 473.6 .

354) The Fraudulent Enterprise that was induced principally by the written and oral representations of Defendants Pearlman, Defendants Fischetti, Crudele, Finger, Bacchus, Wuellenkemper, McDonald, Tolner, Jans, Chamberlain, and Pohl and Defendant Pearlman Companies that an economic benefit would be derived from such commitment and by the written representations and documents submitted to Plaintiffs by Defendant FISERV and Defendant Banks that the "investment" would be handled according to the conditions of the contract as described above, would be safeguarded and would be deposited into proper accounts where the investment was insured and from which the investment could not be misappropriated, was achieved through knowingly deceptive or intimidating tactics, which were designed to obtain or use the vulnerable adult's funds, assets or property of vulnerable persons, with the intent to temporarily or permanently deprive the vulnerable adult of the use, benefit or possession of the funds, assets or property for the benefit of someone other than the vulnerable adult.

355) Defendants Pearlman, Defendants Fischetti, Crudele, Finger, Bacchus, Wuellenkemper, McDonald, Tolner, Jans, Chamberlain, and Pohl and Defendant Pearlman Companies, commitments, representations and documents submitted to the vulnerable Plaintiffs and Defendant FISERV and Defendant Banks representations

through the documents they submitted or caused to be sent to the vulnerable Plaintiffs about how their monies would be handled according to the conditions of the contract as described above, would be safeguarded and would be deposited into proper accounts where the investment was insured and from which the investment could not be misappropriated, constituted a breach of their fiduciary relationship and duty to the vulnerable Plaintiffs.

356)   New York laws  provide for actual damages, punitive damages, attorneys fees and costs of suit, for violations as they related to deception and fraud upon the vulnerable Plaintiffs.

357)   As a direct and proximate result of Defendants Pearlman, Defendants Fischetti, Crudele, Finger, Bacchus, Wuellenkemper, McDonald, Tolner, Jans, Chamberlain, and Pohl and Defendant Pearlman Companies, as well as Defendants FISERV and Defendant Banks, conduct in violation of the aforementioned statute, the vulnerable Plaintiffs suffered damages, including but not limited to the loss of their entire *"investment"*.

358)   WHEREFORE, the vulnerable Plaintiffs demand judgment against Defendants Pearlman, Defendants Fischetti, Crudele, Finger, Bacchus, Wuellenkemper, McDonald, Tolner, Jans, Chamberlain, Pohl and Defendant Pearlman Companies, as well as Defendants FISERV and Defendant Banks, for an award of actual damages, punitive damages, prejudgment interest, costs, attorney's fees, and such other relief as this Court deems necessary and proper, including equitable relief

### COUNT XXI – NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS

359)   Plaintiffs repeat and reallege paragraphs 12 to 142 and 144 to 196 (from Count I)

and 325 to 329 (from Count XVII) inclusive as if the same were set forth fully and at length herein.

360)    During the period from November 2006 to the present, Plaintiffs sought to recover information regarding the Fraudulent Enterprise and the fate or whereabouts of their money.

361)    During this period, Defendants Pearlman, Defendants Fischetti, Crudele, Finger, Bacchus, Wuellenkemper, McDonald, Tolner, Jans, Chamberlain, Pohl and Defendant Pearlman Companies, as well as Defendants FISERV and Defendant Banks, engaged in a pattern of careless, reckless and/or negligent conduct in responding to Plaintiffs inquiries and requests for information and requests for preservation of and/or access to evidence.

362)    Said Defendants engaged in a pattern of careless, reckless and/or negligent conduct in responding to Plaintiffs inquiries and requests for information and requests for preservation of and/or access to evidence, certain of the Defendants Pearlman, Defendants Fischetti, Crudele, Finger, Bacchus, Wuellenkemper, McDonald, Tolner, Jans, Chamberlain, and Pohl and Defendant Pearlman Companies, as well as Defendants FISERV and Defendant Banks, sent letters and/or made telephone calls that were designed to mislead, intimidate, frustrate and/or interfere with Plaintiffs' rights.

363)    As a direct and proximate result of the careless, reckless and/or negligent conduct in responding to Plaintiffs inquiries and requests for information and requests for preservation of and/or access to evidence, which certain of Defendants Pearlman, Defendants Fischetti, Crudele, Finger, Bacchus, Wuellenkemper, McDonald, Tolner,

Jans, Chamberlain, and Pohl and Defendant Pearlman Companies, as well as

Defendants FISERV and Defendant Banks, employed, the Plaintiffs were caused to

suffer physical and emotional injuries.

364)    WHEREFORE,  Plaintiffs demand judgment against Defendants Pearlman,

Defendants Fischetti, Crudele, Finger, Bacchus, Wuellenkemper, McDonald, Tolner,

Jans, Chamberlain, and Pohl and Defendant Pearlman Companies, as well as

Defendants FISERV and Defendant Banks, for an award of actual damages, punitive

damages, prejudgment interest, costs, attorney's fees, and such other relief as this

Court deems necessary and proper, including equitable relief.

## COUNT XXII – TORTIOUS INTERFERENCE WITH PLAINTIFFS' BUSINESS, PROPERTY AND DUE PROCESS RIGHTS

365)    Plaintiffs repeat and reallege paragraphs 12 to 142 and 144 to 196 (from Count I)

and 325 to 329 (from Count XVII) inclusive as if the same were set forth fully and at

length herein.

366)    During the period from November 2006 to the present, Plaintiffs sought to recover

information and their money.

367)    During this period, Defendants Florida and OFR, and/or individuals such as

Defendants Brooks and McHale acting on their behalf, engaged in a pattern of

intentional interference with Plaintiffs property, claims, due process rights and access

to information and evidence related to The Fraudulent Enterprise and Defendants

participation, involvement, benefits and/or liabilities therefrom

368)    Part of these actions included Defendant Brooks attempting to mislead and/or

prevent Plaintiffs and others from reporting The Fraudulent Enterprise and what they

believed to be each of the Defendants participation, involvement, benefits and/or liabilities therefrom to Law Enforcement Officials.  *See Exhibit 6* .

369)   Part of these actions included Defendant McHale publishing the publication of libelous, defamatory and/or slanderous statement in which he accused Plaintiffs and other or their representatives of engaging in a "re-load scam" which is a criminal activity and thereby attempting to interfere with and/or prejudice Plaintiffs business, property and due process rights.  *See Exhibit 7.*

370)   *A*s a direct and proximate result of the Defendants aforesaid acts, certain Plaintiffs including Plaintiffs James Lowy was caused to suffer actual damages to his/their business, property and to also suffer physical and emotional injuries.

371)   WHEREFORE, the Plaintiffs demand judgment against Defendants Brooks and McHale for an award of actual damages, punitive damages, prejudgment interest, costs, attorney's fees, and such other relief as this Court deems necessary and proper, including equitable relief.

### COUNT XXIII – LIBEL, SLANDER and/or DEFAMATORY STATEMENTS

372)   Plaintiffs repeat and reallege paragraphs 12 to 142 and 144 to 196 (from Count I) and 325 to 329 (from Count XVII) and 366 to 370 (from Count XXII) inclusive as if the same were set forth fully and at length herein.

373)   On March 8, 2007, Defendant McHale posted and/or caused the following statement to be published on an Internet website of the St. Petersburg Times newspaper, in response to a question about the case *Clements et al v. Pearlman et al*, 07-cv-000399, a related lawsuit filed by Lowy in United States District Court for the Middle District of Florida:

*I would urge and caution investors that anyone asking for money under the guise of recovery could be opening the investor to another (scheme) - the so called "recovery" or "reload" scam..*

Posted by: *Jerry McHale* | *March 08, 2007 at 03:34 PM*

*See Exhibit 7/Exhibit Binder*

374)   At the time Defendant McHale caused the above to be posted he knew and/or should have known that a *"re-load scam"* is a crime.

375)   At the time Defendant McHale caused the above to be posted he intended to use the phrase *"re-load scam"* to suggest criminal activity.

376)   At the time Defendant McHale caused the above to be posted he knew and/or should have known that Plaintiffs and Plaintiffs Lowy were engaged in the lawful business of trying to recover monies that were allowed to be stolen and/or misappropriated by the improper *ultra vires* acts and/or negligent acts of Defendants Crist, Defendant McCollum, Saxon, Defendant OFR and others who were part of the OFR investigations into The Fraudulent Enterprise and Defendant Pearlman and Defendant Pearlman Companies.

377)   Plaintiffs and Plaintiffs Lowy are not public figures.

378)   The statements that were caused to be published by Defendant McHale constitute *libel per se*.

379)   Defendant McHale caused the publication to be posted with intent to cause damage to Plaintiffs and Plaintiffs Lowy.

380)   As a direct and proximate result of the Defendants' aforesaid acts, Plaintiffs including Plaintiffs James Lowy was caused to suffer actual damages to his/their

business, property and to also suffer physical and emotional injuries.

381)     WHEREFORE, the Plaintiffs demand judgment against Defendant McHale for an

award of actual damages, punitive damages, prejudgment interest, costs, attorneys'

fees, and such other relief as this Court deems necessary and proper, including

equitable relief.

**COUNT XXIV – PROSPECTIVE INJUNCTION TO PREVENT ONGOING**
***ULTRA VIRES* ACTS OF OFFICIALS OF DEFENDANT FLORIDA, OFFICES**
**THE ATTORNEY GENERAL AND OFFICES OF FINANCIAL REGULATION,**
**BILL McCOLLUM and DON SAXON**

382)     Plaintiffs repeat and reallege paragraphs 12 to 142 and 144 to 196 (from Count I)

and 325 to 329 (from Count XVII) and 366 to 371 (from Count XXII) inclusive as if

the same were set forth fully and at length herein.

383)     Some of the damages which Plaintiffs have been caused to suffer have no

adequate remedy at law and require equitable relief.

384)     There is a reasonable likelihood that if an injunction does not issue, Plaintiffs will

suffer further irreparable damages, which cannot be remedied by the limited award of

monetary damages from the State of Florida, based on the statute which as set forth

above, Plaintiffs contend is unconstitutional as related to the facts of this extra-

ordinary case.

385)     In this case, there are allegations against the highest official of the State of Florida

and the former and current Attorney General, whereby one or another of these

individuals was at all times involved in and/or part of the prior investigations and

decision not to prosecute and/or to take no actions against Defendant Pearlman and

Defendant Pearlman Companies, as well as its/their agents, officers, directors and/or

other persons involved with The EISA and Trans Con Stock Program Accounts.

386)    The Plaintiffs claims are based upon competent investigative reports (upon which Plaintiffs have a right to rely and which they have further investigated) by reporters at one or more Florida newspapers, such as Helen Huntley at the St. Petersburg Times or Sarah Clarke at the Orlando Sentinel.  In addition, Plaintiffs claims are based upon additional investigative reports made by Les Henderson who conducted years of investigations which led to his book entitled *"Under Investigation"* regarding Pearlman's Wilhelmina Modeling Network (now Fashion Rock or Talent Rock), and the Florida Attorney General's Office's multi-year  investigation that was terminated at around the same time as the 2003-2004 investigation into the Fraudulent Enterprise.  Plaintiffs' claims are also based upon information that is being provided to Plaintiffs persons who have direct knowledge of how The EISA and Trans Con Stock Program Accounts and The Fraudulent Enterprise was operated for almost 25 years.

387)    According to sworn statements made as recently as within the last month, by the Court appointed receiver, Defendant Pearlman Companies were little more than a collection of liabilities, especially Trans Con Airlines and Trans Con Travel Services.

388)    The Court appointed receiver also found that all Defendant Pearlman Companies (i) used the same employees, (ii) were directed by the same person – Defendant Pearlman, (iii) used the same offices and/or addresses and (iv) used the same accounts.  *See Exhibit 2.*

389)    The Court appointed receiver also determined that Defendant Pearlman Companies did NOT observe the proper corporate formalities.

390)    Trans Con Airlines and Trans Con Travel Services were the two companies that

--------------------

were at the heart of The EISA and Trans Con Stock Program Accounts and The Fraudulent Enterprise was operated for almost 15 years.

**<u>As Relates to Defendant Crist</u>**

391)    The objective evidence suggests that as a result of their investigations during the period from 2002 forward, Defendant Crist and persons under his authority, including persons in the Office of the Florida Attorney General and persons in the Defendant OFR, knew, should have known or could have determined through the exercise of reasonable diligence how Defendant Pearlman operated his companies, just as the Court appointed Receiver just did.

392)    The objective evidence suggests that as a result of their investigations, Defendant Crist and persons under his authority, including persons in the Office of the Florida Attorney General and persons in the  Defendant OFR, knew, should have known or could have determined through the exercise of reasonable diligence that Defendant Pearlman operated his companies as one entity and did not observe the normal and required corporate formalities, just as the Court appointed Receiver just did.

393)    Defendant Crist and persons under his authority, including persons in the Office of the Florida Attorney General and persons in the Defendant OFR, had multiple duties in relation to the investigations and connections with Defendant Pearlman.

394)    The duties and/or restrictions related to Defendant Crist when he was the Attorney General included the duty to avoid even the appearance of impropriety with regard to investigations that were conducted by his offices or by Defendant  OFR.

395)    The duties and/or restrictions related to Defendant Crist when he was a candidate for the Office of Governor, included  not only the duty to avoid even the appearance

of impropriety but also included strict limitations related to campaign contributions and other similar financial issues.

396)    If the allegations and evidence which is coming forth from investigative journalists, authors, former insiders, persons with knowledge and even the Court appointed receiver prove to be true, they raise serious as relates to Defendant Crist, Defendant Florida and they raise serious questions as relates to the ongoing investigation into the actions of Defendant Pearlman, Defendant Pearlman Companies and other Defendants.

397)    If the allegations and evidence prove to be true, further charges and claims may have to be filed related to (i) potential "bribery" of government officials, (ii) obstruction of justice, (iii) receipt of and/or benefiting from "stolen" property – The EISA or Trans Con Stock Program account monies, and (iv) violation of Florida election campaign laws.

398)    If the allegations and evidence prove to be true, there have been violation of Florida and US laws including but not limited to 18 USC § 201, which make the need for equitable relief more appropriate.

399)    Based on the evidence from the Court appointed receiver and other evidence Plaintiffs have secured, there is a probability that the monies and other benefits, in the form of campaign contributions, unpaid or grossly underpaid-for use of private jets, sky boxes, fundraisers and other benefits that were given to Defendant Crist's Gubernatorial Campaign by Defendant Pearlman and Defendant Pearlman Companies can be traced to The EISA or Trans Con Stock Program account monies.

400)    Whether or not Defendant Crist actually knew the source of the monies, at the

time he accepted, the tens of thousands of dollars in contributions, use of private jets, sky boxes and hosting of fundraisers given to his campaign by Defendant Pearlman and Defendant Pearlman Companies is an issue that will be resolved through discovery.

401)     Florida Statute 102 provides that it is a 3rd degree felony for a candidate to accept two or more campaign contributions that are in excess of $1,000.

402)     The objective evidence shows that Defendant Crist received $10,500 in actual monetary contributions from Defendant Pearlman and Defendant Pearlman Companies.

403)     The objective evidence shows that Defendant Crist also received the additional benefits of the use of private jets and then apparently sought to report the cost for using a Gulfstream jet at less than $350 per trip, when the actual use is more accurately $4,000 per hour.

404)     The objective evidence related to the acceptance of campaign contributions and other benefits from a single entity, to wit: Defendant Pearlman and/or Defendant Pearlman Companies – which Defendant Crist knew or should have known to be the case – gives rise to circumstances that further call into question the integrity of the 2002 – 2006 investigations by Defendant Crist, the offices of the Florida Attorney General and the Defendant OFR.

405)     The nature of the relationship between Defendant Crist and Defendant Pearlman and Defendant Pearlman Companies on the one hand and the timing and circumstances related to the cessation of the investigations into the activities of and failure to prosecute Defendant Pearlman and Defendant Pearlman Companies or any

of its/their employees, agents, directors and/or others involved with the EISA and

Trans Con Stock Program accounts is suspect

### As Relates to Defendant McCollum

406)    The objective evidence suggests that from 2006 forward when he was a candidate

for the Office of Attorney General and a member of the Florida Legislature,

Defendant McCollum knew, should have known or could have determined through

the exercise of reasonable diligence that Defendant Pearlman and Defendant

Pearlman Companies were targets of investigations by Defendant OFR and Defendant

Crist.

407)    The duties and/or restrictions related to Defendant McCollum when he was in the

Florida Legislature and a candidate for Attorney General included the duty to avoid

even the appearance of impropriety with regard to Defendant Pearlman and

Defendant Pearlman's Companies.

408)    The duties and/or restrictions related to Defendant McCollum when he was in the

Florida Legislature and a candidate for Attorney General, included  not only the duty

to avoid even the appearance of impropriety but also included strict limitations related

to campaign contributions and other similar financial issues.

409)    If the allegations and evidence which is coming forth from investigative

journalists, authors, former insiders, persons with knowledge and even the Court

appointed receiver prove to be true, they raise serious questions relating to the

ongoing investigation into the actions of Defendant Pearlman, Defendant Pearlman

Companies and other Defendants.

410)    If the allegations and evidence prove to be true, further charges and claims may

have to be filed related to (i) potential "bribery" of government officials, (ii) obstruction of justice, (iii) receipt of and/or benefiting from "stolen" property – The EISA or Trans Con Stock Program account monies, and (iv) violation of Florida election campaign laws.

411)    If the allegations and evidence prove to be true, there have been violations of Florida, New York and US laws including but not limited to 18 USC § 201, which make the need for equitable relief more appropriate.

412)    Based on the evidence from the Court appointed receiver and other evidence Plaintiffs have secured, there is a probability that the monies and other benefits, in the form of campaign contributions, unpaid or grossly underpaid-for fundraisers that were given to Defendant McCollum's Campaign by Defendant Pearlman and Defendant Pearlman Companies can be traced to The EISA or Trans Con Stock Program account monies.

413)    Whether or not Defendant McCollum actually knew the source of the monies, at the time he accepted the thousands of dollars in contributions, hosting of fundraisers given to his campaign by Defendant Pearlman and Defendant Pearlman Companies is an issue that will be resolved through discovery.

414)    Florida Statute 102 provides that it is a 3rd degree felony for a candidate to accept two or more campaign contributions that are in excess of $1,000.

415)    The objective evidence shows that Defendant McCollum received $4,500 in actual monetary contributions from Defendant Pearlman and Defendant Pearlman Companies.

416)    The objective evidence shows that Defendant McCollum received additional

benefits from Defendant Pearlman and Defendant Pearlman Companies, including fundraisers at Pearlman's home, the cost of which was not reimbursed to Pearlman..

417)   The objective evidence related to the acceptance of campaign contributions and other benefits from a single entity, to wit: Defendant Pearlman and/or Defendant Pearlman Companies – which Defendant McCollum knew or should have known to be the case – gives rise to circumstances that further call into question the integrity of the 2002 – 2006 investigations by Defendant Crist, the offices of the Florida Attorney General and Defendant OFR and more importantly the ability of Defendant McCollum as Attorney General to act impartially on any investigation being conducted at the present time.

418)   The nature of the relationship between Defendant Crist, Defendant McCollum and Defendant Pearlman and Defendant Pearlman Companies on the one hand and the timing and circumstances of the renewed investigations into the activities of and continued failure to prosecute Defendant Pearlman and Defendant Pearlman Companies or any of its/their employees, agents, directors and/or others involved with the EISA and Trans Con Stock Program accounts is suspect.

419)   If the allegations are true, Defendant McCollum knowingly, intentionally, carelessly, recklessly, negligently or improperly received and/or came to be in possession of thousands of dollars that was misappropriated from Plaintiffs, the origins of which were The EISA and Trans Con Stock Program account monies..

### As Relates to Defendant Saxon

420)   The objective evidence suggests that as a result of their investigations during the period from 2003 forward, Defendant Saxon and persons under his authority,

including persons in the Office of the Attorney General or Defendant Crist, and persons in Defendant OFR, knew, should have known or could have determined through the exercise of reasonable diligence how Defendant Pearlman operated his companies, just as the Court appointed Receiver just did.

421)    The objective evidence suggests that as a result of their investigations, in the time period from 2003 forward, Defendant Saxon and persons under his authority, including persons in the Office of the Attorney General or Defendant Crist, and persons in Defendant OFR,  knew, should have known or could have determined through the exercise of reasonable diligence that Defendant Pearlman operated his companies as one entity and did not observe the normal and required corporate formalities, just as the Court appointed Receiver just did.

422)    During the period from 2003 forward, Defendant Saxon and persons under his authority, including persons in the Office of the Attorney General or Defendant Crist, and persons in Defendant OFR, had multiple duties in relation to the investigations and connections with Defendant Pearlman.

423)    If the allegations and evidence which is coming forth from investigative journalists, authors, former insiders, persons with knowledge and even the Court appointed receiver prove to be true, they raise serious questions related to what Defendant Saxon and persons under his authority, including persons in the Office of the Attorney General or Defendant Crist, and persons in Defendant OFR, did and why they did it during the period from 2003 to present, and they raise serious questions as relates to the ongoing investigation into the actions of Defendant Pearlman, Defendant Pearlman Companies and other Defendants.

424)   If the allegations and evidence prove to be true, further charges and claims may

have to be filed related to (i) potential "bribery" of government officials, (ii)

obstruction of justice, (iii) receipt of and/or benefiting from "stolen" property – The

EISA or Trans Con Stock Program account monies, and (iv) violation of Florida

election campaign laws.

425)   Defendant Saxon and persons under his authority at Defendant OFR had to know

of the relationship between Defendant Crist and Defendant Pearlman and Defendant

Pearlman Companies such that the timing of and circumstances related to the

cessation of the investigations into the activities of and failure to prosecute Defendant

Pearlman and Defendant Pearlman Companies or any of its/their employees, agents,

directors and/or others involved with the EISA and Trans Con Stock Program

accounts is suspect

## As Relates to Defendants Brooks & McHale

426)   The objective evidence suggests that there was an investigation going on from

early 2006 to the end of 2006.

427)   The objective evidence suggests that Defendant Brookes was involved in that

investigation.

428)   The objective evidence suggests that hundreds of millions of dollars were wasted

fraudulently transferred and/or misappropriated during 2006 at a time when

Defendant OFR and Defendant Brooks were presumably investigating Defendant

Pearlman and Defendant Pearlman companies.

429)   The objective evidence suggests that as a result of their 2006 investigations,

Defendant OFR and Defendant Brooks  knew, should have known or could have

determined through the exercise of reasonable diligence that Defendant Pearlman

operated his companies as one entity and did not observe the normal and required

corporate formalities, just as the Court-appointed Receiver stated.

430)   The objective evidence suggests that as a result of their 2006 investigation,

effectively reopening a 2003 investigation, Defendant OFR and Defendant Brooks

knew or should have known that Defendant Pearlman and Defendant Pearlman

Companies should have been shut down and the monies frozen to protect Plaintiffs

and others.

431)   If the allegations and evidence prove to be true, further charges and claims may

have to be filed related to (i) potential "bribery" of government officials, (ii)

obstruction of justice, (iii) receipt of and/or benefiting from "stolen" property – The

EISA or Trans Con Stock Program account monies, and (iv) violation of Florida

election campaign laws.

432)   Defendant OFR and Defendant Brooks had to know of the relationship between

Defendant Crist and Defendant Pearlman and Defendant Pearlman Companies such

that the timing of and circumstances related to the cessation of the investigations into

the activities of and failure to prosecute Defendant Pearlman and Defendant Pearlman

Companies or any of its/their employees, agents, directors and/or others involved

with the EISA and Trans Con Stock Program accounts is suspect.

433)   The actions by Defendant Brooks in 2007 are suspect in that it appears that

Defendant Brooks is no longer impartial and is in fact in a position where she can

cause improper pressure or influence on the ongoing investigation in order to protect

herself, Defendant Crist, Defendant McCollum Defendant Saxon and Defendant OFR

to the detriment of Plaintiffs and others.

434)    The actions by Defendant McHale in 2007 are suspect in that it appears that
Defendant McHale is no longer impartial and is in fact in a position where he can
cause improper pressure or influence on the ongoing investigation in order to protect
himself, Defendant Crist, Defendant McCollum Defendant Saxon and Defendant
OFR to the detriment of Plaintiffs and others.

435)    If the allegations are true, Defendants Crist, Defendant McCollum and others
knowingly, intentionally, carelessly, recklessly, negligently or improperly received
and/or came to be in possession of tens of thousands of dollars that was
misappropriated from Plaintiffs, the origins of which were The EISA and Trans Con
Stock Program account monies.

436)    To date, hundreds of millions of dollars has vanished, and Pearlman himself has
disappeared from the Country.

437)    Plaintiffs' only available remedy to follow the monies to whatever sources as may
remain in the US and to seek the assistance of the Court in protecting them from
further ongoing damages.

438)    Witnesses are refusing to testify and records are being lost or getting destroyed.

439)    Additional evidence exists, including records in the possession of (i) Defendant
OFR, (ii) Office of the Florida Attorney General, and (iii) Office of the Gubernatorial
Campaign of Defendant Crist (iv) Office of the Attorney General Campaign of
Defendant  McCollum.

440)    The evidence relates to financial records, notes of communications, documents,
reports, notes of telephone calls, witness interviews and other such information kept

--------------------

in hard copy and electronic form.

441)    There are or should also be records related to persons involved with The

Fraudulent Enterprise, including all the named Defendants, and third parties such as

Alec Defrawy a/k/a Ayman El-Difrawi a/k/a Alexander Defrawy, Sean Keck and

other persons who have knowledge of relationships and/or investigations of

Defendant Crist, the office of the Attorney General and/or the Defendant OFR on the

one hand and Defendants Pearlman, Defendant Pearlman Companies,  Fischetti,

Crudele, McDonald, Tolner, Jans, Chamberlain  on the other hand as they related to

the EISA and Trans Con Stock Program accounts or other frauds of which Defendant

Pearlman and/or any of Defendant Pearlman Companies were accused during the

period from 1995 to 2006.

442)    There is a reasonable likelihood that a conflict of interest presently exists with

regard to the ability of the Defendant OFR to conduct an investigation without

notifying or feeling it their duty to inform one or more of the Defendants named in

this action, especially Defendant Pearlman, or Defendant Crist, Defendant

McCollum, Defendant Saxon, Defendant Brooks and Defendant McHale, or officials

of Defendant State of Florida and the Plaintiffs to whom they owe a duty of

impartiality.

443)    There is a reasonable likelihood that a conflict of interest presently exists with

regard to the ability of the  Defendant Crist, Defendant McCollum, Defendant Saxon,

Defendant Brooks, Defendant McHale and/or any other officials under the auspices of

the Florida Attorney General and/or OFR, to conduct an investigation without

disclosing or feeling it their duty to disclose to one or more of the Defendants named

in this action.

444)   WHEREFORE, Plaintiffs pray the Court issue an injunction as follows:

a)   A Special Prosecutor be appointed to conduct an expedited investigation and including the filing of criminal charges against persons involved with and/or who benefited from The Fraudulent Enterprise, Defendant Pearlman and/or Defendant Pearlman Companies;

b)   The Office of the Florida Attorney General and OFR including specifically Defendant McCollum, Defendant Saxon, Defendant Brooks and Defendant McHale be enjoined from participating in any investigation into The Fraudulent Enterprise, Defendant Pearlman and/or Defendant Pearlman Companies;

c)   All evidence related to Defendant Pearlman and Defendant Pearlman Companies and Defendant OFR investigations related to them from 1995 to 2006 shall be preserved and Plaintiffs shall be given immediate access to such evidence;

d)   Evidence from the ongoing investigations into Defendant Pearlman and Defendant Pearlman Companies, officers, agents, employees and/or representatives involved in the EISA and Trans Con Stock Programs Accounts, being conducted by the Defendant OFR or The Office of Attorney General shall be made available to Plaintiffs;

e)   Monies that can be traced from EISA and/or Trans Con Stock Program account monies to Defendant Crist and his Gubernatorial campaign and Defendant McCollum and his Attorney General campaign shall be frozen and segregated so that they are available to pay damages to Plaintiffs and others victimized by Defendant Pearlman and Defendant Pearlman Companies through the EISA and

--------------------

Trans Con Stock Programs Accounts and The Fraudulent Enterprise.

Dated:  March 16, 2007                    /s/ Edward D. Fagan
         New York, NY                      Edward D. Fagan – EF-4125
                                           80 Broad Street, 5th Floor
                                           New York, NY  10004
                                           (212) 837-7836
                                           (973) 568 – 6441 - Cell
                                           Email: faganlawintl@aim.com


*Trial Counsel*
Robert J. Hantman, Esq.
Hantman & Associates
Member, NY, NJ, Fla., and Pa. Bars
1414 Avenue of the Americas - Suite 406.
New York, New York 10019
Hantmanrj@aol.com
Office: (212) 684-3933
Fax: (212)755-1989


*Of Counsel*
James F. Lowy Esq. PA
International Law Group
PO BOX 10614
Tampa, Florida 33679
Tel. (813) 760-2901
Fax (813) 282-0384
jameslowy@gmail.com