# EXHIBIT 1

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-----------------------------------------------------------------------X

| | |
|---|---|
| BEVERLY ALKOW; E.A.; MITCHELL ALKOW; | : |
| NADIA ALKOW; S.A.; | :    CIVIL ACTION # |
| RALPH ALBERGO; | :    07-CV-2285 (GBD) |
| ANA AFANE, JORGE AFANE; | :    (conformed copy) |
| JAN ARANOFF; | : |
| CHARLES BERG; JASON BERG; | : |
| LINDSAY BERG.; RUTH BERG; | : |
| MAURICE BERNSTEIN; | : |
| JEFFREY BOENIG; WILLIAM BOENIG; | : |
| KIRSTEN BYRNES; | : |
| ELAINE BOGAL-CALIX; | : |
| ELAINE CALIX FOR LUIS CALIX; | : |
| ELAINE CALIX ITF J.S.C.; ELAINE CALIX ITF B.H.C.; | : |
| ELAINE CALIX ITF REBECCA J. CALIX.; | : |
| JODY CHIMBEL; | : |
| FRANK CIOLLI; | : |
| HOWARD COHEN; JENNIFER COHEN; | : |
| JARED COHEN; MARLENE COHEN; | : |
| ROBERTA COREN; DENNIS COREN; | : |
| RICHARD COYLE; | : |
| ERIC DANETZ; | : |
| CHRISTOPHER DRAEGER; | : |
| DR. BONNIE FLASTER; ELAINE FLASTER; | : |
| FRED FINKELSTEIN; | : |
| JACLYN GAON; STEPHEN GAON; | : |
| LORA GULOYAN; | : |
| FRAN HIRSHMAN; KENNETH HIRSHMAN; | : |
| JESSICA KEPFORD; LYNN KEPFORD; | : |
| JEFFREY KHALAF; | : |
| STUART M. KREINER; | : |
| HERB KUTZEN; MELANIE KUTZEN; | : |
| BERNICE LOCKER; IRVING LOCKER; | : |
| KEVIN MAHONEY; | : |
| NEZAR MEJALLI ; | : |
| DANIEL MARSH; | : |
| BRYAN MCKATTEN; | : |
| MEDORO MONTEMARANO; | : |
| MARITZA MONTEMARANO; | :    COMPLAINT |
| CHRISTINA PASHAYAN; L.P.; MARIA PASHAYAN; | :    WITH DEMAND |
| MELISSA PASHAYAN; RICHARD PASHAYAN; | :    FOR JURY TRIAL |
| ALAN PUTTERMAN; | : |
| ALAN ROSEN; PAULA ROSEN; | : |
| PETER ROSSI; | : |
| HERBERT ROTHBERG; | : |
| JERRY ROTHCHILD: | : |
| FLORENCE SCHULMAN; | : |
| RONALD SELLING; | : |

ADEEN SCHWARTZ; IAN SCHWARTZ; J.C.S.;                                :
GLENN STERN;                                                        :
JONATHAN TANNENHAUSER;                                              :
MAE TANNENHAUSER;                                                   :
MARK TANNENHAUSER;                                                  :
MICHAEL TANNENHAUSER;                                               :
MILO THALROSE;                                                      :
BENJAMIN WINIKOFF; CAMI WINIKOFF;                                   :
JEAN WINIKOFF,                                                      :
BETSY WRIGHT; GREGORY WRIGHT;                                       :
NANCY YACOVONE;                                                     :
                             Individual Plaintiffs    :
                                                          :
NORTH SHORE PLUMBING SUPPLY;                                        :
NORTH SHORE PLUMBING SUPPLY PROFIT SHARING;    :
NORTH SHORE PLUMBING SUPPLY PENSION TRUST;     :
RIVERVALE CHIROPRACTIC CENTER PENSION ACCT;     :
RIVERVALE CHIROPRACTIC/DR. CHARLES BERG;        :
JONATHAN TANNENHAUSER IRA;                                          :
MARK TANNENHAUSER IRA;                                              :
MICHAEL TANNENHAUSER IRA;                                           :
THE TIMEPIECE COLLECTION LTD.;                                     :
                             Corporate Plaintiffs;    :
-----------------                                                  :
JAMES LOWY ESQ.; JAMES LOWY ESQ. PA;                               :
INTERNATIONAL LAW GROUP LLC;                                       :
               (Plaintiffs in Counts XXII & XXIII only) ,    :
                                                          :
                           PLAINTIFFS,    :
                                                          :
    -   Vs -                                  :
                                                          :
LOUIS J. PEARLMAN;                                                 :
ROBERT FISCHETTI;                                                  :
MICHAEL CRUDELE;                                                   :
KRISTIN FINGER;                                                    :
SALMA BACCHUS;                                                     :
THEODORE WÜLLENKEMPER;                                             :
GREGORY McDONALD;                                                  :
MARK TOLNER;                                                       :
RICHARD CARL JANS;                                                 :
RECA RENE CHAMBERLAIN;                                             :
ANDREAS POHL;                                                      ;
And                                                                :
CHARLES J. CRIST;                                                  :
BILL McCOLLUM;                                                     :
GERARD McHALE;                                                     :
                      Individual Defendants;    :
-----------------                                                  :

BILL McCOLLUM;
DON SAXON;
DANIELLE BROOKS;
GERARD McHALE;
             Individual Defendants for Equitable Relief; :

-------------

TRANS CONTINENTAL AIRLINES EMPLOYEE
    INVESTMENT SAVINGS ACCOUNT
    & STOCK PROGRAMS;
                 Enterprise Defendant; :

-------------

TRANS CONTINENTAL AIRLINES, INC.;
TRANS CONTINENTAL AIRLINES TRAVEL
    SERVICES, INC.;
TRANS CONTINENTAL ENTERPRISES, LLC;
TRANS CONTINENTAL ENTERTAINMENT INC.;
LOUIS J. PEARLMAN ENTERPRISES, INC.;
TRANS CONTINENTAL RECORDS, INC.;
TC LEASING, LLC;
TRANS CONTINENTAL TALENT, INC.;
FASHION ROCK, LLC;
TALENT ROCK, LLC;
TRANS CONTINENTAL TRAVEL SERVICE, INC.;
F.F. STATION, LLC ;
TRANS COUNTRY MUSIC GROUP, INC.;
TRANS CONTINENTAL STUDIOS, INC.;
TRANS CONTINENTAL AVIATION, INC.;
AEGIS CONSULTING, INC.;
GERMAN INVEST-UND FINANZBERATUNG GmbH;
TRANS CONTINENTAL GmbH;
AIRSHIP INTERNATIONAL LTD.;
                 Corporate Defendants; :

-----------------------

TRIPLE-M RECORDS GmbH;
A&R RECORDS INC.;
             Corporate Defendants for
                 Equitable Relief :

-------------

FISERV CORPORATION individually and as successor
    to RETIREMENTACCOUNTS INC.;
BANK OF AMERICA;
FIFTH THIRD BANK;
WACHOVIA BANK;
SUN TRUST CO.;
J.P. MORGAN / CHASE BANK;
CITIBANK;
             Corporate Defendants :
             Trustees / Agents; :

-------------

TATONKA CAPITAL CORPORATION;                                    :
FIRST NATIONAL CITY BANK;                                        :
INTEGRA BANK;                                                    :
AMERICAN BANK OF ST. PAUL;                                       :
FIRST NATIONAL BANK and                                          :
      TRUST CO. of WILLISTON;                          :
                 Corporate Defendants   :
                 Trustees / Agents;      :
                                   :
-----------------                                                :
DUN & BRADSTREET CO.;                                            :
                 Corporate Defendant;   :
-----------------                                                :
JOHN DOES # 1 – 10;                                              :
      (the names being fictitious and used solely for     :
      identification purposes, the actual names           :
      will be disclosed in future discovery);             :
JOHN DOE COMPANIES # 1 – 10;                                     :
      (the names being fictitious and used solely for     :
      identification purposes,  actual names              :
      will be disclosed in future discovery);             :
                 "*John Doe*" Defendants;    :
                                   :
-----------------                                                :
STATE OF FLORIDA;                                                :
                Sovereign Entity Defendant;  :
-----------------                                                :
STATE OF FLORIDA;                                                :
OFFICE OF FINANCIAL REGULATION; and                              :
OFFICE OF THE ATTORNEY GENERAL                                   :
                 Sovereign Entity Defendants   :
                 For Equitable Relief;        :
                                   :
                 DEFENDANTS.            :
----------------------------------------------------------------------X

## INTRODUCTION

Plaintiffs are persons from the New York, New Jersey, Connecticut, Michigan,

Georgia, Arizona, Illinois, Idaho and Washington State whose monies were deposited in,

with or entrusted to "Employee Investment Savings Accounts" ("EISAs") or other

securities including but not limited to stock, certificates of deposit or other monies

deposited with, held by or entrusted to the various entities affiliated with Defendants

Pearlman and his companies.

-----------------

Plaintiffs were all victims of an ongoing enterprise, scheme, conspiracy, pattern of fraud, violation of New York, Florida, US and International laws, through which hundreds of millions of dollars were sent from New York, New Jersey, Connecticut, Michigan, Georgia, Arizona, Illinois, Idaho and Washington State and elsewhere into Defendant Banks in New York and Florida – monies that later disappeared into Europe, the Caribbean and elsewhere, as a direct and proximate result of Defendants' unlawful conduct, negligence, breach of fiduciary duties or malfeasance.

In addition to being victims of the original enterprise and scheme through which millions were stolen and/or misappropriated from Plaintiffs, Plaintiffs have suffered additional damages for which equitable relief is sought against officials of Defendant State of Florida, including the Governor of Florida and persons in the Office of the Governor, the Attorney General of Florida and Persons in Office of the Attorney General, Commissioner of the Office of Financial Regulation and persons/investigators in the Office of Financial Regulation, and others acting on their behalf.

Plaintiffs'' request for equitable relief as against officials of Defendant State of Florida, is based upon evidence that suggests these Defendants engaged in an ongoing pattern and/or scheme that occurred sometime from 2005 to the present, after the Plaintiffs' monies were misappropriated and/or stolen, the purpose of which acts were to conceal evidence or the discovery of evidence related to officials of Defendant State of Florida, who allegedly were involved with, among other things (i) malfeasance, (ii) inappropriate, unethical or illegal *ultra vires* acts, (iii) obstruction of justice, (iv) interference and/or attempts to interfere with Plaintiffs'' due process rights, (v) unlawful receipt of monies that were actually or constructively misappropriated or stolen, (vi)

publication of libelous, slanderous and/or defamatory statements, (vii) interference in Plaintiffs' business, and (viii) interference and/or attempts to interfere with and/or manipulate official investigations.

As and for their complaint, Plaintiffs, upon information and belief, allege as follows:

## COMPLAINT

### JURISDICTION

1) The Court has original jurisdiction over Plaintiffs'' claims pursuant to 18 USC § 1964, the Racketeer Influenced and Corrupt Organizations Act (RICO).

2) The Court has original jurisdiction over Plaintiffs'' claims pursuant to 18 USC § 1954 – Violation of Handling of Employee Savings Accounts.

3) The Court has original jurisdiction over Plaintiffs'' claims pursuant to 18 USC § 1341 – Mail Fraud as it applies to the causes of action plead herein.

4) The Court has original jurisdiction over Plaintiffs'' claims pursuant to 18 USC § 1343 – Wire Fraud as it applies to the causes of action plead herein.

5) The Court has original jurisdiction over Plaintiffs'' claims pursuant to 18 USC § 1030 – Computer Fraud Act as it applies to the causes of action plead herein.

6) The Court has original jurisdiction over Plaintiffs'' claims which challenge the constitutionality of certain provisions of Florida Statute Section 768.28.

7) The Court has ancillary and/or supplemental jurisdiction of all Plaintiffs'' state law claims pursuant to 28 USC § 1367.

8) The Court has original jurisdiction over these claims subject to the Securities Acts of 1933, §§ 5 and 12, and the Securities Act of 1934, § 10, and Securities and Exchange Commission Rule 10(b)5.

9) Each of the claims of the named Plaintiffs exceeds the statutory limit of this Court, exclusive of attorneys' fees, costs and interest.

10) Alternatively, the Court has jurisdiction under 28 USC § 1332 through diversity jurisdiction.

## VENUE

11) Venue is proper in this Court because one or more of the Plaintiffs live in this judicial district, some Defendants lived and/or operated in this district, and/or the Defendants' unlawful acts occurred within this judicial district.

## PARTIES

12) Plaintiffs are individuals and corporations and partnerships residing in this judicial district, and in other districts in the State of New York, New Jersey, Connecticut, Michigan, Georgia, Arizona, Illinois, Idaho and Washington State.

13) Each Plaintiffs was defrauded into (i) entrusting, transferring or depositing monies into one or more Trans Continental Employee Investment Savings Accounts (EISA) (See Exhibit Binder) and/or Retirement Accounts and/or the Trans Continental Stock Program (See Exhibit Binder), (ii) purchasing securities and/or certificates of deposit monies or (iii) opening one or more savings accounts.

14) Plaintiffs fall into three distinct groups. Plaintiffs Group 1 are/were EISA depositors. Plaintiffs Group 2 are/were persons who "purchased" stock in one of the Pearlman

Companies. Plaintiffs Group 3 are/were EISA depositors who also had Individual
Retirement Accounts (IRAs).

15) The majority of the Defendants fall into six distinct categories. Defendant Group 1
consists of individuals who were the officers, directors, managers and/or agents of
Louis J. Pearlman's companies who were directly involved with the enterprise and
scheme to defraud Plaintiffs. Defendant Group 2 consists of the Defendant Pearlman
Companies and The Fraudulent Enterprise as that term is defined below. Defendant
Group 3 includes individuals and public officials of the State of Florida, including
former Attorney General and now Governor Charles J. Crist. Defendant Group 4
include banks and/or trust companies Bank of America, Wachovia, Fifth Third Bank,
Fiserv (successor to Retirement Accounts Inc.), Sun Trust Bank, Citibank and Chase
which were responsible for Plaintiffs' monies. Defendant Group 5 include banks
and/or companies including Tatonka, National City Bank, Integra Bank, St Paul and
Williston which received and/or benefited from fraudulent conveyances to hinder,
delay or prejudice plaintiffs claims to their monies. Defendant Group 5 include the
individuals and/or entities such as Bill Defendant McCollum, Don Saxon, Office of
Financial Regulation, Danielle Brooks (investigator with Defendant OFR) and Gerard
McHale Esq. (agent for Defendant OFR and State of Florida) against which Plaintiffs
seek equitable relief.

## Defendant Pearlman Companies

16) Defendant Trans Continental Airlines, Inc. ("Trans Con Airlines") is a Florida
corporation with its principal place of business in Orlando, Florida. Defendant Trans

Con Airlines maintained (i) the Trans Continental Employee Investment Savings Account (Trans Con EISA or EISA) scheme and (ii) the Trans Continental Airlines Travel Services, Inc. stock scheme (Trans Con Stock).

17) Defendant Trans Continental Airlines Travel Services, Inc. ("Trans Con Airlines Travel") is a Florida company with its principal place of business in Orlando, Florida.

18) Defendant Trans Continental Enterprises, LLC ("Trans Con Enterprises") is a Florida limited liability company with its principal place of business in Orlando, Florida.

19) Defendant Louis J. Pearlman Enterprises, Inc. ("Pearlman Enterprises") is a Florida corporation with its principal place of business in Orlando, Florida.

20) Defendant Trans Continental Records, Inc. ("Trans Con Records") is a Florida corporation with its principal place of business in Orlando, Florida.

21) Defendant TC Leasing, LLC ("TC Leasing") is a Florida limited liability company with its principal place of business in Orlando, Florida.

22) Defendant Trans Continental Talent, Inc. ("Trans Con Talent") is a Florida corporation with its principal place of business in Orlando, Florida.

23) Defendant Fashion Rock, LLC ("Fashion Rock") is a Florida limited liability company with its principal place of business in Orlando, Florida.

24) Defendant Talent Rock, LLC ("Fashion Rock") is a Florida limited liability company with its principal place of business in Orlando, Florida.

25) Defendant Trans Continental Travel Service, Inc. ("Trans Con Travel") is a "void" Delaware corporation with its principal place of business in Orlando, Florida.

26) Defendant F.F. Station, LLC ("F.F. Station") is a Florida limited liability company with its principal place of business in Orlando, Florida.

27) Defendant Trans Country Music Group, Inc. ("Trans Country Music") is a Florida corporation with its principal place of business in Orlando, Florida.

28) Defendant Trans Continental Studios, Inc. ("Trans Con Studios") is a Florida corporation with its principal place of business in Orlando, Florida.

29) Defendant Trans Continental Aviation, Inc. ("Trans Con Aviation") is a Florida corporation with its principal place of business in Orlando, Florida.

30) Defendant Aegis Consulting, Inc. ("Aegis Consulting") is a Florida corporation with its principal place of business in Valrico, Florida.

31) Defendant Airship International Ltd. ("Airship") is a New York corporation with its principal place of business in New York and Florida.

32) Defendant German Invest-und Finanzberatung GmbH ("Eurosavings") is a German company with places of business in Germany and Florida.

33) Defendant Triple-M Records GmbH ("Triple M") is a German company with places of business in Germany and Florida.

34) Defendant A & R Records Inc ("A&R") is a US company with places of business in California and New York.

## Defendant Pearlman

35) Defendant Louis J. Pearlman ("Pearlman") is a Florida resident who conducted business in and from the State of Florida. Defendant Pearlman is/was the organizer and principal actor involved with or responsible for (i) the enterprise and scheme to defraud Plaintiffs and in the violation of applicable laws and regulations related to the EISA, stock and other securities which Plaintiffs were induced to deposit or purchase,

(ii) the improper and potentially illegal activity involving Defendants Crist and Defendant McCollum, Defendant OFR and Florida and (iii) the misappropriation of hundreds of millions of dollars from Plaintiffs.

36) Defendant Pearlman is/was (i) President and Registered Agent of Defendants Trans Con Airlines, Trans Con Records, and Trans Con Aviation; (ii) Managing Member or Manager and Registered Agent for Defendants TC Leasing, Fashion Rock, and F.F. Station; (iii) Director and Registered Agent of Defendants Pearlman Enterprises and Trans Con Studios; (iv) Chairman and Director for Trans Con Talent and (v) co-owner of or has an interest in Defendants Trans Continental GmbH, Eurosavings GmbH and Defendant Triple-M GmbH.

37) Defendant Pearlman receives revenue, royalties and/or other monies or benefits from Defendants A & R and Triple M.

38) Defendant Pearlman owns, controls and/or directs the operations of Defendants Trans Con Airlines, Trans Con Records, TC Leasing, Fashion Rock, Talent Rock, F.F. Station, Pearlman Enterprises, Trans Con Studios, Trans Con Talent, Trans Country Music, Aegis Consulting, Trans Con Airlines Travel, Trans Con Travel and Eurosavings (hereinafter collectively referred to as "Defendant Pearlman Companies").

39) Defendant Pearlman Companies are all alter – egos of one another and (i) have similar if not identical directors and officers, (ii) use the same employees, (iii) use the same offices, (iv) use the same bank accounts, (v) use the same telephone lines, (vi) the day to day management is controlled by the same people, (vii) are directed, owned, managed, controlled and/or connected to Defendant Pearlman and (viii) do

not otherwise observe proper corporate formalities. See Exhibit 2, Receiver's Letter Report dated February, 2007. In addition and insofar as they were alter egos of one another, as it relates to The Fraudulent Enterprise and the other actions which form the basis for this complaint, Defendant Pearlman Companies failed to maintain separate records and accounts, shifted money from one account to another indiscriminately and used their names and assets interchangeably.

### Defendant Fischetti, Crudele, Finger, Bacchus, Wuellenkemper, McDonald, Tolner, Jans, Chamberlain & Pohl

40) Defendant Robert Fischetti ("Fischetti") is a Florida resident who lives who lives in or near Orlando, Florida and conducted business in and from the State of Florida. Defendant Fischetti is/was an officer, director and/or agent of one or more of Defendant Pearlman Companies. Defendant Fischetti is/was a director, officer, employee and/or agent of Defendant Pearlman involved with (i) the enterprise and scheme to defraud Plaintiffs and in the violation of applicable laws and regulations related to the EISA, stock and other securities which Plaintiffs were induced to deposit or purchase, and (ii) the misappropriation of hundreds of millions of dollars from Plaintiffs.

41) Defendant Michael Crudele ("Crudele") is a Florida resident who lives in or near Valrico, Florida and who conducted business in and from the State of Florida. Defendant Crudele is/was an officer, director and/or agent of one or more of Defendant Pearlman Companies. Defendant Crudele is/was a director, officer, employee and/or agent of Defendant Pearlman involved with (i) the enterprise and scheme to defraud Plaintiffs and in the violation of applicable laws and regulations

related to the EISA, stock and other securities which Plaintiffs were induced to deposit or purchase, and (ii) the misappropriation of hundreds of millions of dollars from Plaintiffs.

42) Defendant Kristin Finger ("Finger") is a Florida resident who lives in or near Orlando, Florida and who conducted business in and from the State of Florida. Defendant Finger was an officer, employee of one or more of Defendant Pearlman Companies. Defendant Finger was responsible for the depositor and/or investor databases. Defendant Finger was directly involved with (i) the enterprise and scheme to defraud Plaintiffs and in the violation of applicable laws and regulations related to the EISA, stock and other securities which Plaintiffs were induced to deposit or purchase, and (ii) the misappropriation of hundreds of millions of dollars from Plaintiffs.

43) Defendant Salma Bacchus ("Bacchus") is a Florida resident who lives in or near Orlando, Florida and who conducted business in and from the State of Florida. Defendant Bacchus was an officer, employee of one or more of Defendant Pearlman Companies. Defendant Bacchus was the controller of Defendant Pearlman Companies and was responsible for tracking of monies, transferring of monies and payments from Defendant Pearlman Companies. Defendant Bacchus was responsible for the transfer of depositor and/or investor monies to all persons, entities and businesses in the US and overseas. Defendant Bacchus was directly involved with (i) the enterprise and scheme to defraud Plaintiffs and in the violation of applicable laws and regulations related to the EISA, stock and other securities which Plaintiffs were

induced to deposit or purchase, and (ii) the misappropriation of hundreds of millions of dollars from Plaintiffs.

44) Defendant Theodore Wüllenkemper ("Wüllenkemper ") maintains a place of business, properties and assets in the State of Florida and conducts business in Florida and New York. Defendant Wüllenkemper is a co-owner of Defendant Pearlman Companies and other businesses with Defendant Pearlman. Defendant Wüllenkemper was directly involved with (i) the enterprise and scheme to defraud Plaintiffs and in the violation of applicable laws and regulations related to the EISA, stock and other securities which Plaintiffs were induced to deposit or purchase, and (ii) the misappropriation of hundreds of millions of dollars from Plaintiffs. Defendant Wüllenkemper also helped Defendant Pearlman in the establishment of German entity Defendant Eurosavings GmbH into which millions of dollars misappropriated from Plaintiffs was sent.

45) Defendant Andreas Pohl ("Pohl") maintains a place of business in Berlin, Germany and conducts business in this judicial district. Defendant Pohl is a co-owner of Defendant Triple-M with Defendant Pearlman.

46) Defendant Gregory McDonald ("McDonald") is a Florida resident who lives in or near Orlando, Florida and was a Vice-President of many Defendant Pearlman Companies, was a partner and co-owner of many Defendant Pearlman Companies and was actively involved in and benefited from The Fraudulent Enterprise as defined herein.

47) Defendant Mark Tolner ("Tolner") is a Florida resident who lives in or near Orlando, Florida and was president of Defendant Fashion Rock and Transcontinental Talent

and was actively involved with other of Defendant Pearlman Companies and was

actively involved in and benefited from The Fraudulent Enterprise as defined herein.

48) Defendant Richard Carl Jans ("Jans") is a Florida resident who lives in or near

Orlando, Florida and was involved with Defendant Pearlman Companies and was

actively involved in and benefited from The Fraudulent Enterprise as defined herein.

49) Defendant Reca Rene Chamberlain ("Chamberlain") is a Florida resident who lives in

or near Orlando, Florida, and was the in-house counsel to Defendant Pearlman,

Defendant Pearlman Companies and involved in and benefited from The Fraudulent

Enterprise as defined herein.


## Defendant Crist


50) Defendant Charles J. Crist ("Crist or Charlie Crist") is the Governor of Florida,

former Attorney General of Florida and former Member of the Financial Services

Commission[1] who resides in Tallahassee, Florida.   The evidence from (i)

independent and credible reporters, authors and investigators, (ii) witnesses with

knowledge of The Fraudulent Enterprise, and (iii) statements by Court Appointed

Officials in Florida involved with Defendant Pearlman and Defendant Pearlman

---

[1] The Financial Services Commission is a part of the Executive Branch of the Florida Government and was established by F.S. § 20.121.  The Financial Services Commission is the Supervisory and/or Governing Body responsible for The Office of Financial Regulation.  The powers, structure, authority, budget and virtually all other aspects of the Financial Services Commissions and its commissioners over and related to the Office of Financial Regulations is set forth in F.S. § 20.121. (3) a.  At all times, relevant hereto, Defendant Crist was one of four Commissioners on the Financial Services Commission along with former Governor Jeb Bush, former Chief Financial Officer Tom Gallagher and former Commissioner of Agriculture Charles Bronson.  At all times the Commissioner of the Office of Financial Regulation was Don Saxon.  Because of his position as the Chief Legal Officer of the State of Florida and Commissioner of the Office of Financial Regulation, Defendant Crist was in a position of authority regarding the day to day affairs of the Office of Financial Regulation and as such was also in a unique position to make known his positions and/or recommendations about investigations being considered and/or in process by the Office of Financial Regulation, including the investigations into Defendant Pearlman and Defendant Pearlman Companies.

---

Companies, Defendant Crist appears to be a person who benefited from the below described fraud and enterprise and by, among other things, (i) engaging in questionable, improper and/or potentially unethical *ultra vires* acts while an official of the State of Florida; (ii) failing to take the necessary steps as required by his job as Attorney General; (iii) delaying or interfering with the investigations against Defendant Pearlman and Defendant Pearlman Companies; (iv) conspiring to delay or interfere with the investigations against Pearlman; (v) violating the applicable laws and regulations governing his position as an attorney, including failing to follow the conflict-of-interest guidelines set forth by the Florida Bar and the ABA Code of Ethics; (vi) violating the oath of office as Attorney General; (vii) engaging in negligent and potentially improper acts such as using his official position and influence which helped and/or allowed Defendant Pearlman and Defendant Pearlman Companies to continue the scheme to defraud and unlawful enterprise which he knew, had reason to know or should have known and/or could have discovered through the exercise of reasonable diligence was defrauding Plaintiffs and others out of hundreds of millions of dollars; (viii) attempting to conceal, mislead the public and/or otherwise cover up connections between Defendant Pearlman, Defendant Pearlman Companies and potentially improper contributions and/or other benefits during the campaign for Governor by making potentially untruthful, misleading and negligent statements about campaign contributions, fundraising activities, use of private plane(s) and other benefits received, directly or indirectly from Defendant Pearlman and/or the Defendant Pearlman Companies; (ix) breaching fiduciary duties; (x) benefitting from and/or receiving potentially misappropriated funds; (xi) failing to

take necessary and appropriate action through investigations or acting upon available

information so as to prevent the misappropriation of hundreds of millions of dollars;

(xii) violating the public trust and official duties and (xiii) other wrongful activities.

## Defendant McCollum

51) Defendant Bill McCollum ("Defendant McCollum") is the Attorney General of

Florida, Defendant McCollum was a member of the House of Representatives from

Florida where he served as Vice Chairman of the House Banking Committee, was on

the Judiciary Committee and was Chairman of the Subcommittee on Crime. Prior to

his election as Florida Attorney General in November 2006, Defendant McCollum

was a partner with the Baker & Hostetler LLP. During the campaign, Defendant

McCollum appears to be a person who benefited from the below described fraud and

enterprise and by, among other things, (i) engaging in questionable, improper and/or

potentially unethical conduct as a candidate for public office; (ii) failing to take

necessary steps as required by his job as Attorney General; (iii) violating the

applicable laws and regulations governing his position as an attorney (iv) failing to

follow the conflict-of-interest guidelines set forth by the Florida Bar, and the ABA

Code of Ethics (v) attempting to conceal, mislead the public and/or otherwise cover

up connections between Defendant Pearlman, Defendant Pearlman Companies and

potentially improper contributions and/or other benefits during the campaign for

Governor by making potentially untruthful, misleading and negligent statements

about campaign contributions, fundraising activities and other benefits received,

directly or indirectly from Defendant Pearlman and/or the Defendant Pearlman

Companies; (iv) benefitting from and/or receiving potentially misappropriated funds;

(v) engaging in improper, unethical and possibly illegal *ultra vires* acts in violation of his duties as a public official and representative of the people of the State of Florida; (vi) failing to take necessary and appropriate action through investigations or acting upon available information so as to prevent the misappropriation of hundreds of millions of dollars; (vii) violating the public trust and official duties and (viii) other wrongful activities.

## Defendant Banks

52) Defendant Bank of America ("Bank of America") is a public company operating as a bank in the State of New York and in this judicial district. Defendant Bank of America is a Trust Company / bank, which was to maintain and safeguard Plaintiffs' EISA monies, Individual Retirement Accounts, stocks or other commercial paper.

53) Defendant Fifth Third Bank ("5/3 Bank") is a public company operating as a bank in the State of New York and in this judicial district. Defendant 5/3 Bank is a Trust Company and/or bank, which was to maintain and/or safeguard some of Plaintiffs EISA monies, Individual Retirement Accounts, stocks or other commercial paper.

54) Defendant Wachovia Bank is a public company operating as a bank within the State of New York and in this judicial district. Defendant Wachovia is a Trust Company and/or bank, which was to maintain and/or safeguard some of Plaintiffs EISA monies, Individual Retirement Accounts, stocks or other commercial paper.

55) Defendant J. P. Morgan Chase ("Chase") is a public company operating as a bank within the State of New York and in this judicial district. Defendant Chase is a Trust Company and/or bank, which was to maintain and/or safeguard some of Plaintiffs EISA monies, Individual Retirement Accounts, stocks or other commercial paper.

56) Defendant Citibank, Chase N.A. ("Citibank, Chase") is a public company operating as a bank within the State of New York and in this judicial district. Defendant Citibank, Chase is a Trust Company and/or bank, which was to maintain and/or safeguard some of Plaintiffs EISA monies, Individual Retirement Accounts, stocks or other commercial paper.

57) Defendant Sun Trust Co. ("Sun") is a public company operating as a bank with its principal headquarters in the State of Georgia and doing business in the State of New York and in this judicial district. Defendant Sun was a Trust Company and/or bank, which was to maintain and/or safeguard some of Plaintiffs EISA monies, Individual Retirement Accounts, stocks or other commercial paper.

58) Defendants Bank of America, 5/3 Bank, Wachovia, Citibank, Chase and Sun are hereinafter referred to as Defendant Banks.

## Defendant Tatonka, National City Bank, Integra, St. Paul & Williston

59) Defendant Tatonka Capital Corporation ("Tatonka") is a company engaged in interstate commerce and which does business in the State of New York, and within this judicial district as well as in the State of Florida. Defendant Tatonka was involved to the extent that carelessly, recklessly, negligently and/or improperly engaged in business with Defendant Pearlman and Defendant Pearlman Companies and received he benefit of fraudulent conveyances including but not limited to Plaintiffs monies or monies which originated with Plaintiffs, as well as other securities purchased with Plaintiffs monies, and at a time which if it conducted proper investigations would have known that such transactions through which Defendant Tatonka received benefits or extended loans were not permitted.

60) Defendant First National City Bank ("National City Bank") is a banking corporation engaged in interstate commerce and which does or affects business in the State of New York, and within this judicial district as well as in the State of Florida. Defendant National City Bank was involved to the extent that carelessly, recklessly, negligently and/or improperly engaged in business with Defendant Pearlman and Defendant Pearlman Companies and received the benefit of fraudulent conveyances including but not limited to Plaintiffs monies or monies which originated with Plaintiffs, as well as other securities purchased with Plaintiffs monies, and at a time which if it conducted proper investigations would have known that such transactions through which Defendant National City Bank received benefits or extended loans were not permitted.

61) Defendant Integra Bank ("Integra") is a banking corporation engaged in interstate commerce and which does or affects business in the State of New York, and within this judicial district as well as in the State of Florida. Defendant Integra was involved to the extent that carelessly, recklessly, negligently and/or improperly engaged in business with Defendant Pearlman and Defendant Pearlman Companies and received the benefit of fraudulent conveyances including but not limited to Plaintiffs monies or monies which originated with Plaintiffs, as well as other securities purchased with Plaintiffs monies, and at a time which if it conducted proper investigations would have known that such transactions through which Defendant Integra received benefits or extended loans were not permitted.

62) Defendant American Bank of St. Paul ("St. Paul") is a banking corporation engaged in interstate commerce and which does or affects business in the State of New York,

and within this judicial district as well as in the State of Florida. Defendant St. Paul was involved to the extent that carelessly, recklessly, negligently and/or improperly engaged in business with Defendant Pearlman and Defendant Pearlman Companies and received the benefit of fraudulent conveyances including but not limited to Plaintiffs monies or monies which originated with Plaintiffs, as well as other securities purchased with Plaintiffs monies, and at a time which if it conducted proper investigations would have known that such transactions through which Defendant St. Paul received benefits or extended loans were not permitted.

63) Defendant Integra Bank ("Integra") is a banking corporation engaged in interstate commerce and which does or affects business in the State of New York, and within this judicial district as well as in the State of Florida. Defendant Integra was involved to the extent that carelessly, recklessly, negligently and/or improperly engaged in business with Defendant Pearlman and Defendant Pearlman Companies and received the benefit of fraudulent conveyances including but not limited to Plaintiffs monies or monies which originated with Plaintiffs, as well as other securities purchased with Plaintiffs monies, and at a time which if it conducted proper investigations would have known that such transactions through which Defendant Integra received benefits or extended loans were not permitted.

64) Defendant First National Bank and Trust Co. of Williston ("Williston") is a banking corporation engaged in interstate commerce and which does or affects business in the State of New York, and within this judicial district as well as in the State of Florida. Defendant Williston was involved to the extent that carelessly, recklessly, negligently and/or improperly engaged in business with Defendant Pearlman and Defendant

Pearlman Companies and received the benefit of fraudulent conveyances including but not limited to Plaintiffs monies or monies which originated with Plaintiffs, as well as other securities purchased with Plaintiffs monies, and at a time which if it conducted proper investigations would have known that such transactions through which Defendant Integra received benefits or extended loans were not permitted.

## Defendant D & B and FISERVE

65) Defendant Dun and Bradstreet ("D&B") is a US company and credit rating agency, doing business in the State of Florida and within this judicial district. Defendant D&B provides credit and business condition reports on public and private companies, including the Defendant Pearlman Companies.

66) Defendant Fiserv ("FISERV") is a US company doing business in the State of Florida and within this judicial district. Defendant FISERV is a Trust Company and/or bank, which was to maintain and/or safeguard some of Plaintiffs EISA monies, Individual Retirement Accounts, stocks or other commercial paper. Defendant FISERV is the successor in interest to Retirement Accounts Inc. See Exhibit Binder.

## Defendant Florida, OFR, Saxon, Brooks & McHale

67) Defendant State of Florida is a US state with its seat of government located in Tallahassee, Florida.

68) Defendant Office of Financial Regulation ("Defendant OFR") is an agency of Defendant State of Florida with its offices in Tallahassee, Florida.

69) Defendant Don Saxon ("Saxon") is a resident of the State of Florida and has been the Commissioner of Defendant Florida's Defendant OFR since January 2003. Defendant Saxon is responsible for the 2003 to 2007 investigations into The Fraudulent Scheme. Defendant Saxon is also responsible for the malfeasance and/or *ultra vires* acts of persons within Defendant OFR and under his supervision who were involved with the 2003 – 2006 investigations as well as the wrongful acts since late 2006 by persons including but not limited to Defendants Danielle Brooks and Gerard McHale Esq..

70) Defendant Danielle Brooks ("Brooks") is a resident of the State of Florida, an employee of Defendant State of Florida, working for and/or under the authority of Defendants OFR and Saxon, and who participated in efforts to interfere with Plaintiffs due process rights through public statements and publications of false, misleading and.or other materials since November 2006.

71) Defendant Gerard McHale Esq ("McHale") is a resident of the State of Florida and since January 2007 has acted as an agent for Defendants State of Florida and Defendant OFR and who published libelous, defamatory and/or slanderous statements since January 2007 which were intended to cause damage to Plaintiffs, their property and their businesses.

## GENERAL FACTUAL ALLEGATIONS

### Mid 1980s – 1990s

72) Defendant Pearlman started his business in the State of New York. His office was located at 500 Fifth Avenue, New York, NY.

73) From that office, Defendant Pearlman started his businesses that eventually lead to all the businesses which are named as Defendants herein.

### Mid 1990s - 2003

74) In or about the mid 1990s, Defendant Pearlman determined to organize a scheme to defraud persons such as Plaintiffs.

75) The scheme involved the use of employee savings and/or company stock which would be "sold to" or in which certain persons could "participate".

76) The part of the scheme that involved "employee savings plans" was the Trans Con "EISA".

77) The part of the scheme that involved "securities and/or stocks" was known as The Trans Con Stock Program and Certificates of Deposit.

78) The combination of the "EISA" and the Trans Con Stock Program was known as the Transcontinental Airline Employee Investment Savings Account and Stock Programs.

79) Hereinafter the scheme will be called "The Fraudulent Enterprise".

80) Monies for The Fraudulent Enterprise originally came from employee and shareholder monies and at least for the period from as far back as 1983 to 2002 appeared to be sufficient for Defendant Pearlman Companies and its purposes.

81) As part of The Fraudulent Enterprise, Defendant Pearlman used false credit reporting statements from Defendant D&B, used mislabeled accounts at Defendants Bank of

America, 5/3 Bank, Wachovia and Citibank, Chase and Sun and used mislabeled

accounts at Defendant Retirement Accounts.com and FISERV.

82) From the 1980s to 2002, The Fraudulent Enterprise involved primarily employee and

shareholder monies, however agents of The Fraudulent Enterprise did sell to other

persons and/or entities that were not employees or shareholders during this period.

For more than a decade, The Fraudulent Enterprise and the securities, investments

and/or accounts were marketed, sold, offered to persons who had no real connection

or were unrelated parties to Defendant Pearlman Companies.

83) Later as Defendant Pearlman sought to expand his businesses and companies, he

needed more capital and decided to expand The Fraudulent Enterprise to include

more and more persons regardless of whether or not they had any connections to the

Defendant Pearlman Companies and specifically to non-employees.

84) From 2002 to 2003, Defendant Pearlman Companies came to be under investigation

by former Attorney General Bob Butterworth, Defendant Crist and other officials in

the State of Florida for the EISA and Trans Con Stock Program and for the

Wilhelmina Modeling Investigation that included over 2,000 consumer complaints.

85) Defendant Pearlman Companies and even the Defendant Pearlman himself were

under active investigation by the Florida Defendant OFR, which is under the

authority of the Florida Attorney General and Defendant Crist.

86) Public officials in Florida, including Defendant Crist and others in Defendant OFR

had actual or constructive knowledge that persons in Florida had accused Defendant

Pearlman and Defendant Pearlman Companies of being engaged in fraudulent

marketing schemes, consumer fraud and other illegal activities in or being run out of Defendant Pearlman Companies in the State of Florida.

87) As early as 2002, 2003 and 2004, officials in Florida, including Defendant Crist and others in Defendant OFR had actual or constructive knowledge about accusations related to Defendant Pearlman's modeling promotion companies and improprieties related directly to Defendant Pearlman and Defendant Pearlman Companies' financial transactions and the Fraudulent Enterprise.

88) Officials in Florida, including Defendant Crist and others in Defendant OFR had actual or constructive knowledge that complaints, dating back to 1995, had been made against Defendant Pearlman and Defendant Pearlman Companies by the FDIC, consumers, the State of Texas Securities Board and Lloyd's of London related to financial improprieties, fraud, misrepresentations and the unlawful sale of CDs and securities.

89) In 2001, Officials in Florida, including Defendant Crist and others in Defendant OFR had received complaints and had information that Defendant Pearlman and Defendant Pearlman Companies were violating in Florida law with The EISA Accounts. In response to these complaints, Defendant Pearlman wrote a letter in which he said:

*Our company is Trans Continental Airlines Inc. We do not offer to anyone other than employees or our private shareholders our Employee Investment Savings Account plan.*

*Our employees have their own individual accounts set up with approved banking institutions. Our matching plan is based on years of service. We have not solicited anyone nor have (we) accepted anyone to this plan that does not qualify and certainly not to the general public.*

90) Based on that letter, the investigation was stopped.

---

91) In 2003, Officials in Florida, including Defendant Crist and others in Defendant OFR had actual knowledge that Defendant Pearlman and Defendant Pearlman Companies were engaged in violation of securities laws in Florida, through The Fraudulent Enterprise. *See Exhibit 1* .

92) In response to these new complaints, in mid-January 2004 Peter Antonacci Esq[2] made phone calls to persons unknown and on January 30, 2004 Mr. Antonacci wrote the Defendant OFR identifying himself as "Counsel for Trans Continental Companies" and stating:

> *This is a follow up to our conversation this past week with respect to my client the Trans Continental Companies, specifically with regard to the Trans Continental Airlines Employee Investment Savings Account (TCA EISA) and the Trans Confidential Records, Inc. Confidential Private Placement Memorandum . . .*
>
> *Neither of these products has been offered for sale to the public by the company since at least 2002. Accordingly, the company has not authorized any broker to offer for sale either of these products to the public since then. If your office receives any information to the contrary, please contact me so that the immediate action can be taken by the company.*

93) This letter was certified as being true and accurate by Defendant Pearlman and the statements by Defendant Pearlman were false, untrue and sent so that The Fraudulent Enterprise could be continued.

94) Again the Defendant OFR halted all investigations into The Fraudulent Enterprise, the EISA accounts and The Trans Con Stock program accounts, and the activities of Defendant Pearlman and Defendant Pearlman Companies.

---

[2] Peter Antonacci was a former Statewide Prosecutor and close professional acquaintance of Defendant Crist. Mr. Antonacci and his firm have extra-ordinary access to persons in position of power at the highest levels of Florida Government and all of the branches thereof, including former Governor Jeb Bush and Defendant Crist.

95) During the period from 2003 – 2005, it was a matter of public record and it was the specific job of The Defendant OFR to aggressively pursue Racketeering and Securities Fraud[3]. In fact, The Fraudulent Enterprise, Fraudulent Enterprise, the EISA accounts and The Trans Con Stock program accounts and the activities of Defendant Pearlman and Defendant Pearlman Companies comprised the Top 6 Threats to Florida Investors, as they were identified by The Defendant OFR itself.

96) From 2001 to 2006, as a result of its investigations, The Defendant OFR had or should have had actual and/or constructive knowledge, based upon complaints made against Defendant Pearlman and Defendant Pearlman Companies, that The Fraudulent Enterprise, The EISA Accounts and The Trans Con Stock Program Accounts, and the activities of Defendant Pearlman and Defendant Pearlman Companies were suspect so as to aggressively pursue them.

97) During periods relevant to underlying facts of this complaint, The Defendant OFR had a very close professional relationship with Defendant Crist. In fact, The Defendant OFR worked closely with The Attorney General and Defendant Crist himself in a similar prosecution related to banking fraud[4].

---

[3] Periodically from 2003 forward, The Office of Financial Regulation issued Press Releases about their alleged efforts to reduce securities fraud, racketeering, schemes to defraud investors and banking fraud. These and other Press Releases are posted and can be found on the Office of Financial Regulation Website at www.flDefendant OFR.com/PressReleases. They include a January 6, 2003 Release about "Seven Suspects Arrested for Racketeering and Securities Fraud Charges", May 23, 2003 Release "Man Arrested for Sale of Unregistered Securities", and April 6, 2005 Release of "Top Ten Threats to Florida's Investors" which notably ranked them as follows # 1 – Ponzi Schemes, # 2 Unlicensed Individuals Selling Securities, # 3 Unregistered Investment products, # 4 – Promissory Notes, # 5 –Senior Investment Fraud and # 6 – High Yield Investment Schemes.

[4] In January 2006, The Office of Financial Regulation and Defendant Crist proudly announced their close cooperation in the investigation, prosecution and settlement of a $325 million predatory lending scheme. Involving banks, loan documents,

--------------------

98) In fact, according to F.S. § 20.121 (3) (a) 2, *"if the Office (of Financial Regulation) has reason to believe that any criminal law of this states has or may have been violated, the office shall refer any records tending to show such violation to state or federal law enforcement or prosecutorial agencies and shall provide investigative assistance to those agencies as required"*.

99) During the period from 2001 to 2006, it was the Florida law that the *"records tending to show (the) violation"* related to Defendant Pearlman, Defendant Pearlman Companies, The Fraudulent Enterprise, The EISA Accounts and The Trans Con Stock Program Accounts, had to be sent to Defendant Crist's offices.

100) Despite this knowledge and the information that had to have been provided by The Defendant OFR, and for reasons which border on potential criminally negligent or willful breach of duties or other unlawful activities, the Office of the Attorney General, as then headed by Defendant Crist (also Commissioner of the Defendant OFR) determined or recommended that investigation into Defendant Pearlman and Defendant Pearlman Companies be halted and no action be taken.

101) From 2001 to 2006, The Defendant OFR had actual and/or constructive knowledge and with the knowledge that the complaints against Defendant Pearlman and Defendant Pearlman Companies related to The Fraudulent Enterprise, the EISA accounts and The Trans Con Stock program accounts, and the activities of Defendant Pearlman and Defendant Pearlman Companies – for reasons which border on the criminal negligence and willful breach of duties or other unlawful activities – Defendant Crist in his official capacity as Attorney General directed that that

investigation into Defendant Pearlman and Defendant Pearlman Companies be halted and no action be taken.

102) Once Defendant Florida's investigations into Defendant Pearlman and Defendant Pearlman Companies were ended in 2003, The Fraudulent Enterprise then kicked into a new phase.

103) Starting in about 2003, The Fraudulent Enterprise started to accept more monies from persons other than employees or shareholders of Defendant Pearlman Companies.

104) From 2003 forward, Defendant Pearlman directed Defendants Crudele and Fischetti to market more aggressively and to use a larger network of brokers and third parties.

105) Defendants Crudele and Fischetti started to direct the aggressive marketing of the EISA program and The Fraudulent Enterprise.

106) As part of The Fraudulent Enterprise, Defendants Pearlman, Crudele and Fischetti sought to solicit brokers to assist them in convincing persons to deposit and/or entrust monies to The Fraudulent Enterprise.

107) The Fraudulent Enterprise enticed many people throughout Florida and elsewhere around the United States and overseas to deposit and/or entrust their monies to Defendant Pearlman and Defendant Pearlman Companies.

### Representations to Depositors and Investors

108) Plaintiffs -- like many other innocent persons -- were told that if they entrusted and/or deposited their monies to/with The EISA and Trans Con Stock Plan, they

would be guaranteed a return higher than they could realize at or through any other secured instrument, investment or account.

109)    Plaintiffs were told that this high yield was possible because of Defendant Pearlman's connections and Defendant Pearlman Companies increased bargaining power or superior financial condition.

110)    Plaintiffs were told that their money was deposited in FDIC insured accounts, that the accounts were protected by additional insurance through Lloyd's of London or AIG and that separate proper "trust" or "beneficiary" accounts would be established for them.

111)    Plaintiffs were provided with copies of Dun & Bradstreet reports and statements from accountants. *See Exhibit #9 .*

112)    Plaintiffs were provided with Account Opening Forms, Detailed Instructions About Mailing or Wiring Monies, Deposit Slips, Withdrawal Slips and Monthly Statements. *See Exhibit Binder.*

113)    These were sent to Plaintiffs by mail or fax.

114)    On the surface, The Fraudulent Enterprise looked like it was legitimate.

115)    Plaintiffs had no way of knowing that in fact their monies were not being placed into the proper, secure trust accounts, that their monies were not insured, that there were no accountants, there was not insurance and the monies were not going to be safe.

### The Fraudulent Enterprise Documents from 1995 - 2002

116)    Samples of the documents used by Defendant Pearlman for The Fraudulent Enterprise were:

a) Documents issued on Defendant Pearlman Companies letterheads in which The Fraudulent Enterprise was promoted with Lloyds of London insurance and FDIC insurance - *See Exhibit Binder* ;

b) Copies of Dun & Bradstreet Reports provided by Defendant Pearlman Companies to induce Plaintiffs to give monies over to The Fraudulent Enterprise - *See Exhibit Binder* ; and

c) Copies of the EISA Marketing Materials package – *See Exhibit Binder*.

117) In addition to the financial irregularities and violations of 18 USC § 1962, The Fraudulent Enterprise also involved the sales of stock to unaccredited investors, under false pretenses, and without an appropriate prospectus containing warnings, disclaimers and "blue sky" notifications, and limiting sales to individuals of a certain minimum net worth, all of which were in violation of the US Securities Acts of 1933 and 1934.

118) The benefits that flowed to Defendants from their involvement with The Fraudulent Enterprise varied. For example,

a) Defendants Pearlman, Fischetti, Crudele, Finger, Bacchus, Wüllenkemper, McDonald, Tolner, Jans, Chamberlain, and Pohl and the Defendant Pearlman Companies directly benefited from the monies they received, stole and/or misappropriated from Plaintiffs,

b) Defendant Banks and FISERV benefited from the monies which they were able to deposit and/or the hundreds of millions of dollars in commercial transactions in which they engaged and from which they earned fees as a direct and/or indirect

result of their involvement, receipt and transfer of monies that came from The Fraudulent Enterprise;

c) Defendant Crist received and/or benefited from among other things:

   i) campaign contributions that should never have been accepted from Defendant Pearlman and Defendant Pearlman Companies at a time when Crist's offices, or Offices under his direction and control, were investigating Defendant Pearlman and Defendant Pearlman Companies and which monies are/were almost certainly originated from the monies that were entrusted to Defendant Pearlman and Defendant Pearlman Companies through The Fraudulent Enterprise;

   ii) unpaid or underpaid use of a private jet belonging to Defendant Pearlman and Defendant Pearlman Companies at the time when Defendant Crist's offices or Offices under his direction and control were investigating Defendant Pearlman and Defendant Pearlman Companies;

   iii) acceptance of unpaid-for use of private skyboxes, tickets and/or other similar sports and entertainment facilities gratuities when Defendant Crist's offices or Offices under his direction and control were investigating Defendant Pearlman and Defendant Pearlman Companies;

   iv) acceptance of unpaid-for fundraisers when Defendant Crist's offices or Offices under his direction and control were investigating Defendant Pearlman and Defendant Pearlman Companies; and

v) other unpaid benefits at a time when Defendant Crist's offices or Offices under his direction and control were investigating Defendant Pearlman and Defendant Pearlman Companies.

d) Defendant McCollum is now unfortunately the second consecutive Florida Attorney General in a *continuum* of Attorneys General of the State of Florida who has have been placed in a position of conflict of interest by Pearlman's new-found "generosity" towards his candidacy for public office (for Pearlman and his companies never gave money in these amounts previously). Defendant McCollum was and is still in a position to provide improper support and/or assistance to Defendant Pearlman, his companies and others involved in the Fraudulent Enterprise by failing to prosecute said Fraudulent Enterprise, and/or by not, other than by his campaign finance reporting requirements, publicly disclosing his conflict of interest with Pearlman and the Fraudulent Enterprise. Defendant McCollum's position is compromised because "(d)*espite ample evidence of the commission of massive crimes and the urgent nature of the situation, bilked investors and other citizens and interested persons of New York, Florida and 39 states foreign countries still await indictments from Florida Attorney General, more than five weeks after a receiver took control of the Pearlman Companies and the remains of the Fraudulent Enterprise"* (See Exhibit Binder).

e) Defendant McCollum received and/or benefited from among other things:

   i) campaign contributions that should never have been accepted from Defendant Pearlman and Defendant Pearlman Companies at the time he knew and/or

should have known that there were investigations into Defendant Pearlman and Defendant Pearlman Companies and which monies are/were almost certainly originated from the monies that were entrusted to Defendant Pearlman and Defendant Pearlman Companies through The Fraudulent Enterprise; and

ii) acceptance of unpaid-for fundraisers when Defendant Crist's offices or offices under his direction and control were investigating Defendant Pearlman and Defendant Pearlman Companies; and

iii) other unpaid benefits at a time when Defendant Crist's offices or offices under his direction and control were investigating Defendant Pearlman and Defendant Pearlman Companies.

119) The Fraudulent Enterprise was a scheme and artifice to defraud Plaintiffs.

120) The Defendant Banks were under a duty to privately ensure that Plaintiffs' monies which were being entrusted to them, were sent to a proper trust account, with proper insurance and to confirm that it got to the intended location and was secure.

121) Defendant FISERV and its predecessor Defendant Retirement Accounts Inc. were under a duty to ensure that the monies were safeguarded from the moment in time that they were transferred, wired or mailed to Defendant FISERV for deposit into the individual Plaintiffs' accounts.

122) Defendant FISERV and its predecessor Defendant Retirement Accounts Inc. were also under a duty to ensure that the monies could not be withdrawn from the accounts into which they were deposited without the express prior written consent or direction of the individual Plaintiffs.

123) The Defendant Banks and FISERV were under a duty to ensure that Defendant Pearlman and Defendant Pearlman Companies did not transfer monies from the EISA and Trans Con Stock accounts in the State of Florida to the Defendant Eurosavings in Germany or other offshore accounts.

124) Defendant Crist and State of Florida had a duty to investigate and take the necessary and prudent steps to ensure that while they continued to investigate and/or based on the complaints and/or reports they received from persons claiming to be unable to get their money out of EISA or Trans Con Stock accounts, that Defendant Pearlman and Defendant Pearlman Companies could not remove the monies from the jurisdiction.

125) As a direct result of The Fraudulent Enterprise, Plaintiffs and others, including New York, New Jersey, Connecticut, Michigan, Georgia, Arizona, Illinois, Idaho and Washington State, and others from around the United States and internationally lost at least three-hundred-seventeen-million dollars ($317,000,000). *See Exhibit Binder.*

126) Many Plaintiffs were financially ruined. Some lost their entire life savings, others lost retirement accounts, and others lost their children's college funds.

127) All of Plaintiffs were victimized through Defendant Pearlman and Defendant Pearlman Companies and The Fraudulent Enterprise.

128) The Defendant Banks, Defendant FISERV, Defendants Crist and Saxon, Defendant Florida and others had actual and/or constructive knowledge that The Fraudulent Enterprise was underway. Each of these Defendants had a duty to conduct reasonable investigations and take reasonable actions to halt the transfer of monies from the EISA and Trans Con Stock accounts.

129) If Defendant FISERV had adhered to the customary and accepted standard of care, Plaintiffs' monies would have only been sent to accounts from which they could not have been withdrawn them without Plaintiffs express written consent.

130) If Defendants Bank of America, 5/3 Bank, Citibank, Chase, Sun and Wachovia had adhered to the customary and accepted standard of care, they would have checked incoming deposits, wires and monies and ensured that the monies entrusted to them were properly handled or they would have made the necessary inquiries into the EISA Accounts and/or they would have demanded the appropriate corporate resolutions, insurance certificates, underlying contracts and other documents. And, as a result, the Plaintiffs' monies would either never have been accepted for deposit or the monies would have been deposited into proper individualized trust or fiduciary accounts with Plaintiffs' names and other identification and as a result, monies could not have been withdrawn without Plaintiffs' consent.

131) If Officials of the State of Florida, including, persons within the Florida Defendant OFR and the Attorney General's Office, had taken ordinary care in the performance of their jobs dating back to the 1990s, or if they had even conducted a modest investigation or followed through with what is required, ordinary and customary due diligence, they would have discovered the underlying scheme and could have taken action to protect Plaintiffs and the other depositors.

132) In violation of his duties and professional responsibilities, Defendant Crist accepted at least $11,000 and other benefits from Defendant Pearlman and Defendant Pearlman Companies at the time when Defendant Crist's offices or Offices under his

direction and control were investigating Defendant Pearlman and Defendant Pearlman Companies.

133)    In violation of his duties and professional responsibilities, Defendant Crist accepted monies from Defendant Pearlman and Defendant Pearlman Companies at the time when Defendant Crist's offices were investigating Defendant Pearlman and Defendant Pearlman Companies and which monies he knew, should have known or could have determined to be the equivalent of monies stolen and/or misappropriated from Plaintiffs through The Fraudulent Enterprise.

134)    Defendant Pearlman convinced the other Defendants to go along with him and as a result Defendants FISERV, Bank of America, 5/3 Bank, Sun, Citibank, Chase and Wachovia (i) did not report the problems they learned of because of their relationship with and the profits they earned from their business with Defendant Pearlman and Defendant Pearlman Companies, (ii) did not perform their fiduciary duties, and allowed monies to be transferred to wrong or improper or unauthorized accounts; (iii) did not utilize ordinary care, did not adhere to banking reporting laws such as the US Bank Secrecy Act, which requires reporting suspicious activity; and allowed monies to be deposited into improper, unintended and/or non-trust or non-fiduciary accounts from which they were withdrawn and misappropriated, and also allowed money (approximately $78 million or more) to be transferred out of Defendant Pearlman Company EISA accounts and/or overseas.

135)    Defendant Crist – as a licensed attorney, the Attorney General of Florida and a Public Official of the State of Florida - had a duty to avoid the appearance of impropriety especially in relation to Defendant Pearlman and Defendant Pearlman

Companies who/which were under investigation by him, Defendant Florida and Defendant OFR.

136) Defendant McCollum – as a licensed attorney a candidate for the office of the Attorney General of Florida and a Public Official of the State of Florida - had a duty to avoid the appearance of impropriety especially in relation to Defendant Pearlman and Defendant Pearlman Companies who/which is or was under investigation by the Florida Attorney General's Office, Defendant Florida and Defendant OFR.

137) The timing and manner of the political contributions from Defendant Pearlman and Defendant Pearlman Companies to Defendant Crist and the time when he was responsible for, overseeing and/or had knowledge of investigations into Defendant Pearlman and Defendant Pearlman Companies would or should have put a person in Defendant Crist's position on notice of the potential for the appearance of impropriety for him to accept the thousands of dollars of campaign contributions, use of private jets, sky boxes, hosting of fundraisers and other benefits from a person/entity under investigation.

138) Defendant Crist violated his professional duty to avoid the appearance of impropriety and may have also allegedly knowingly or negligently accepted monies which were stolen and/or misappropriated from Plaintiffs and others through The Fraudulent Enterprise.

139) In or about the beginning of 2006, as the existence of The Fraudulent Enterprise started to become public, Defendant Crist, other officials from Defendant OFR and other officials in the State of Florida started to engage in and/or direct a pattern of activity that was intended to interfere with Plaintiffs ability to secure the return of

their monies, advance the investigations into persons involved and/or was otherwise intended to interfere with Plaintiffs' due process rights.

140)    Specifically and as recently as 2007 in response to an editorial in local Florida newspapers that urged persons to contact their local law enforcement authorities to report if and how they were victimized - an agent for Defendant OFR, Defendants Florida, Defendant Crist and Defendant McCollum – caused a letter to be sent and published in which victims were urged not to contact their local law enforcement agencies and allow the Defendants agencies to finish their investigations without the involvement of other agencies.  Defendant Florida and Crist – through this agent – sought to prevent persons from exercising their rights and from taking steps to protect their property.  See Exhibit 6.

141)    During the period from late 2006 to the present, Defendants Brooks and McHale have engaged in multiple acts designed to interfere with and/or disparage efforts by Plaintiffs to secure evidence, documents and information related to:

a)  Who was responsible for and/or involved in The Fraudulent Enterprise;

b)  Why no actions were taken by Defendants OFR and Crist during the period from 2003 through 2006;

c)  How much money was in the accounts of Defendant Pearlman and Defendant Pearlman Companies as of January 2003 when Defendant OFR had actual knowledge of The Fraudulent Enterprise and The EISA Scam;

d)  What records existed between 2003 – 2006 of the investigation by Defendant OFR and referral to Defendant Crist's offices related to the Fraudulent Enterprise and The EISA Scam;

See Exhibits 6, 7 and Exhibit Binder.

e) How much money was in the accounts of Defendant Pearlman and Defendant Pearlman Companies as of January / February 2004 after Defendant OFR received the letter from Peter Antonacci had actual knowledge of The Fraudulent Enterprise and The EISA Scam;

f) How much money was in the accounts of Defendant Pearlman and Defendant Pearlman Companies as of January 2004, 2005 and 2006 after Defendant OFR had actual knowledge of The Fraudulent Enterprise and The EISA Scam;

g) How much money was in the accounts of Defendant Pearlman and Defendant Pearlman Companies at the Defendant Banks when they were lending him monies and which upon reasonable diligence they should or should have known was money that belonged to Plaintiffs or others and others who were victimized by The Fraudulent Enterprise and whose monies and/or assets could not and should not be used as collateral for loans which were being improperly extended to Defendant Pearlman and Defendant Pearlman Companies;

h) How much money was in the accounts of Defendant Pearlman and Defendant Pearlman Companies in 2006 after Defendant OFR had actual knowledge of The Fraudulent Enterprise and The EISA Scam and before monies were transferred out of Florida; and

i) Why Defendants Florida and/or OFR failed to provide sufficient funding for their agent McHale who was supposedly empowered to investigate, find, seize and/or marshal the assets of Defendant Pearlman and Defendant Pearlman Companies. See Exhibit Binder.

142) As a direct and proximate result of Defendants individual and/or collective negligence and/or wrongful acts, (i) hundreds of millions of dollars have been stolen; (ii) Defendant Pearlman has fled and is hiding in a foreign country at an undisclosed location; (iii) Defendants Fischetti, Crudele and Finger and others have refused to provide information related to The Fraudulent Enterprise necessary to help Plaintiffs recover their monies; (iv) Defendant Florida has failed to issue any indictments; (v) Defendant Florida has failed to provide the Receiver with the necessary funds with which to conduct his investigation and track down assets and witnesses and (vi) Defendant Florida and its agents continue to interfere with Plaintiffs' due process rights.

## COUNT I – RICO 18 USC § 1962

143) Plaintiffs repeated and reallege the allegations as set forth in paragraphs 12 to 142 inclusive as if the same were set forth fully and at length herein.

144) Plaintiffs are all victims of The Fraudulent Enterprise, as Plaintiffs' monies were deposited, entrusted and/or invested in the EISA accounts or The Trans Con Stock Program or both.

145) Defendant Pearlman, Defendant Pearlman Companies, Defendants Pearlman, Fischetti, Crudele, Finger, Bacchus, Wüllenkemper, McDonald, Tolner, Jans, Chamberlain, and Pohl promoted The Fraudulent Enterprise to Plaintiffs through a series of misrepresentations that Plaintiffs' monies would be placed in high-yield, insured savings accounts at banks which were FDIC insured and which accounts also had AIG or Lloyd's of London insurance. *See Exhibit Binder.*

146) The primary actors in The Fraudulent Enterprise were Defendant Pearlman, Defendant Pearlman Companies, Defendants Fischetti, Crudele, Finger, Bacchus, Wuellenkemper, McDonald, Tolner, Jans, Chamberlain, and Pohl and other Defendants.

147) The secondary actor in The Fraudulent Enterprise was Defendant FISERV and its predecessor Retirement Accounts Inc.

148) The other negligent participants in The Fraudulent Enterprise were the directors, officers, agents and representatives of Defendant Pearlman and his companies, as well as the directors, officers, agents and representatives of Defendant Banks which allowed Plaintiffs money to be deposited into unauthorized, improper and unsecure accounts from which it was later stolen.

149) The Plaintiffs, along with their counterparts in a related action filed in the United States District Court for the Middle District of Florida, Clements v. Pearlman, 07-cv-000399, represent the single largest majority of persons from the New York area, Florida, and around the United States and overseas who were the victims of The Fraudulent Enterprise.

150) As part of The Fraudulent Enterprise, Plaintiffs were offered and/or sold unregistered securities – in the form of the EISA accounts - in violation of Florida and US law.

151) As part of The Fraudulent Enterprise, Plaintiffs were offered and/or sold unregistered securities – in the form of the Trans Con Stocks - in violation of Florida and US law.

152) As part of The Fraudulent Enterprise, Defendants were received and/or were entrusted with EISA "deposits" in excess of $204 million, exclusive of interest. *See Exhibit Binder* .

153) As part of The Fraudulent Enterprise, Defendants were received and/or were entrusted with Trans Con Stock Program "monies" in excess of $100 million, exclusive of interest. *See Exhibit Binder*.

154) The Fraudulent Enterprise involved the providing of writings, correspondence, mailings, faxes, promotional materials and other documents, all of which were intended to and did induce Plaintiffs to entrust their monies to The Fraudulent Enterprise which violated 18 USC § 1953 wire and mail fraud.

155) As part of The Fraudulent Enterprise, Defendants Pearlman, Fischetti, Crudele, Finger, Bacchus, Wuellenkemper, McDonald, Tolner, Jans, Chamberlain, and Pohl, Pohl, other Defendants, Defendant Pearlman Companies, Defendant FISERV and Defendant Banks provided or caused to be provided to Plaintiffs traditional banking documents such as Opening Account Forms, Signature Cards, Social Security and Tax ID Disclosure Forms, Wire Instructions, Mailing Instructions, Contact Information Forms, Deposit Slips, Withdrawal Slips, Account Statements and other documents. *See Exhibit Binder*.

156) As part of The Fraudulent Enterprise, the Plaintiffs were specifically directed in writing, conveyed by mail and fax, and by telephonic instructions, where their monies were to be deposited, sent and/or transferred. *See Exhibit Binder*.

157) As part of The Fraudulent Enterprise, it was agreed and/or understood by and between Defendant Pearlman, Defendant Pearlman Companies, Defendant FISERV and Defendant Banks, that upon receipt and/or notification that Plaintiffs' monies were deposited and/or received by Defendant FISERV and/or Defendant Banks, the monies were not to be deposited into the intended accounts but instead would be deposited into accounts from which they could later be transferred or drawn upon by Defendant

Pearlman and/or Defendant Pearlman Companies, or others acting on his or their behalf, and without Plaintiffs' prior written consent.

158)    As and for their part of The Fraudulent Enterprise, this agreement, understanding or practice that Defendant FISERV and Defendant Banks failed to deposit or insure the deposit of Plaintiffs' Monies into the intended accounts was intentional, improper, careless, reckless and/or negligent and was in violation of their duties to Plaintiffs.

159)    As and for their part of The Fraudulent Enterprise, this agreement, understanding or practice that Defendant FISERV and Defendant Banks allowed Defendant Pearlman, Defendant Pearlman Companies and/or persons acting on his or their behalf to monies to deposit Plaintiffs' Monies into accounts from which they could later be transferred or drawn upon by Defendant Pearlman and/or Defendant Pearlman Companies, or others acting on his or their behalf, and without Plaintiffs' prior written consent, was intentional, improper, careless, reckless and/or negligent and was in violation of their duties to Plaintiffs.

160)    As and for their part of The Fraudulent Enterprise, it was the agreement, understanding and/or practice that Defendant FISERV and Defendant Banks would periodically change the names on the accounts, or the description of the monies deposited in the accounts or the monies entrusted to them.  This scheme was accomplished via changes to (i) the monthly statements and/or (ii) the forms which were used to open the EISA accounts or credit the "acquisition" of Trans Con Stock.

161)    During the period of 2002 – 2006, monies from The Fraudulent Enterprise, including Plaintiffs' Monies, were disbursed as follows,  approximately $118 million of monies from Plaintiffs and others was withdrawn improperly and without Plaintiffs' permission

to pay offer earlier "depositors" whose monies were stolen or misappropriated by Defendant Pearlman, Defendant Pearlman Companies and/or others acting on his or their behalf. Disbursement were made as follows:

a) approximately $34 million went to Defendant Pearlman's closely held corporation Defendant Pearlman Enterprises;

b) $ 4.2 million went to Defendant Pearlman;

c) $2.5 million went to Defendant Aegis Consulting;

d) $2 million went to Defendant Trans Con Records;

e) $950,000 went to Defendant TC Leasing;

f) $1.7 million went to Defendant Trans Con Talent;

g) $710,000 went to Defendant Fashion Rock;

h) $732,000 went to Defendant Crudele;

i) $ 700,000 went to Defendant Trans Con Travel;

j) $350,000 went to Defendant F.F. Station;

k) $228,000 went to Defendant Trans Country Music;

l) $218,000 went to Defendant Trans Con Studios;

m) $135,000 went to Defendant Trans Con Aviation;

n) $5,000 went to Kristin Finger;

o) Millions more in Trans Con Stock and EISA monies were pledged as collateral to Defendant Banks[5], for Defendant Pearlman's ongoing businesses and properties, including Church Street Station in Orlando;

---

[5] Some the Defendant Banks named in this action who benefitted from, were involved in and/or were negligent in relation to The Fraudulent Enterprise were among those who received monies that can be directly related back to The EISA Accounts and/or Trans Con Stock program. These are the same banks

p) Tens of thousands went to pay fees to Defendants FISERV and Defendant Banks;

q) At least $11,000 went to Defendant Crist's 2006 Gubernatorial Campaign (See Exhibit 4);

r) Tens of thousands more went to pay for benefits given or made available to Defendant Crist's Gubernatorial Campaign for his use of a private jet (Exhibit 4), fundraisers (Exhibit 8), and sports luxury boxes to Crist and Kottcamp (See also Exhibit Binder for additional information. Plaintiffs also have received information from a reliable source regarding Crist's use of Pearlman's skybox in order to entertain guests at Raymond James Stadium during the Tampa Bay Buccaneers football team's 2006 season;

s) $4,500 went from Pearlman and his companies to Bill Defendant McCollum for his Attorney General Campaign (See Exhibit 5).

162) As part of The Fraudulent Enterprise, Defendant Pearlman, Defendant Pearlman Companies and others, misrepresentations also included the fabrication of the existence of professionals, such as accountants, lawyers and auditors, who allegedly were supporting the credibility of the EISA and Trans Con Stock Program Accounts. *See Exhibit Binder.*

---

which Plaintiffs have learned have commenced actions against Defendant Pearlman and/or Defendant Pearlman Companies in various courts seeking to recover real estate and/or other assets based on certain loan transactions which Defendant Banks know, should have known and/or could have discovered through the exercise of reasonable diligence were collateralized with Plaintiffs' Monies. These Defendant Banks appear to be attempting to improperly gain a priority position ahead of Plaintiffs. Plaintiffs will be taking the necessary actions to alert the Courts of Defendant Banks wrongful acts and the need to protect the Plaintiffs from being further victimized by Banks involved directly or indirectly in and/or which benefited from The Fraudulent Enterprise and which should forfeit their loans and pay damages to Plaintiffs, instead of trying to gain an unfair position in the litigation to recover monies and damages for persons/entities who/which were truly victimized by The Fraudulent Enterprise.

---

163) In furtherance of The Fraudulent Enterprise, and unbeknownst to Plaintiffs, several entities were created in Germany to which Plaintiffs' Monies from the EISA and Trans Con Stock Program Accounts were to be sent. *See Exhibit Binder.*

164) In 2006, millions of dollars started to be sent from the accounts that were supposed to be maintained at Defendant FISERV and Defendant Banks to the German entities.

165) These German entities were intended to be the "offshore type" of vehicles or entities to which the stolen and/or misappropriated monies were to be sent to companies that Defendant Pearlman and Mullenkamper created such as Defendant Eurosavings and Triple M, out of the reach of Florida and US authorities.

166) In 2006, several transfers and/or disbursements in the hundreds of thousands and millions of dollars from the EISA accounts were improperly transferred to accounts at Defendant Banks for unintended purposes, including payment of monthly loans.

167) In 2006, millions of dollars of Trans Con Stock (from the Trans Con Stock Program) was improperly transferred or pledged to accounts at Defendant Banks as collateral for loans.

168) As late as December 2006, a single wire transfer of $ 1 million was solicited and improperly and/or wrongfully accepted and transferred to accounts by Defendant Bank of America and into accounts from which it knew that Defendant Pearlman was going to and could steal or misappropriate the monies. See Exhibit Binder. As with other EISA and Trans Con Stock Program accounts, the necessary, proper and required documentation related to even this December 2006 deposit, withdrawal and transfer, was not secured by Defendant Bank.

169) As part of The Fraudulent Enterprise, Defendants Pearlman and/or Fischetti were the improperly designated and allowed -- by Defendant FISERV and Defendant Banks - to be signatories on the EISA and Trans Con Stock Program accounts.

170) As part of The Fraudulent Enterprise and to continue the fraud on Plaintiffs, quarterly statements were created and mailed to Plaintiffs EISA depositors, which statements improperly reflected or characterized deposits, interest earned and account balances, as Plaintiffs' Monies were not in the proper, required, insured and protected accounts. *See Exhibit Binder.*

171) As part of The Fraudulent Enterprise and to continue the fraud on Plaintiffs, the quarterly account statements were created and mailed to Plaintiffs EISA depositors that reflected either "Insured Amount" or "Insured Account Balance," when in fact no insurance existed. *See Exhibit Binder.*

172) As part of The Fraudulent Enterprise, Defendant FISERV and/or Defendant Banks issued or caused to be issued and mailed to Plaintiffs EISA depositors Federal Tax Forms, such as 1099s. *See Exhibit Binder .*

173) However, at the time the Federal Tax Forms were issued, Defendant FISERV and Defendant Banks knew, should have known and/or could have discovered through the exercise of reasonable diligence that the 1099 Federal Tax Forms they were issuing were from the wrong companies, or the wrong accounts and/or otherwise did not accurately reflect where and with whom Plaintiffs' Monies were supposed to be deposited.

174) As part of The Fraudulent Scheme, Defendant Pearlman, Defendant Pearlman Companies, Defendant FISERV and Defendant Banks failed to demand the necessary, appropriate, customary and required forms when opening and operating bank accounts